IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALADDIN KNOWLEDGE SYSTEMS, LTD.,  )
                                      )
        Plaintiff,                )
                                        )
        v.                    )     C.A. No. 05-149 (GMS)
                                        )
FEITIAN TECHNOLOGIES CO., LTD., RF  )
IDEAS, INC., d/b/a SECURITY TOKENS, AZ-  )
TECH SOFTWARE, INC., SOFTKEY E-  )
SOLUTION SDN BHD, NOVARIS  )
INNOVATIVE TECHNOLOGIES, FUTURE  )
SYSTEMS, INC., RS-COMPUTER  )
OPENFORTRESS DIGITAL SIGNATURES, and  )
SECURE TECHNOLOGY, INC.,  )
                                        )
        Defendants.        )

**AZ-TECH SOFTWARE, INC.'S OPENING BRIEF IN SUPPORT OF
ITS MOTION TO DISMISS**

MORRIS, NICHOLS, ARSHT & TUNNELL
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
    *Attorneys for Defendant AZ-Tech Software, Inc.*

OF COUNSEL:

Judith L. Carlson
STINSON MORRISON HECKER LLP
1201 Walnut Street, Suite 2900
Kansas City, MO  64106
(816) 842-8600

May 27, 2005

i.

<u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CITATIONS ................................................................................................ ii

INTRODUCTION .........................................................................................................1

STATEMENT OF FACTS .............................................................................................1

ARGUMENT.................................................................................................................1

      A.     Delaware Long-Arm Statute. ...................................................................2

      B.     Constitutional Requirements..................................................................4

CONCLUSION..............................................................................................................6

ii.

## TABLE OF CITATIONS

Page(s)

Cases

*Aeroglobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*,
   871 A.2d 428 (Del. 2005) ...................................................................................2

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*,
   480 U.S. 102 (1987)..........................................................................................4

*DeSantis v. Hafner Creations, Inc.*,
   949 F. Supp. 419 (E.D. Va. 1996) ....................................................................3

*E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*,
   197 F.R.D. 112 (D. Del. 2000) ......................................................................1, 2

*Intel Corp. v. Silicon Storage Tech., Inc.*,
   20 F. Supp. 2d 690 (D. Del. 1998).................................................................2, 3

*M&M Techs., Inc. v. Gurtler Chems., Inc.*,
   C.A. No. 03-994-GMS, 2005 WL 293509 (D. Del. Feb. 8, 2005) ................2, 3

*Max Daetwyler Corp. v. R. Meyer*,
   762 F.2d 290 (3d Cir. 1985) .............................................................................2

*Toys "R" Us, Inc. v. Step Two, S.A.*,
   318 F.3d 446 (3d Cir. 2003) ...........................................................................3, 4

*Werner v. Miller Tech. Mgmt, L.P.*,
   831 A.2d 318 (Del. Ch. 2003) ..........................................................................2

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)..........................................................................................4

Other Authorities

10 Del. C. § 3104(c)................................................................................................2

Fed. R. Civ. P. 12(b)(2)........................................................................................1, 2

Fed. R. Civ. P. 4(e) .................................................................................................2

1.

## INTRODUCTION

Plaintiff filed suit against defendant AZ-Tech Software, Inc. ("AZ-Tech") alleging infringement of two computer-related patents. Pursuant to Fed. R. Civ. P. 12(b)(2), AZ-Tech moves to dismiss plaintiff's claims against it for lack of personal jurisdiction. AZ-Tech is beyond the reach of the Delaware long-arm statute and assertion of jurisdiction over it would violate AZ-Tech's due process rights. AZ-Tech is a non-resident of the State of Delaware, and it has no purposeful contacts with Delaware.

## STATEMENT OF FACTS

Plaintiff filed suit alleging that AZ-Tech is infringing two computer-related patents (D.I. 1). AZ-Tech is a corporation organized under the laws of the State of Missouri with its principal place of business in Missouri. It is a "non-resident" of Delaware. Affidavit of Bill J. Lewis ("Lewis Aff.") ¶ 3 (attached as Exhibit A). AZ-Tech has no relevant contact with Delaware.[1] *Id.* ¶ 6. AZ-Tech does not target or direct its web site or any advertising to Delaware, and it has made no sales of any products to any resident of Delaware. *Id.* ¶¶ 4, 5.

## ARGUMENT

"Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[]." *E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates*, 197 F.R.D. 112, 119 (D. Del. 2000). When a defendant challenges personal jurisdiction, plaintiff bears the burden of showing a basis for

---

[1]    AZ-Tech has obtained a Visa credit card from Fleet Business Services, monthly payments of which are sent to Wilmington, Delaware. Lewis Aff. ¶ 6. This contact, however, does not confer general jurisdiction over AZ-Tech.

2.

personal jurisdiction. *See Aeroglobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437-38 (Del. 2005) (citation omitted); *Werner v. Miller Tech. Mgmt, L.P.*, 831 A.2d 318, 326 (Del. Ch. 2003).

In a patent infringement case, a court may assert jurisdiction over a non-resident defendant if the Delaware long-arm statute, 10 Del. C. § 3104(c), authorizes jurisdiction, and if the requirements of due process are satisfied.[2] *Aeroglobal Capital Mgmt.*, 871 A.2d at 438; *see also Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 694 (D. Del. 1998) (citing *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 293 (3d Cir. 1985)); *M&M Techs., Inc. v. Gurtler Chems., Inc.*, C.A. No. 03-994 GMS, 2005 WL 293509, at *2 (D. Del. Feb. 8, 2005) (attached as Exhibit B).[3]  Because these requirements are not satisfied in this case, the Court should dismiss plaintiff's claims against AZ-Tech. *E.I. DuPont de Nemours*, 197 F.R.D. at 119.

A.    **Delaware Long-Arm Statute.**

To establish personal jurisdiction over a non-resident defendant, a party must allege facts sufficient to satisfy the requirements of the Delaware long-arm statute.  Pursuant to the long-arm statute, a court may exercise personal jurisdiction over a non-resident that transacts business in the State.  10 Del. C. § 3104(c)(1).

---

[2]    Pursuant to Fed. R. Civ. P. 4(e), the Court looks to the Delaware long-arm statute to determine whether a statutory basis for jurisdiction exists.  "In applying the Delaware long-arm statute, the court will defer to the interpretations of the Delaware state courts." *Intel*, 20 F. Supp. 2d at 694 (citation omitted).

[3]    In *M&M Techs.*, M&M Technologies filed a patent infringement action against Gurtler Chemicals, and Gurtler filed a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  The Court granted Gurtler's motion, finding that the Delaware long-arm statute did not provide a basis for jurisdiction, and that an exercise of jurisdiction would not comport with the requirements of due process.

3.

Plaintiff alleges that this Court has jurisdiction over AZ-Tech because AZ-Tech transacts business in Delaware via its web site (D.I. 1, ¶¶ 5, 15).[4] AZ-Tech operates a web site; however, the mere operation of a web site will not subject the operator to jurisdiction in Delaware. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). Instead, to meet the requirements of Section 3104(c)(1), plaintiff must show that AZ-Tech's actions "are directed at residents of Delaware and the protection of Delaware laws." *M&M Techs.*, 2005 WL 293509, at *2 (citation omitted).

AZ-Tech's web site is not directed at Delaware residents, and AZ-Tech has not sold any products to any Delaware resident.[5] Lewis Aff. ¶¶ 4, 5. Thus, the existence of AZ-Tech's web site does not rise to the level of transacting business in Delaware under Section 3104(c)(1). *See Intel*, 20 F. Supp. 2d at 696 (solicitation and advertising do not qualify as transacting business unless it is directed at residents of Delaware). The Delaware long-arm statute does not confer jurisdiction over AZ-Tech, and plaintiff's claims against it should be dismissed.

---

[4]    Plaintiff also alleges that AZ-Tech is a "Solutions Partner" of Feitian, and that its web site contains contact information for Feitian as well as hyperlinks to user guides copyrighted by Feitian (D.I. 1, ¶ 5). These allegations do not establish jurisdiction. For reasons stated *infra*, mere operation of a web site will not subject AZ-Tech to jurisdiction in Delaware. It does not target its web site to Delaware residents, and it has no relevant contact with Delaware.

[5]    AZ-Tech believes that someone from plaintiff's counsel's office in Delaware attempted to order products from AZ-Tech after this lawsuit was initiated. Nevertheless, "a plaintiff to whom a cause of action has accrued may not thereafter initiate a transaction for the sole purpose of creating jurisdiction." *DeSantis v. Hafner Creations, Inc.* 949 F. Supp. 419, 425 (E.D. Va. 1996) cited in *Intel*, 20 F. Supp. 2d at 697.

4.

**B.      Constitutional Requirements.**

Plaintiff also has the burden of showing that the requirements of due process are met. Plaintiff cannot meet this burden, and its complaint should be dismissed.

Due process requires "(1) that the defendant have constitutionally sufficient minimum contacts with the forum, and (2) that subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice." *Toys "R" Us,* 318 F.3d at 451 (quotations and citations omitted). Requisite minimum contacts exist when a non-resident "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.,* 480 U.S. 102, 109 (1987) (citation omitted)). In other words, in order to establish jurisdiction over a non-resident defendant, the non-resident's contacts with the forum must rise to such a level that it should "reasonably anticipate" being required to defend itself in Delaware's courts. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

The Third Circuit's test for jurisdiction over a defendant based on the operation of a web site is whether the defendant directly targeted its web site to the forum state, "intentionally and knowingly transacted business with residents of the forum state, and had significant other contacts with the forum besides those generated by its web site." *Toys "R" Us,* 318 F.3d at 453. AZ-Tech operates a web site that could be accessed by anyone with access to the world wide web, but it does not direct its web site or any other advertising to Delaware. As noted above, the mere operation of a web site will not subject AZ-Tech to jurisdiction in Delaware. *Id.* at 454. AZ-Tech has not made any sales to any Delaware resident, and it has no other relevant contacts

5.

with Delaware.[6]  Lewis Aff. ¶¶ 6, 7.  Accordingly, AZ-Tech has not "purposefully availed" itself of conducting activity in Delaware, and it could not have reasonably anticipated being required to defend itself in this forum.

This Court should not exercise jurisdiction over AZ-Tech because AZ-Tech does not have the requisite minimum contacts with Delaware, and an assertion of jurisdiction over AZ-Tech would violate traditional notions of fair play and substantial justice.  AZ-Tech therefore respectively submits that the Court should dismiss plaintiff's claims against it for lack of personal jurisdiction.

---

[6]    As noted above, AZ-Tech is a Missouri corporation with its principal place of business located in Richmond, Missouri.  AZ-Tech has no employees in Delaware, and it has no telephone listings, offices or mailing address in Delaware.  Further, AZ-Tech has no bank accounts or other tangible personal or real property in Delaware.

6.

## CONCLUSION

Plaintiff cannot establish the statutory and constitutional requirements for personal jurisdiction over AZ-Tech in this Court. The requisites of the Delaware long-arm statute are not met because AZ-Tech does not direct its web site at Delaware residents, and AZ-Tech has not sold any products to any Delaware resident. Minimum contacts do not exist. In fact, AZ-Tech has had no relevant contact with Delaware, and assertion of jurisdiction over it would offend traditional notions of fair play and substantial justice and would violate AZ-Tech's due process rights. For these reasons, AZ-Tech asks the Court to dismiss plaintiff's claims against it.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
rsmith@mnat.com
    *Attorneys for Defendant AZ-Tech Software, Inc.*

OF COUNSEL:

Judith L. Carlson
STINSON MORRISON HECKER LLP
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
(816) 842-8600

May 27, 2005
467206

# EXHIBIT A

State of Missouri          )

                           )          ss.

County of _____Ray_____ )

## AFFIDAVIT OF BILL J. LEWIS

1.       I am over the age of eighteen years, have personal knowledge of the facts contained in

this Affidavit, and am competent to testify to them.

2.       I am the President of AZ-Tech Software, Inc. ("AZ-Tech").

3.       AZ-Tech is a corporation organized under the laws of the State of Missouri, with its

principal place of business located at 201 East Franklin, Suite 11, Richmond, Missouri, 64085-

1833; AZ-Tech is a "non-resident" of Delaware.

4.       AZ-Tech does not direct its web site or any advertising to Delaware.

5.       AZ-Tech has made no sales of any products to any resident of Delaware.

6.       AZ-Tech has obtained a Visa credit card from Fleet Business Services, monthly

payments of which are sent to Wilmington, Delaware.  AZ-Tech does not have any other

contacts with Delaware.

FURTHER, AFFIANT SAYETH NOT.

Dated this 2 5 day of May, 2005.

_____
Bill J. Lewis

SUBSCRIBED AND SWORN TO before me, the undersigned Notary Public, this 25 day of
May 2005.

_____
Notary Public

My Commission Expires:

09/22/05

6577296.1

AMBER BARNES
Notary Public – Notary Seal
State of Missouri
County of Ray
My Commission Expires 09/22/2007

# EXHIBIT B

Westlaw.

Slip Copy
2005 WL 293509 (D.Del.)
**(Cite as: 2005 WL 293509 (D.Del.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
**M & M TECHNOLOGIES,** INC., Plaintiff,
v.
**GURTLER CHEMICALS,** INC., Defendant/Third-Party
Plaintiff,
v.
BURLINGTON CHEMICAL CO., INC., Third-Party
Defendant.
**No. Civ.A. 03-994 GMS.**

Feb. 8, 2005.
George Pazuniak, Gerard M. O'Rourke, Connolly, Bove, Lodge & Hutz, Wilmington, DE, for Plaintiff and Counter-Defendant.

William J. Wade, Steven J. Fineman, Richards, Layton & Finger, Rex A. Donnelly, IV, Ratner & Prestia, Wilmington, DE, Kevin W. Goldstein, Stradley Ronon Stevens & Young, LLP, for Defendant, Third-Party Plaintiff and Counter-Claimant.

*MEMORANDUM*
SLEET, J.

I. INTRODUCTION

*1 On October 30, 2003, the plaintiff, M & M Technologies, Inc. ("M & M"), filed this patent infringement action against Gurtler Chemicals, Inc. ("Gurtler"). Presently before the court is a motion to dismiss for lack of personal jurisdiction filed by third-party defendant Burlington Chemical Company, Inc. ("Burlington"). For the following reasons, the court will grant the motion.

II. BACKGROUND

The patent-in-suit, U.S. Patent No. 6,159,548 (the " '548 patent"), allegedly is owned by M & M. The patented invention is a method for oilproofing and waterproofing previously manufactured fabric with an aerosol spray containing a diluted fluoroacrylate emulsion. The complaint alleges that Gurtler has infringed, induced infringement of, or contributorily infringed the method claims of the '548 patent.

On July 12, 2004, Gurtler filed a motion to file a second amended answer, counterclaim, and third-party complaint. The court granted Gurtler's motion on September 22, 2004. Gurtler named Burlington as a third-party defendant and brought claims against Burlington for negligent misrepresentation and violation of the Uniform Commercial Code, Section 2-312, *i.e.* breach of warranty. The third-party complaint alleges in Count I that: (1) Gurtler makes its allegedly infringing product merely by adding water to Burcopel CAT, a product sold to it by Burlington; (2) at the time Burlington began selling Burcopel CAT to Gurtler, Burlington orally represented and warranted that Gurtler's use of the product would not infringe, induce infringement of, or contributorily infringe the '548 patent; and (3) Burlington breached its warranty against infringement. Count II alleges that: (1) Burlington's representation that Burcopel CAT was not infringing was a false representation of fact; (2) Burlington made the false representation because of its lack of reasonable care in ascertaining the facts; (3) Burlington made the false representation with an intention to induce Gurtler to act; (4) Gurtler justifiably relied on the false representation; and (5) Burlington's actions caused Gurtler to incur damages.

Burlington is a North Carolina corporation, with no place of business in Delaware. It neither owns nor leases any property in Delaware. Burlington is not registered with the Secretary of State to do business in Delaware. It maintains no office, local telephone listing, or bank accounts in Delaware, and similarly, has no employees in Delaware. It has not paid taxes or franchise fees in Delaware. Burlington has never commenced any legal action or proceeding in the State of Delaware and has never been named as defendant in any action in Delaware, except in the current litigation.

Burlington entered into an agreement with Gurtler for the sale of Burcopel CAT, a chemical that adheres to fabric causing it to become water resistant. Pursuant to the terms of the Memorandum of Sale, the product was shipped

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
2005 WL 293509 (D.Del.)
(Cite as: 2005 WL 293509 (D.Del.))

Page 2

collect to Gurtler in South Holland, Illinois. [FN1] After receiving the Burcopel CAT, Gurtler dilutes it with water, and distributes and sells the product to its United States and international customers under its "Pulse Shield" trademark.

> FN1. Gurtler is an Illinois Corporation with an established place of business in Sought Holland, Illinois.

**\*2** Burlington does not sell Burcopel CAT to any customers in Delaware. Burlington's sales of products to Delaware customers in 2001, 2002, and 2003 were less than $1,000.00 each year, and comprised approximately 0.0007% of Burlington's annual sales revenues. In 2004, Burlington directly sold products to three customers in Delaware. Burlington had sales of $4,000.00 to one Delaware customer, $70.00 to a second Delaware customer, and $16,000 .00 to a Delaware distributor. These sales comprised approximately 0.14% of Burlington's 2004 sales revenues.

III. STANDARD OF REVIEW

Burlington moves to dismiss the third-party complaint for lack of personal jurisdiction over the defendant. "Rule 12(b)(2) of the Federal Rules of Civil Procedure requires a court to dismiss a case when the court lacks personal jurisdiction over the defendant[ ]." E.I. DuPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediates, 197 F.R.D. 112, 119 (D.Del.2000). In determining whether personal jurisdiction exists, courts engage in a two step analysis. First, the court must decide whether jurisdiction is authorized by the long-arm statute of the state in which the court sits. Transportes Aeros de Angola v. Ronair, Inc., 544 F.Supp. 864-65 (D.Del.1982). If jurisdiction is proper per the long-arm statute, the court must then determine whether exercising jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. Id. (noting, however, "intent of the legislature to exercise jurisdiction over non-residents whenever feasible"); Compaq Computer Corp. v. Packard Bell Elec., Inc., 948 F.Supp. 338, 342 (D.Del.1996) (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does

not offend 'traditional notions of fair play and substantial justice." ' International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation omitted). Specifically, Gurtler must show that Burlington "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)); see also Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 108-09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Unless the contacts are continuous and systematic, they must be related to the present cause of action. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

In determining the jurisdictional question, the court must accept as true the allegations in the complaint, Altech Indus., Inc. v. Al Tech Specialty Steel Corp., 542 F.Supp. 53, 55 (D.Del.1982), but Gurtler bears the burden of alleging facts sufficient to make a prima facie showing of personal jurisdiction over Burlington. ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc., 147 F.Supp.2d 268, 270-71 (D.Del.2001). To meet this burden, Gurtler must adduce facts which 'establish with reasonable particularity' that jurisdiction over the movant exists. Id. (quoting Joint Stock Soc'y v. Heublein, Inc., 936 F.Supp. 177, 193 (D.Del.1996)).

IV. DISCUSSION

A. Delaware's Long-Arm Statute

**\*3** The first step in the court's analysis is to determine whether any of the provisions of Delaware's long-arm statute, Del.Code Ann. tit. 10 § 3104, warrant the exercise of jurisdiction over Burlington. Burlington contends that the court has no basis to assert jurisdiction, while Gurtler maintains that the conduct of Burlington satisfies the requirements of subsections (c)(1) and (c)(4) of the long-arm statute. The court will address each of these sections below.

1. Delaware Long-Arm Statute § 3104(c)(1)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
2005 WL 293509 (D.Del.)
(Cite as: 2005 WL 293509 (D.Del.))

Page 3

Under subsection (c)(1), the court may exercise jurisdiction over a nonresident who transacts any business or performs any character of work or service in the State. Del.Code Ann. tit. 10 § 3104(c)(1). Gurtler asserts that Burlington has acted in consort with Gurtler to place Burcopel CAT into a nationwide distribution network and, as a result, Burcopel CAT may have found its way to Delaware. Thus, Burlington has availed itself of the benefits of the State of Delaware. The court disagrees.

Delaware courts construe the long-arm statute broadly to confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state." *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156-57 (Del.Super.1997). The Delaware Supreme Court has interpreted subsection (c)(1) as a specific jurisdiction provision that requires a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *See LaNuova D & B, S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). In order to meet the requirements of subsection (c)(1), Burlington's actions must be directed at residents of Delaware and the protection of Delaware laws. *Thorn EMI N. Am. Inc. v. Micron Tech., Inc.,* 821 F.Supp. 272, 274 (D.Del.1993). However, when a manufacturer passes title to goods to a third party outside of Delaware, it has not performed an act in Delaware. *Boone,* 724 A.2d at 1156. In the present case, Burlington did not pass title to Gurtler in Delaware. Rather, Burlington passed title to the Burcopel CAT in South Holland, Illinois. (D.I. 52 ¶ 4). In addition, Burlington's sales of products in Delaware are unrelated to Gurtler's claims and, therefore, cannot give rise to specific jurisdiction. *See ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.,* 147 F.Supp.2d 268 (D.Del.2001).

Gurtler maintains that Burlington's actions were directed at Delaware because it engaged Gurtler as a nationwide distributor of Burcopel CAT. Gurtler further asserts that where a party contracts to have its product distributed by another throughout the United States, it contracts to have its product distributed to each state as an individual forum. *See Boone,* 724 A.2d at 1160. The court agrees that a party who contracts to have its product distributed throughout the United States is subject to jurisdiction in any state. There is

no evidence in the record, however, that Gurtler was acting as Burlington's distributor of Burcopel CAT. Indeed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it under Gurtler's "Pulse Shield" trademark. Moreover, the Burcopel CAT does not maintain a separate identity in Gurtler's product and Burlington is not identified to the end user. As such, subsection (c)(1) is not a basis for the exercise of jurisdiction over Burlington.

2. Delaware Long-Arm Statute § 3104(c)(4)

*4 Additionally, Gurtler asserts that Burlington has, within the meaning of subsection (c)(4), availed itself of the general jurisdiction of Delaware. Under subsection (c)(4), the court may exercise personal jurisdiction over anyone who "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State. Del.Code Ann. tit. 10 § 3104(c)(1). Gurtler contends that jurisdiction is proper under subsection (c)(4) because Burlington's actions with respect Burcopel CAT have caused tortious injury in Delaware, Burlington maintains significant contacts with the District of Delaware, and Burlington receives substantial revenue from the sale of Burcopel CAT to Gurtler.

Delaware courts have interpreted § 3104(c)(4) as a general jurisdiction provision. *See Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.,* 295 F.Supp.2d 400, 405 (D.Del.2002); *Boone,* 724 A.2d at 1155 (citing *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.,* 685 A.2d 724, 727-28 (Del.Super.1996)). This general jurisdiction provision allows the court to exercise jurisdiction when the defendant's contacts with the forum state are unrelated to the cause of action. *Bell Helicopter,* 295 F.Supp.2d at 405.

First, the court must determine if the alleged acts set forth in the third-party complaint constitute a tortious injury for the purposes of jurisdiction. A tortious act under § 3104(c)(4) is an act "which involves a breach of duty to another and makes the one committing the act liable in damages." *Magid v. Marcal Paper Mills, Inc.,* 517 F.Supp. 1125, 1130

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                          Page 4
2005 WL 293509 (D.Del.)
**(Cite as: 2005 WL 293509 (D.Del.))**

(D.Del.1981). Applying Delaware law, the court finds that the alleged breach of warranty and negligent misrepresentation by Burlington each constitute a breach of duty owed to Gurtler.

Next, the court must determine if Burlington regularly does or solicits business in Delaware. The court concludes that Burlington does not regularly do business in Delaware. As previously discussed, Burlington is a North Carolina corporation, with no office or place of business in Delaware. (D.I. 52 ¶ 2). Burlington has not appointed any agent for service of process in Delaware and is not registered to do business in Delaware. (*Id.*) It has no local telephone listing, bank accounts, real estate or employees in Delaware. (*Id.*) It has not paid any taxes or franchise fees in Delaware. (*Id.*). It has never commenced any legal action or proceeding in the State of Delaware and has never been named as defendant in any action in Delaware, except for the current litigation. (*Id.*) The court also concludes that Burlington does not regularly solicit business or advertise in Delaware. Further, while Burlington does maintain an Internet website that it can use to solicit business from Delaware, the mere existence of its website does not rise to the level of regularly soliciting business in Delaware. *See Motorola Inc. v. PC-Tel, 58 F.Supp.2d 349, 352 (D.Del.1999)* (discussing extensive advertising by the defendant, both nationwide and in Delaware through newspapers, magazines, and catalogs). Thus, the court concludes that Burlington does not regularly do or solicit business in Delaware.

**\*5** Lastly, the court must determine whether Burlington derives substantial revenue from services or things used or consumed in Delaware. Delaware courts have broadly construed the term "substantial revenue" to mean that two to three percent of total revenue is sufficient to confer jurisdiction. *See United States v. Consolidated Rail Corp., 674 F.Supp. 138, 144 (D.Del.1987)*. However, when a defendant's sales to customers in Delaware constitute less than one percent of total revenue, it is not substantial enough to warrant an exercise of jurisdiction. *Bell Helicopter, 295 F.Supp.2d at 405*. In the present case, Burlington's sales of products to customers in Delaware in 2001, 2002, and 2003 were about $1,000.00 each year, representing 0.0007% of Burlington's annual sales revenues.

(D.I. 53, at 2-3). In 2004, Burlington had sales to three customers in Delaware that totaled approximately $20,070.00. (*Id.* at 3). While Burlington's sales of products to Delaware customers grew in 2004, its Delaware revenue only comprised approximately 0.14% of its total annual sales. (*Id.*) Because Burlington's Delaware revenue was less than 1% of its total annual revenue, it is not substantial enough to warrant an exercise of general jurisdiction. The court, therefore, finds that even though the acts alleged in the third-party complaint, if proved, might constitute a breach of duty owed by Burlington, Gurtler has not made a *prima facie* showing of personal jurisdiction over Burlington under § 3104(c)(4) of the Delaware long-arm statute.

**B. Due Process**

The second step in the court's analysis is to determine whether exercising jurisdiction comports with the requirements of the Due Process Clause. The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "ha[s] certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play.' " *See International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)*. In order to give non-residents "fair warning" that a particular activity may subject them to litigation within the forum, these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)*. In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)*. [FN2] Finally, "even if the requisite minimum contacts have been found through an application of the stream of commerce theory or otherwise, if it would be unreasonable for the forum to assert jurisdiction under all the facts and circumstances, then due process requires that jurisdiction be denied." *See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed.Cir.1994)*.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
2005 WL 293509 (D.Del.)
(Cite as: 2005 WL 293509 (D.Del.))

FN2. The United States Supreme Court has explained that:

[t]he "substantial connection" ... between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.... The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.

*ICT Pharms.*, 147 F.Supp.2d at 272 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

*6 Gurtler first asserts that the court should exercise jurisdiction over Burlington because Burlington has purposeful minimum contacts with the State of Delaware of the quantity and type to cause it to reasonably foresee that it would be "haled before a court" located in Delaware. Jurisdiction is proper, according to Gurtler, because it informed Burlington that it diluted Burcopel CAT with water to produce Pulse Shield, which, in turn, it placed into a distribution chain that consisted of laundering facilities across the United States. (D.I. 56, at 4). Burlington, therefore, knew that its Burcopel CAT was shipped nationally as the sole compositional ingredient in Pulse Shield. (*Id.*) Thus, Burlington has minimum contacts to satisfy due process requirements by contracting for the sale of Burcopel CAT to Gurtler, thereby directing its product into the stream of commerce of the United States and Delaware. Gurtler further asserts that, at the time this litigation was brought, Gurtler and Burlington were involved in significant business negotiations involving Burcopel CAT, which included a proposal by Gurtler that Burlington dilute the Burcopel CAT, affix Gurtler's labeling, and ship it directly to Gurtler's clients. (*Id.* at 5). However, as Gurtler points out, a final contract was never entered. Gurtler contends that these negotiations put Burlington on notice that by providing Burcopel CAT to Gurtler, Burlington would be submitting to the jurisdiction of the districts to which the Gurtler product was shipped. Gurtler relies on *Boone* and *Motorola* to support its stream of commerce theory. Gurtler argues that, as in *Boone* and *Motorola,* the defendant seeking to be dismissed, *i.e.* Burlington, engaged a distributor, *i.e.* Gurtler, who shipped the defendant's product across the country. Thus, not only did Burlington anticipate the fact that its product would be distributed in all states including Delaware, it took affirmative steps to direct its product to Delaware by and through its agreement with Gurtler. (D.I. 56, at 5).

After reviewing the record, the court finds that Gurtler's reliance on *Boone* and *Motorola* is misplaced because both cases are distinguishable from the present case. First, there is no evidence in the record that Burlington engaged Gurtler to be its exclusive distributor of Burcopel CAT in the United States, which was a critical factor in *Boone*. The court in *Boone* found that the defendant had exhibited an intent to serve the Delaware market because it engaged a resident company as the exclusive distributor of its product in the United States and directly benefitted from the distribution. *Boone,* 724 A.2d at 1160. As previously discussed, Gurtler purchased Burcopel CAT from Burlington, diluted it with water and sold it as Pulse Shield. These actions are not consistent with a distributor/distributee relationship. In addition, the record shows that Burlington does not benefit directly from Gurtler's "distribution." Gurtler asserts that Burlington has received approximately $66,770.00 for purchases of Burcopel CAT. However, Gurtler does not assert that the money was a direct benefit from its distribution of Pulse Shield. Rather, it was money that Burlington received from the sale of Burcopel CAT to Gurtler alone. This situation is distinguishable from *Boone,* where the defendant earned $270,000 from sales of its product by its distributor in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
2005 WL 293509 (D.Del.)
(Cite as: 2005 WL 293509 (D.Del.))

Page 6

Delaware. *See id.* at 1158.

*7 Likewise, *Motorola* is distinguishable. First, the *Motorola* defendant's product was integrated into a variety of consumer products manufactured by well-known multi-national corporations. [FN3] The goods produced by the corporations were then placed for sale in well-known retail stores, including Caldor and Circuit City, which all had outlets in Delaware. Further, the products were advertised extensively, both nationwide and in Delaware through newspapers, magazines, and catalogs. *Motorola,* 58 F.Supp.2d at 352. While Burcopel CAT is integrated into Gurtler's Pulse Shield, there is no evidence in the record that Gurtler places the Pulse Shield for sale in well-known retail stores with outlets in Delaware. The record is also devoid of evidence that Gurtler advertises the Pulse Shield, either nationwide or in Delaware.

> FN3. The *Motorola* defendant's product was a softmodem that was integrated into Compaq, Phillips, Samsung, Sharp, and Sony consumer electronic products.

More important, the *Motorola* court found that the licensing fees and royalties from which the defendant derived its revenues "appear[ed] to be based upon the sale to *end users* of products containing its softmodems." *Id.* Indeed, the court noted that the "End User distribution channel" of the defendant's licensing agreement "contemplate[d] sale to retail consumers including consumers in Delaware of 'Shipped End User Product[s]' through retail outlets." *Id.* In the present case, Gurtler does not assert that Burlington derives revenue based on the sale of the Pulse Shield to end users. Conversely, Gurtler asserts that Burlington derives revenue based on its sale of Burcopel CAT to Gurtler.

Another important distinction between *Motorola* and the present case is that the *Motorola* defendant maintained an interactive website from which end users could download modem control commands to their computers to enable them to perform certain functions with the defendant's softmodems. In addition, the customers could order products to test their softmodems and obtain customer support directly from the defendant by telephone and Internet. The record also indicated that Delaware customers

had utilized the features of the defendant's support network. *Id.* In the present case, Burlington does not offer the same type of customer support network. According to Gurtler, Burlington maintains an Internet website that allows potential clients in Delaware to access certain advertisements. The website also provides a toll free phone number for client communication and order solicitation. Burlington's website offerings are not nearly as extensive as those offered by the defendant in *Motorola.* Moreover, Gurtler has not asserted that end users of its Pulse Shield can obtain customer support from Burlington's website or toll free number.

Finally, Gurtler asserts that Burlington has admitted that it transacts certain business in Delaware and, therefore, has not only availed itself to Delaware by implicitly soliciting business in the state, but also it has derived substantial revenue from Delaware. The court disagrees. As previously discussed, Burlington's Delaware revenue for the years 2001 through 2004 was less than 1% of its total annual revenue for each year and, therefore, not substantial enough to warrant an exercise of jurisdiction. Thus, Burlington does not have sufficient contacts with this forum to compel its appearance here without offending the Due Process Clause. [FN4]

> FN4. The court need not address whether jurisdiction in Delaware comports with the "minimum requirements inherent in the concept of 'fair play and substantial justice' " because Burlington's contacts with Delaware are insufficient to cause it to reasonably foresee being haled before a Delaware court.

*ORDER*

*8 For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:
1. Burlington Chemical Company's Motion to Dismiss for Lack of Personal Jurisdiction (D.I.51) is GRANTED.

2005 WL 293509 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03CV00994 (Docket) (Oct. 30, 2003)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
2005 WL 293509 (D.Del.)
**(Cite as: 2005 WL 293509 (D.Del.))**


END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on May 27, 2005, I caused to be electronically filed, AZ-Tech Software, Inc.'s Opening Brief In Support Of Its Motion To Dismiss, using CM/ECF, which will send notification of such filing to the following:

> David S. Eagle, Esquire
> Klehr, Harrison, Harvey, Branzburg & Ellers
> 919 Market Street
> Suite 1000
> Wilmington, DE  19801

I also certify that copies were caused to be served on May 27, 2005, upon the following in the manner indicated:

> **BY HAND**
>
> David S. Eagle, Esquire
> Klehr, Harrison, Harvey, Branzburg & Ellers
> 919 Market Street
> Suite 1000
> Wilmington, DE  19801

*/s/ Rodger D. Smith II*
Rodger D. Smith II (#3778)
Morris, Nichols, Arsht & Tunnell
(302) 658-9200
rsmith@mnat.com
