## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Aladdin Knowledge Systems, Ltd.,          :
             Plaintiff,          :
   v.          :          CIVIL ACTION NO. 05-149
                                               :
Feitian Technologies Co., Ltd., et al.,          :
             and          :
RF Ideas, Inc., d/b/a Security Tokens,          :
             and          :
AZ-Tech Software, Inc.,          :
             and          :
Softkey E-Solution Sdn Bhd,          :
             and          :
Novaris Innovative Technologies,          :
             and          :
Future Systems, Inc.,          :
             and          :
RS-Computer          :
             and          :
OpenFortress Digital signatures          :
             and          :
Secure Technology, Inc.          :
             Defendants.          :
                                               :

---

## MEMORANDUM OF LAW OF PLAINTIFF ALADDIN KNOWLEDGE SYSTEMS, LTD. IN OPPOSITION TO THE MOTION OF DEFENDANT FEITIAN TECHNOLOGIES CO., LTD. TO QUASH SERVICE AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP
David S. Eagle, Esquire (Bar No. 3387)
Patrick A. Costello, Esquire (Bar No. 4535)
919 Market Street
Suite 1000
Wilmington, DE 19801-3062
Telephone (302) 552-5508
*deagle@klehr.com*
*pcostello@klehr.com*

and

Michael K. Coran, Esquire
Mary Ellen O'Laughlin, Esquire
Albert Keyack, Esquire
260 S. Broad Street, 4th Floor
Philadelphia, PA 19102-5003

Counsel for Plaintiff Aladdin Knowledge Systems, Ltd.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

I. INTRODUCTION .............................................................................................................1

II. BACKGROUND................................................................................................................1

   A.  Feitian's Sole Marketplace Is A Virtual Marketplace .......................................................1

   B.  Relevant Procedural History ...............................................................................................2

III.  STATEMENT OF FACTS .............................................................................................3

   A.  Aladdin's Business And Acquisition Of Patents At Issue ................................................3

   B.  Feitian's History With Aladdin ...........................................................................................5

   C.  The Feitian Website ............................................................................................................6

   D.  Feitian's U.S. Distribution Network Is An Online Network..............................................9

   E.  Additional Feitian Contacts Within The United States and Delaware ..............................10

IV.  ARGUMENT....................................................................................................................12

   A.  Legal Standards Applicable To Determination Of Jurisdiction.......................................12

      1.  Feitian concedes the applicability of Delaware's long-arm statute. .............................12

      2.  Federal due process analysis factors. ...........................................................................13

   B.  Application Of Legal Standards To Facts Relating To Feitian........................................16

      1.  Since Feitian entered into a written contract with a Delaware resident to distribute its products anywhere in the U.S., including Delaware, it can reasonably anticipate being haled into court here..........................................................................................................18

      2.  Since Feitian maintains an interactive English language Internet Website where infringing products can be ordered, the "something more" has been shown, warranting the exercise of personal jurisdiction. ..................................................................................19

   C.  If Not Summarily Denied, Discovery On Jurisdictional Issues Is Required Before The Motion Can Be Determined..................................................................................................22

   D.  Feitian's Motion To Quash Has No Basis In Fact Or Law...............................................24

1.  Aladdin has followed applicable law in serving Feitian. ...............................................24

2.  Aladdin has in fact properly served Feitian and the motion to quash should be denied.25

V.  CONCLUSION ......................................................................................................................26

## TABLE OF AUTHORITIES

### FEDERAL CASES

ALTECH Industrial v. Al Technology Specialty Steel Corp., 542 F. Supp. 53 (D. Del. 1982) ...................................................................................................13

Asahi Metal Industrial Co., Ltd. v. Superior Court of California, 480 U.S. 102 (1987) ...........................................................................................13, 14, 16, 20, 23

In re Automotive Refinishing Paint Antitrust Litigation, 2002 WL 31261330 (E.D. Pa. July 31, 2002) ......................................................................................22

Barrett v. Catacombs Press, 44 F. Supp. 2d 717 (E.D. Pa. 1990) ................................19, 21

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) ......................................................13

Centralized Health Systems, Inc. v. Cambridge Medical Instruments, Inc., 1989 WL. 136277 (E.D. Pa. Nov.8, 1989) .............................................................22, 23

Commissariat A L'Energie Atomique v. Chi Mei Electronics Corp., 395 F.3d 1315 (Fed. Cir. 2005) .................................................................................14, 23

Compaq Computer Corp. v. Packard Bell Electronics, Inc., 948 F. Supp. 338 (D. Del.1996) ............................................................................................................12

Dimensional Communications, Inc. v. OZ Optics, Ltd., 218 F. Supp. 2d 653 (D. N.J. 2002)............................................................................................................24

International Shoe v. Washington, 326 U.S. 310 (1945)......................................................13

Jeffreys v. Exten, 784 F. Supp. 146 (D. Del. 1992)............................................................12

Massachusetts School of Law at Andover, Inc. v. American Bar Association, 107 F.3d 1026 (3d Cir.1997)...................................................................................22

Max Daetwyler Corp. v. Meyer, 762 F.2d 290 (3d Cir.1985) ............................................12

McNeil Nutritionals, LLC v. The Sugar Assoc., No. C.A. 05-69 (D. Del. Apr. 29, 2005) .......................................................................23

Mellon Bank (East) PSFS, National Association v. Farino, 960 F.2d 1217 (3d Cir.1992) ............................................................................................................22

M&M Technologies, Inc v. Gurtler Chemicals, Inc., 2005 WL. 293509 (D. Del., Feb. 8, 2005) ................................................................................15, 19, 20

Motorola Inc. v. PC-Telegraph, 58 F. Supp. 2d 349 (D. Del. 1999) ...........................15, 21

Neo General Corp. v. Neo General Screening, Inc., 282 F.3d 883 (6th Cir. 2002)...........20

Pinker v. Roche Holdings Ltd., 292 F.3d 361 (3d Cir. 2002)......................................13, 22

S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc., 79 F. Supp. 2d 537 (E.D. Pa. 1999) ...............................................................................................................16

Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003) .............................19, 20

Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694 (1988)............................24

W. Africa Trading & Shipping Co., et al. v. London International Group, et al., 968 F. Supp. 996 (D. N.J.1997) ..............................................................................22

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980) ...............13, 15, 16, 22

Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997) ......................................................................................................................15

## STATE CASES

Boone v. Oy Partek AB, 724 A.2d 1150 (Del. Super. Ct. 1997)................................14, 16, 18

Harmon v. Eudaily, 407 A.2d 232 (Del. 1979)....................................................................13

## STATUTES

Del. C. § 3104(c)(1) .............................................................................................................21

## FEDERAL RULES

Federal Rule of Civil Procedure 4 ..........................................................................24, 25, 26

Federal Rule of Civil Procedure 12 .....................................................................................2

## TREATIES

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents................................................................................2, 24, 25

## I.    INTRODUCTION

Plaintiff Aladdin Knowledge Systems, Ltd. ("Aladdin") submits this memorandum of law in opposition to the motion of Defendant Feitian Technologies Co., Ltd. ("Feitian") to quash service and to dismiss for lack of personal jurisdiction.

## II.    BACKGROUND

### A.    Feitian's Sole Marketplace Is A Virtual Marketplace

Feitian is a Chinese company, a manufacturer of computer software security products. Feitian's marketplace is a "virtual" one.[1]  Feitian's products are not sold in any "brick and mortar" store or purchased through any paper catalogue; rather Feitian aggressively markets and sells these products exclusively online, through its virtual store and through its distributors' virtual stores, hyperlinked to Feitian's.  Anyone with a computer in this District or anywhere in the United States is a targeted customer of Feitian.  Included within the products marketed, sold and offered for sale by Feitian are products that infringe on U.S. patents for computer security technology owned by Aladdin.

Despite the fact that it wholly engages in its computer software business in a cutting edge 21st Century fashion, Feitian now uses hypertechnical 20th Century arguments as attempted justification for its motion.  As discussed below, not only does Feitian have sufficient minimum contacts within this District to subject it to the Court's jurisdiction, but also its mode of operation provides additional support for a finding of personal jurisdiction, requiring the denial of its motion to dismiss.

---

[1] As used in computer science, virtual is defined as "[c]reated, simulated or carried on by means of a computer or computer network."  The American Heritage Dictionary of English Language (4th Ed. 2000).

**B.     Relevant Procedural History**

Aladdin initiated this action by filing its complaint on March 11, 2005.   Feitian's principal place of business is located in Beijing, Peoples Republic of China.  China is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention") and accordingly, in or around August 2005, Aladdin effectuated service of its Complaint on Feitian in China in accordance with the Hague Convention.

On September 12, 2005, Feitian moved this Court, pursuant to Fed.R.Civ.P. 12, to dismiss for lack of personal jurisdiction.  In its motion, Feitian asserts: (1) it is not a resident of Delaware; (2) it has no purposeful contact with the State of Delaware; (3) it is not a Delaware corporation; (4) it does not do business in Delaware; (5) it has made no sales of products in Delaware; and (6) it does not direct its advertising to Delaware.  [Feitian's Opening Brief at 1]. Feitian also moved for the Court to quash Aladdin's service of the Complaint on the sole basis that "Plaintiff has not presented evidence that it obtained an executed certificate of service as required by Article 6 of the Hague Convention."  [Feitian Opening Brief at 4].

Feitian's arguments are both without merit and misleading.  Feitian purposefully has availed itself of doing business in this jurisdiction in a manner sufficient to subject itself to suit in this Court and Feitian has been served in accordance with the Hague Convention.  Aladdin requests that the Court deny Feitian's motion to dismiss or, if it deems it necessary, that the Court order limited jurisdictional discovery pursuant to Fed.R.Civ.P. 12(b)(1) before making a determination.  Alternatively, if the Court determines to dismiss the Complaint for lack of jurisdiction, the dismissal should be without prejudice so that Aladdin may re-file the Complaint in a jurisdiction where infringing sales already have occurred.  Aladdin further requests that the Court deny Feitian's baseless motion to quash "attempted service" of the Complaint.

2

### III.    STATEMENT OF FACTS

#### A.    Aladdin's Business And Acquisition Of Patents At Issue

Aladdin has sued Feitian along with eight (8) other defendants for infringement of two (2) patents on computer-security technology that it owns.  Aladdin's acquisition of the patents and the factual allegations concerning Feitian's infringement of the two patents are set forth in Aladdin's Complaint.  As part of its response in opposition to Feitian's motion to dismiss, Aladdin has submitted the Declaration of its Executive Vice President Technologies, Dany Margalit ("Margalit Declaration").  The Margalit Declaration is attached hereto as Exhibit "A".

Aladdin is a global provider of security solutions that reduce software theft, authenticate users and protect against unwanted Internet and e-mail content, including spam, viruses and spyware.  [Margalit Declaration, ¶3].  Aladdin's security products are organized into two segments: Software Digital Rights Management ("DRM") and Enterprise Security.  [Margalit Declaration, ¶4].  Aladdin's software DRM products allow software publishers to protect their intellectual property and increase revenues by reducing losses from software theft and piracy.  [Margalit Declaration, ¶4].  Aladdin's Enterprise Security solutions ensure that only legitimate users gain access to networks and PCs (authentication) and proactively protects networks against viruses, worms, spam and other unwanted Internet- and e-mail-borne content (content security).  [Margalit Declaration, ¶4].  Aladdin instituted this action to enforce its rights in two patents relating to USB devices that store personal identification credentials: (a) United States Patent No. 6,748,541 entitled "User-Computer Interaction Method For Use By A Population Of Flexibly Connectable Computer Systems" (the " '541 patent"); and (b) United States Patent No. 6,763,399 entitled "USB Key Apparatus For Interacting With A USB Host Via A USB Port" (the " '399 patent").  [Margalit Declaration, ¶5].

3

Dany Margalit and Yanki Margalit invented the subject matter of the '541 patent, a copy of which is attached to Aladdin's Complaint as Exhibit A. [Margalit Declaration, ¶6]. The United States Patent and Trademark Office duly and legally issued the '541 patent on June 8, 2004. [Margalit Declaration, ¶6]. Aladdin is the owner of the '541 patent by virtue of an assignment from Dany Margalit and Yanki Margalit of all right, title and interest in and to the '541 patent. [Margalit Declaration, ¶6]. Dany Margalit, Yanki Margalit and Rami Kastershtien invented the subject matter of the '399 patent, a copy of which is attached to Aladdin's Complaint as Exhibit B. [Margalit Declaration, ¶7]. The United States Patent and Trademark Office duly and legally issued the '399 patent on July 13, 2004. [Margalit Declaration, ¶7]. Aladdin is the owner of the '399 patent by virtue of an assignment from Dany Margalit, Yanki Margalit and Rami Kastershtien of all right, title and interest in and to the '399 patent. [Margalit Declaration, ¶7].

The '541 patent covers a method of using any portable or mobile device in order to store unique personal information or credentials in general, which can then be used to authenticate a user to a network, PC and/or application. [Margalit Declaration, ¶8]. The '399 patent covers portable devices or tokens featuring an on-board smartcard chip that communicates with a host through a USB port. [Margalit Declaration, ¶9].

Both the '399 patent and the '541 patent support Aladdin's token-based authentication solutions. [Margalit Declaration, ¶10]. Aladdin's tokens are about the size of an average house key, making them extremely portable and easy to use. [Margalit Declaration, ¶10]. Aladdin's tokens are used for secure network logon, secure VPN, Web sign on, simple sign on, secure email, authentication to computer applications and numerous other applications. [Margalit Declaration, ¶10]. USB-based authentication devices such as Aladdin's eToken have received

4

significant attention recently as a growing number of financial institutions have adopted the technology in their fight against unauthorized access, phishing[2], and the theft of confidential customer data. [Margalit Declaration, ¶11]. The devices provide a simple and reliable method for the identities of users to be verified by the eToken issuer. [Margalit Declaration, ¶11]. The devices also provide for the secure transfer of sensitive data, thus providing another layer of security. [Margalit Declaration, ¶11]. Aladdin sells its USB-based authentication devices, including its eToken, in the United States through its wholly owned subsidiary, Aladdin Knowledge Systems, Inc., located in New York. [Margalit Declaration, ¶12].

### B.    Feitian's History With Aladdin

Aladdin and Feitian have a prior business relationship. Through this relationship Feitian acquired the knowledge and information it is using to manufacture, import, advertise, offer for sale, sell and distribute products that infringe on Aladdin's '399 patent and '541 patent. [Margalit Declaration, ¶13]. Effective May 1, 1997, Aladdin and Feitian entered into a Distribution Contract, a copy of which is attached to Aladdin's Complaint as Exhibit C, pursuant to which Aladdin granted Feitian a non-exclusive license to market and distribute certain Aladdin products in China. [Margalit Declaration, ¶14].

During the term of the Distribution Contract, Aladdin provided Feitian with Aladdin's hardware based (i.e., portable key) computer software protection and enterprise security devices for resale by Feitian in China. [Margalit Declaration, ¶15]. The devices provided by Aladdin to Feitian for resale by Feitian if not sold by a licensee would infringe in the '399 and '541 patents. [Margalit Declaration, ¶15]. During the term of the Distribution Contract, Feitian also had

---

[2] "Phishing" is defined as "the practice of luring unsuspecting Internet users to a fake Web site by using authentic-looking email with the real organization's logo, in an attempt to steal passwords, financial or personal information, or to introduce a virus attack." Webster's Millennium Dictionary (v 0.9.6, 2003-2005).

unfettered access to the products provided to it by Aladdin for resale, including the types of internal and external components used in the products as well as their mechanical and electrical arrangements and connections. [Margalit Declaration, ¶16].

In or around August 1999, following Feitian's breach of the Distribution Contract by refusing to distribute Aladdin's products, for selling competing products and for failing to hold inventory, Aladdin terminated the Distribution Contract. [Margalit Declaration, ¶17]. Thereafter, using its knowledge of Aladdin's devices and technical information acquired from Aladdin during the parties' relationship, Feitian began to manufacture hardware based (i.e., portable key) computer software protection and enterprise security devices and sells such devices to customers directly and through the other Defendants in this matter who are distributors in the United States and elsewhere under the trademarks "Rockey" and "ePass." [Margalit Declaration, ¶18]. For example, Feitian released its Rockey 5 "smart card based software protection dongle" in August 2003. *See* Feitian's announcement dated August 11, 2003 of release of Rockey 5, attached as Exhibit "B." Feitian's "Rockey" and "ePass" products infringe either or both of Aladdin's '399 and '541 patents. [Margalit Declaration, ¶19].

### C.   The Feitian Website

According to the English-language interactive Internet website that Feitian maintains at URL <http://www.ftsafe.com> ("Feitian Website"), Feitian is a limited company existing under the laws of the Peoples Republic of China, with a principal place of business located at Bldg 7A, 5th Floor, No.40 Xueyuan Road, Haidian District, Beijing, P.R China. Relevant printouts from the Feitian Website are attached hereto as Exhibit "C".

According to the "About Feitian" section of the Feitian Website, Feitian "was organized in 1998 with the mission of creating world class software security products. Feitian expanded

6

quickly...Today Feitian is a fast growing privately held firm with a growing stake in markets outside of China. Feitian's commitment to the IT security field may be seen in its growing roster of product lines and development partners." [*See* Exhibit C].

In September 2004 the Feitian Website directed potential customers for the infringing products to its "Distributor[s] in U.S.A." – Defendants RF Ideas, Inc., d/b/a Security Tokens (RF Ideas"), and AZ-Tech Software, Inc. ("AZ-Tech"). Relevant portions of the Feitian Website as it existed in September 2004 are attached as Exhibit "D." RF Ideas is a Delaware corporation. Affidavit of Rick Landuyt ("Landuyt Affidavit"), ¶3. The Landuyt Affidavit is attached as Exhibit "E." The Feitian Website continues to identify RF Ideas as "one of our USA distributors," *see* Exhibit C, "News" section of Feitian Website announcing Feitian's participation in 2005 RSA Conference, and continues to identify AZ-Tech as one of its "Solutions Partners," *see* Exhibit C, "Partners" section of Feitian Website.

The Feitian Website describes the "Rockey" and "ePass" products and offers those products for sale in the United States and in this District. [*See* Exhibit C; Landuyt Affidavit, ¶6; Margalit Declaration, ¶20]. When Aladdin instituted this action, the interactive Internet website maintained by RF Ideas at URL <http://www.securitytokens.com>, contained a hyperlink to Feitian's Website and offered the infringing products for sale, but this hyperlink has been removed as a result of RF Ideas' settlement with Aladdin. [Landuyt Affidavit, ¶5; Margalit Declaration, ¶21]. Thus, Feitian sells, offers for sale and advertises infringing products in this District through the Feitian Website and other sources, as well as through other Defendants, identified by Feitian as its "Distributors" and "Solutions Partners," for direct sales of the infringing products exported by Feitian throughout the United States and to this District. As set forth above, one of these "Distributors," RF Ideas, is a Delaware corporation. Hyperlinks to

7

other U.S. based Defendants' websites are contained on Feitian's Website. [*See* Exhibit C, "Solutions Partners" section].

Any Delaware resident can purchase the infringing products directly from Feitian's Website. In addition, any Delaware resident can "evaluate" the infringing products by ordering a "Software Developer's Kit" directly from Feitian's Website. The Software Developer's Kit includes the Rockey or ePass "hardware, a software CD (including development package, documents and sample programs), a Developer's Guide and some brochures." [*See* Exhibit C, "Evaluate Rockey" and "Evaluate ePass" sections]. As set forth in the "Products" section of Feitian's Website: "[a]ll Feitian's products have complete Software Developer's Kits that include all the tools necessary for you to easily integrate software protection and security into your environment. If you are interested in evaluation our products, you may request an SDK simply by completing the [online] application form." [*See* Exhibit C; Exhibit D, "Products" section].

The Feitian Website displays for sale products that infringe on one or more of Aladdin's patents in suit, provides contact information for placing orders via an Internet linked application form, telephone, fax, or email, and provides extensive utility software downloads for operating the infringing products. [*See* Exhibit C, "Products" "Download Resources" and "Sales" sections]. Throughout the Feitian Website there are direct email links to Feitian; when one clicks on the highlighted link, "world.sales@ftsafe.com," an email box immediately appears, addressed to Feitian, for direct electronic communication between the customer and Feitian. [*See, e.g.*, Exhibit C, "Product Case and Color Options"]. The Feitian Website prominently advertises extensive customer support, free of charge, for both the infringing products and the software

8

downloads. [*See* Exhibit C, "Technical Support," "Download Resources" and "Sales" sections;
Exhibit D, "Software Developer's Kit," "Support," "Sales" and "Products" sections].

The Feitian Website invites customers to find an authorized U.S. Distributor or Solution
Partner of its products through online inquiries or to become a Feitian channel partner by
completing an online Channel Partner Form. [*See* Exhibit C, "Partners" section].

### D.    Feitian's U.S. Distribution Network Is An Online Network

Not only are infringing products purchased online directly from the Feitian Website, but
Feitian communicates virtually exclusively with its U.S. distributors electronically. [Landuyt
Affidavit, ¶9]. When Feitian receives a request for a product from a U.S. based customer,
Feitian sends RF Ideas an email and requests that RF Ideas get in touch with the customer.
[Landuyt Affidavit, ¶9]. RF Ideas then follows up with the prospective customer by email and
tells the customer to go to RF Ideas' Website and click on Security Tokens, which would then
show the customer Feitian's products on the Feitian Website. [Landuyt Affidavit, ¶9]. Since RF
Ideas' settlement with Aladdin, any prospective customer inquiring about the infringing products
on Security Tokens' website is directed to Feitian. [Landuyt Affidavit, ¶9].

Feitian does not have a paper catalogue or brochure. [Landuyt Affidavit, ¶8]. Feitian
never requested that RF Ideas do any print advertising for it and RF Ideas never did any print
advertising for Feitian. [Landuyt Affidavit, ¶8]. All information concerning Feitian's products
is obtainable by .pdf from Feitian's Website, and is forwarded to the customer in that format.
[Landuyt Affidavit, ¶8]. Feitian provides an image of documents to be used in marketing and
selling its products. RF Ideas does not make its own .pdf file of Feitian's products with RF
Ideas' name on it; all .pdf files were on Feitian's Website. [Landuyt Affidavit, ¶8]. RF Ideas'

9

distribution of Feitian products, including the infringing products, is done exclusively through its "online store." [Landuyt Affidavit, ¶10].

As a further indication that it conducts its business through its interactive Internet website, Feitian asks its potential customers which "Search engine" they used to "find us." [*See* Exhibit C, "Evaluate Rockey" and "Evaluate ePass" sections].

### E.    Additional Feitian Contacts Within The United States and Delaware

RF Ideas, a Delaware corporation, was a U.S. distributor of Feitian exports/imports that infringe either or both of Aladdin's '399 and '541 patents pursuant to a written contract with Feitian. [Landuyt Affidavit, ¶¶3-4, 6-7; Margalit Declaration, ¶20]. As a distributor for Feitian, RF Ideas was authorized to distribute Feitian's infringing products anywhere in the United States, including Delaware. [Landuyt Affidavit, ¶4]. At the time this action was filed, Feitian's infringing products were described on, and purchases of them could be made directly from, the active commercial Internet website of RF Ideas. [Landuyt Affidavit, ¶6; Margalit Declaration, ¶21]. RF Ideas' Internet website also had a hyperlink to the English language interactive Internet website of Feitian. [Landuyt Affidavit, ¶5; Margalit Declaration, ¶20]. On May 13, 2005, RF Ideas and Aladdin entered into a Settlement Agreement and Release and a Consent Judgment and Order of Dismissal with Prejudice, subsequently filed in the Court. [Landuyt Affidavit, ¶7; Margalit Declaration, ¶21]. RF Ideas has acknowledged the validity and enforceability of Aladdin's '399 patent and '541 patent, and has agreed not to import, sell, distribute, advertise or offer for sale, Feitian's infringing products. [Landuyt Affidavit, ¶7; Margalit Declaration, ¶21].

Feitian began international sales in 2000 and now has customers in over 50 countries, including the United States. [Margalit Declaration, ¶22]. In the Feitian Partner Newsletter –

10

June 2005, Cecile Stadler, Feitian's Vice President of Global Markets, advises that "[s]ales for the first 5 months of 2005 are running 233% over last year, including some significant new sales for ePass.  The split between Rockey/ePass is now about 55/45, quite a bit different than previous years where Rockey sales were 70% (2004) and 82% (2003)…The only region where sales remain far below expectations is the US/Canada…We are making steady progress.  Please keep up the good work." [Landuyt Affidavit, ¶11].

Upon information and belief, more than 30% of Feitian's exports, including exports of infringing products, are directed to the United States.  *See* Dun & Bradstreet analysis of Feitian completed December 10, 2004 and Dun & Bradstreet Business Information Report dated July 1, 2003, collectively attached as Exhibit "F."  Feitian advertises in the United States and in this District, through the Feitian Website and the interactive websites of other Defendants, who are U.S. distributors for Feitian, including RF Ideas and AZ-Tech. [Landuyt Affidavit, ¶6; *see also*, websites of AZ-Tech, RS-Computer and Secure Technology, portions of which are attached as Exhibit A to Aladdin's response in opposition to the motion to dismiss filed by those Defendants].  Feitian is listed as one of the advertisers for a U.S. publication, Card Technology News.  The Index of Advertisers for Card Technology News is attached as Exhibit "G."  Feitian regularly participates in industry-specific conferences in the United States, including the 2004 and 2005 RSA Conference in San Francisco, California, "the world's largest gathering of information security professionals."  [*See* Exhibits C and D, "News" sections].  Feitian announced that it would attend the 2005 RSA Conference "with one of our USA distributors, Security Tokens." [*See* Exhibit C, "News" section].[3]  Feitian is a certified member of the OPSEC Alliance, a U.S. based alliance "founded in April 1997 with the goal of providing users

---

[3] The Delaware corporation, RF Ideas, Inc., does business as Security Tokens.  [Landuyt Affidavit, ¶2].

with an integrated, best-of-breed Internet security solution...[now] grown to over 350 partners making OPSEC the leading platform alliance for integrated Internet security solutions." *See* information about OPSEC Partners, URL http://www/opsec.com/solutions/allopseclhtml, portions of which are attached as Exhibit "H." [*See also*, Exhibit C, "News" section].

Upon information and belief, Feitian has employees in the United States. Feitian's Vice President of Global Marketing until January 2004, John O'Mara, is a U.S. citizen and his replacement, Cecile Y. Stadler, is also a U.S. citizen. [*See* Exhibits B and C, "News" section]. Feitian's announcement of the appointment of Ms. Stadler made note of the fact that "[s]he is a first generation American Chinese, comfortable in both east and west cultures." [*See* Exhibits B and C, "News" section].

## IV.    ARGUMENT

### A.    Legal Standards Applicable To Determination Of Jurisdiction

The determination of whether to exercise personal jurisdiction over a defendant involves a two-step analysis. First, the court must determine whether the Delaware long-arm statute authorizes the exercise of jurisdiction. *See Max Daetwyler Corp. v. Meyer*, 762 F.2d 290, 293 (3d Cir.1985); cert. denied, 474 U.S. 980 (1985); *Jeffreys v. Exten*, 784 F. Supp. 146, 150 (D. Del. 1992). Second, if such statutory authority exists, the court must decide whether exercising that authority comports with the requirements of the Due Process Clause. *Id.*; *see also Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 948 F. Supp. 338, 342 (D. Del.1996).

### 1.    Feitian concedes the applicability of Delaware's long-arm statute.

When *in personam* jurisdiction is challenged by a motion to dismiss, the plaintiff has the burden of showing a basis for long-arm jurisdiction; however, this burden is met by a threshold

prima facie showing that jurisdiction is conferred by the statute. *See Harmon v. Eudaily*, 407 A.2d 232 (Del. 1979). The record, furthermore, is construed most strongly against the moving party. *Id.* The allegations of the complaint are therefore accepted as true in considering the jurisdictional question. *See ALTECH Indus. v. Al Tech Specialty Steel Corp.*, 542 F. Supp. 53 (D. Del. 1982). Here, Feitian agrees that whether the Delaware long-arm statute "extends to the full extent that due process would permit" is not at issue. [Feitian Opening Brief at 1]. Accordingly, because Feitian concedes that statutory authority exists authorizing the exercise of jurisdiction in this matter, there is no need to conduct the first step of the two-step jurisdiction analysis. The second step, involving an analysis of due process considerations, is discussed below.

## 2. Federal due process analysis factors.

The Due Process Clause requires: (1) that the "defendant ha[ve] constitutionally sufficient 'minimum contacts' with the forum," *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)); and (2) that "subjecting the defendant to the court's jurisdiction comports with 'traditional notions of fair play and substantial justice,'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The first requirement, "minimum contacts," has been defined as "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp.*, 471 U.S. at 475). Second, jurisdiction exists only if its exercise "comports with traditional notions of fair play and substantial justice," i.e., the defendant "should reasonably anticipate being haled into court" in that forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

13

In *Asahi*, the Supreme Court "was split as to what would constitute sufficient minimum contacts with the forum state under the stream of commerce theory." *Commissariat A L'Energie Atomique v. Chi Mei Electronics Corp.*, 395 F.3d 1315, 1321 (Fed. Cir. 2005) (discussing *Asahi*, 480 U.S. at 112, 114-115). Justice Brennan and three others found that it was sufficient to place the product in the stream of commerce. Justice O'Connor, writing for four members, urged that more contact should be required than that, there must be '[a]dditional conduct of the defendant [to] indicate an intent or purpose to serve the market in the forum State [such as]…establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state.'" *Commissariat A L'Energie Atomique*, 395 F.3d at 1321, 1322 (quoting *Asahi*, 480 U.S. at 117).

"Delaware law is unclear as to whether the proper interpretation of the long arm statute accords with Justice O'Connor's or Justice Brennan's view as expressed in *Asahi*." *Commissariat A L'Energie Atomique*, 395 F.3d at 1322. However, in terms directly applicable to the facts of this case, at least one Delaware court has held that where a foreign manufacturer engages an American company to be its exclusive distributor in the United States, "[i]mplicit in this agreement is the fact that [the U.S. corporation] solicit business from the Country as a whole, including Delaware. Thus, not only did [the foreign manufacturer] anticipate that its product would be distributed to all states including Delaware, it took affirmative steps to direct its product here through this agreement." *Boone v. Oy Partek AB*, 724 A.2d 1150, 1160 (Del. Super. Ct. 1997). In concluding that the foreign manufacturer, a Finnish company, "through its distribution agreement with [a New York corporation], has engaged in the additional conduct necessary under the stream of commerce theory so as to establish minimum contacts with Delaware," the court noted that "[t]he United States Supreme Court has consistently held that the

existence of a distribution agreement between the defendant and the forum is sufficient to show

the defendant had minimum contacts with the forum State," citing *World-Wide Volkswagen* and

*Asahi*, and further noted that "numerous [lower] courts have concluded that a manufacturer who

distributes their product through a national or regional distributor have [sic] established

minimum contacts with the forum state. (Citations omitted)." *Id.* at 1160 n.5, 1160-1161.

Similarly, in a patent infringement action, *M&M Technologies, Inc. v. Gurtler Chemicals, Inc.*,

2005 WL 293509, *3 (D. Del., Feb. 8, 2005) (Sleet, J.), this Court stated it "agrees that a party

who contracts to have its product distributed throughout the United States is subject to

jurisdiction in any state."

Although this Court has noted that "the mere existence of [an Internet] website does not

rise to the level of regularly soliciting business in Delaware," *Id.* at *5, it acknowledged that the

maintenance of an *interactive* Internet website from which "the customers could order

products...and obtain customer support directly from the defendant by telephone and Internet"

was support for a finding of personal jurisdiction based on the stream of commerce theory. *Id.* at

*6, 7, discussing *Motorola Inc. v. PC-Tel*, 58 F. Supp.2d 349 (D. Del. 1999). The Third Circuit

has developed a framework of legal analysis when the jurisdictional question revolves around the

operation of an Internet website. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119

(W.D. Pa. 1997). Generally, jurisdiction depends on the degree of commercial interactivity

available via the website, and jurisdiction is proper if the interactivity reflected specifically an

intended interaction with residents of the forum state. *Id.* at 1124. A defendant cannot avoid

jurisdiction in a particular state if it could have chosen to not make sales available within that

jurisdiction and instead openly seeks to make such sales. *Id.* at 1126-27. A website targeted at a

15

particular jurisdiction is likely to give rise to personal jurisdiction. *S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.*, 79 F. Supp.2d 537, 540 (E.D. Pa. 1999).

As discussed above, after finding the existence of minimum contacts, the courts must next consider whether the exercise of personal jurisdiction is fair and reasonable, *i.e.*, it must determine whether the contacts with the forum stated were "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp.*, 444 U.S. at 292. Although in this analysis the burden on the defendant, especially a defendant "faced with defending a law suit in a foreign legal system," is the primary concern, "[h]owever, once minimum contacts have been established, the interests of the plaintiff and the forum will usually favor the exercise of jurisdiction." *Boone v. Oy Partek AB*, 724 A.2d at 1161 (citing *Asahi*, 480 U.S. at 114).

### B. Application Of Legal Standards To Facts Relating To Feitian

Two of the main factors considered by this Court and the Third Circuit to be determinative of purposefully doing business such as to reasonably anticipate being haled into court in this jurisdiction exist here. They are: (1) Feitian entered into a written distribution agreement to market and sell its products nationwide with a U.S. entity, in this case, a Delaware corporation, RF Ideas. [Landuyt Affidavit, ¶¶3-4] and (2) Feitian maintains a globally accessible interactive English language website from which customers can place orders directly, download products, download software CDs, including development packages, documents and sample programs, obtain technical support, become a U.S. distributor or "Channel Partner" of Feitian and make sales inquiries [*See* Exhibit C, "Evaluate ePass," "Evaluate Rockey," "Download Resources," "Technical Support," "Partners" and "Sales" sections; *see also,* Exhibit D, "Software Developer's Kit" section].

16

The Feitian Website is specifically designed to target customers within the United States and within Delaware, and provides software downloads available to users of the infringing products located here:

- Customers ordering the ePass Developer's Kit and the Rockey Developer's Kit directly from the Feitian Website are asked for a "Zip Code." [*See,* Exhibit C, "Evaluate ePass" and "Evaluate Rockey" sections].[4]

- Customer technical support is provided directly from the Feitian Website. [*See* Exhibit C, "Download Resources" and "Sales" sections].

- Specific portions of the Feitian Website are directed to United States customers and permit entering addresses in any of the fifty states. [*See,* Exhibit C, "Evaluate ePass" and "Evaluate Rockey" sections].

- U.S. customers are invited to submit online application forms to become an "Authorized" U.S. distributor of Feitian's products or a Feitian "Channel Partner." [*See* Exhibit C, "Partners" section].

The Affidavit of Zhao Wenwang, Feitian's Assistant Manager, Department of International Sales & Marketing, is attached as Exhibit A to Feitian's motion ("Wenwang Affidavit"). The Wengwang Affidavit contains statements that are contrary to the statements and other representations made on the Feitian Website, including the statement that "Defendant's website is not directed to Delaware residents." [Wenwang Affidavit, ¶13]. In fact, as discussed above, the informational screens permit entering Delaware as the state of residence of the

---

[4] Zip Codes are only used in the United States. ZIP Code is an acronym for "Zone Improvement Plan," a coding system introduced by the U.S. Post Office Department in 1963 to designate a code on maps for every address throughout the United States. *See* www.zip-codes.com.

website user. [*See* Exhibit C, "Evaluate ePass" and "Evaluate Rockey" sections]. As discussed

further below, in view of Feitian's contractual relationship with a Delaware entity and due to the

nature of the Feitian Website, a showing of "something more" than a website accessible in

Delaware to establish personal jurisdiction over Feitian plainly has been made.

> **1.     Since Feitian entered into a written contract with a Delaware resident to distribute its products anywhere in the U.S., including Delaware, it can reasonably anticipate being haled into court here.**

As noted above, the Court should consider the carefully worded Wenwang Affidavit as

instructive not only for what it states, but for what it omits. Mr. Wenwang states that Feitian has

not "contracted with persons residing in Delaware to act on its behalf with respect to marketing,

distributing or servicing any of Defendant's goods or services." [Wengwang, ¶4]. This

averment is not true and is misleading to the Court. In fact, Feitian executed a written

distribution agreement with a Delaware resident, RF Ideas, a Delaware corporation. [Landuyt

Affidavit, ¶¶3-4]. The Wenwang Affidavit artfully avoids any mention of RF Ideas and avoids

admitting or denying whether any of Feitan's infringing products have been sold in Delaware by

its distributors, and instead narrowly avers only that Feitian itself has never sold products or

received revenue directly from a customer in Delaware. [Wenwang Affidavit, ¶13]. The

Wenwang Affidavit is noticeably silent as to whether RF Ideas, or any of Feitian's other

distributors or Solutions Partners, have made sales in Delaware.

As discussed above, where, as here, a foreign manufacturer engages an American

company to solicit business in the United States, including in Delaware, it "has engaged in the

additional conduct necessary under the stream of commerce as to establish minimum contacts

with Delaware." *Boone v. Oy Partek AB*, 724 A.2d 1150, 1156 (Del. Super. Ct. 1997). Thus, in

18

these circumstances, a finding that Feitian is subject to this Court's personal jurisdiction comports with due process requirements.   Merely as a result of its distribution agreement with RF Ideas, Feitian's motion to dismiss could be denied.   *See M&M Technologies, Inc v. Gurtler Chemicals, Inc.*, 2005 WL 293509, *3, 6, 7 (D. Del., Feb. 8, 2005).

> **2.   Since Feitian maintains an interactive English language Internet Website where infringing products can be ordered, the "something more" has been shown, warranting the exercise of personal jurisdiction.**

In addition to its written distribution agreement with a Delaware corporation, Feitian purposefully avails itself of doing business in Delaware, the "something more" that satisfies the more stringent view of the stream of commerce theory expressed by Justice O'Connor in *Asahi*, 480 U.S. at 117.   As the attached portions of Feitian's Website establishes, Feitian maintains an interactive Internet website designed so that customers in the U.S., including in Delaware, may directly order products that infringe Aladdin's patents.   [*See, e.g.,* Exhibits C and D, "Evaluate ePass," "Evaluate Rockey," and "Software Developer's Kit" sections].   In Delaware, the law of personal jurisdiction currently requires "something more" than a globally interactive website.   *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003) (citing *Barrett v. Catacombs Press*, 44 F. Supp.2d 717, 726 (E.D. Pa. 1990)).   The "something more" requirement has been satisfied by communications or business trips to the forum, purchase contracts with forum residents, contracts that apply the law of the forum state, and advertising or other marketing activities directed to the forum.   *Id.*   As such, the "something more" required by the case law is considered a lower threshold requirement than would be imposed in the absence of a worldwide interactive Internet website.   *Id.*

19

In the *Toys 'R Us* case, the website being examined, besides being written entirely in Spanish, did not allow users to input a billing address outside of Spain, provided prices in Spanish currency only and provided an "in country" Spanish telephone number, i.e., displaying a number without displaying the country code. *Id.* at 450. It was therefore not difficult for the court to find that the website was not designed to reach customers in the forum state. *Id.* at 454. This is in complete and stark contrast to the Feitian Website that is laid out specifically for the United States market, is written entirely in English and facilitates communications with customers in *all* fifty states. [*See* Exhibits C and D]. The Feitian Website, unlike the website in *Toys 'R Us*, creates jurisdiction in Delaware because it is "interactive to a degree that reveals specifically intended interaction with the residents of the state." *Id.* at 453 citing *Neo Gen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002); *see also, M&M Technologies, Inc v. Gurtler Chemicals, Inc.*, 2005 WL 293509 at *6, 7.

Feitian tries to avoid the effect of its interactive Internet website by presenting information through the carefully parsed language of the Wengwang Affidavit. The Wengwang Affidavit recites the absence of those factors found to be requisite for the exercise of personal jurisdiction in the pre-electronic age, while ignoring those factors that exist in Feitian's business model and actual business operations that are relevant to a post-electronic age due process analysis. Mr. Wengwang states, "Defendant has made no sales of the accused products in Delaware whatsoever" nor "sales of any product or service of any kind in Delaware." [Wenwang Affidavit, ¶¶7-8]. However, this sheds no light on the extent to which residents of Delaware have taken advantage of the customer support and software downloads available on the Feitian Website—acts supporting minimum contacts that are not within the narrowly defined term "sales" that Mr. Wenwang denies took place. Further, although Mr. Wenwang also states,

20

"Defendant does not direct any of its advertising specifically toward Delaware residents, " he does not deny that Feitian regularly solicits business within Delaware through the Feitian Website. [Wenwang Affidavit, ¶6]. Tellingly, Mr. Wenwang does not contend that the business offers, customer support and software downloads for operating the products that infringe on Aladdin's patents in suit contained on the Feitian Website, accessible and available to any Delaware resident, do not constitute the "perform[ance] [of] any character of work or service in the State" or "a persistent course of conduct in the State," grounds for a finding of personal jurisdiction under Delaware's long-arm statute. *See* 10 Del. C. § 3104(c)(1) and (4).

In this case, "something more" is also satisfied by the ability to provide software downloads and customer support from the Feitian Website. [*See* Exhibit C, "Technical Support" and "Products" sections]. The Delaware courts already have intimated that such facts will fulfill the requirement. *See, e.g., Motorola, Inc. v. PC-Tel, Inc.*, 58 F. Supp.2d 349, 352 (D. Del. 1999) (noting that defendant maintained an interactive website with software downloads and customer support via web and phone). The information Feitian posts on its website reveals that a very substantial likelihood exists that the "something more" required by the law is present and satisfied by the activities of Feitian.

Feitian has aggressively entered the U.S. market and is admittedly "making steady progress." [*See* Feitian Partner Newsletter – June 2005, attached as Exhibit 3 to Landuyt Affidavit]. Feitian conducts its business almost exclusively electronically, through the Feitian Website and the hyperlinks to the Feitian Website from the interactive websites of its Solutions Partners and Distributors. Feitian executed a written distribution agreement with a Delaware corporation in order to market, sell, distribute and advertise its products, including the infringing products, for sale in the United States, including Delaware. In view of these contacts with the

21

forum state and the interests of Aladdin in obtaining relief here, as well as "the combined interests of the sovereigns in advancing substantial social policies," the exercise of this Court's personal jurisdiction on Feitian is fair and reasonable. *See World-Wide Volkswagen*, 444 U.S. at 292. Accordingly, Feitian's motion to dismiss should be denied.

**C.    If Not Summarily Denied, Discovery On Jurisdictional Issues Is Required Before The Motion Can Be Determined**

Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002), courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is "clearly frivolous." *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir.1997). If a plaintiff presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state," *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992), the plaintiff's right to conduct jurisdictional discovery should be sustained.

Where the plaintiff has made this required threshold showing, courts within this Circuit have sustained the right to conduct discovery before the district court dismisses for lack of personal jurisdiction. *See, e.g., In re Automotive Refinishing Paint Antitrust Litigation*, 2002 WL 31261330, *9 (E.D. Pa. July 31, 2002) (denying motion to dismiss and permitting jurisdictional discovery where plaintiff made a "threshold prima facie showing of personal jurisdiction over Defendants"); *W. Africa Trading & Shipping Co., et al. v. London Int'l Group, et al.*, 968 F. Supp. 996, 1001 (D. N.J.1997) (denying defendant's motion to dismiss where the plaintiffs' "request for jurisdictional discovery is critical to the determination of whether [the court can] exercise personal jurisdiction over the defendant"); *Centralized Health Systems, Inc. v.*

*Cambridge Medical Instruments, Inc.*, 1989 WL 136277, *1 (E.D. Pa. Nov.8, 1989) (holding motion to dismiss in abeyance to permit party to take discovery on jurisdiction where distribution arrangement might satisfy minimum contacts). This Court, in fact, has construed quite liberally the "some indication" requirement needed to establish the need for limited jurisdictional discovery. *See McNeil Nutritionals, LLC v. The Sugar Assoc.*, Memorandum and Order at 7, No. C.A. 05-69 (D. Del. Apr. 29, 2005) (Sleet, J.); *see also,Commissariat A L'Energie Atomique*, 395 F.3d 1315, 1323, 1324 (Fed. Cir. 2005) (Where, as here, the plaintiff "has gone beyond factual allegations and has already made a prima facie case for [defendant's] use of an established distribution network that likely result in substantial sales of its products in Delaware…this showing likely satisfies the standard set forth by Justice Brennan in *Asahi*, of the 'regular and anticipated flow of products from manufacture to distribution to retail sale,' 480 U.S. at 117…However, [plaintiff] is entitled to jurisdictional discovery to determine whether it can satisfy Justice O'Connor's more restrictive version of the stream of commerce theory" and it was an abuse of process for the court to deny jurisdictional discovery.).

In view of the above, if the Court does not summarily deny Feitian's motion to dismiss, because Aladdin has made the required threshold showing that Feitian has the requisite contacts with this District, Aladdin should be granted limited jurisdictional discovery to investigate the contacts Feitian has with Delaware. At a minimum, Aladdin is entitled to discovery sufficient to investigate the truth of other jurisdiction-specific statements Feitian has made in its motion and in the Wengwang Affidavit.

23

### D.     Feitian's Motion To Quash Has No Basis In Fact Or Law

#### 1.     Aladdin has followed applicable law in serving Feitian.

Fed.R.Civ.P. 4 governs service of process and Rule 4(h) governs service of process on foreign corporations outside of the United States.  Pursuant to Fed.R.Civ.P. 4(h)(2) if a waiver has not been obtained, service may be made in any manner authorized by Fed.R.Civ.P. 4(f). Rule 4(f) provides that service "may be effectuated in a place not within any judicial district of the United States: (1) by any internationally agreed upon means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents…" ("Hague Convention").  The text of the Hague Convention is printed following the text of Rule 4.  The Hague Convention only applies to service effectuated outside the United States.  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 701 (1988).

Service in accordance with the Hague Convention is not mandatory, but because China is a signatory to the Hague Convention Aladdin effectuated service upon Feitian in accordance with its provisions.  *See* Affidavit of Rick Hamilton ("Hamilton Affidavit") attached as Exhibit 1 to the Affidavit of Mary Ellen O'Laughlin, attached hereto as Exhibit "I"; *see also, Dimensional Communications, Inc. v. OZ Optics, Ltd.*, 218 F. Supp.2d 653, 657 (D. N.J. 2002).  Further, pursuant to Fed.R.Civ.P. 4(l), if service is not waived, proof of service is to be made by the person effecting service.  Here, service was not waived by Feitian, and therefore proof of service on Feitian is being made by the person effecting service on Feitian.  [Hamilton Affidavit, ¶¶6-7, 9].

**2.    Aladdin has in fact properly served Feitian and the motion to quash should be denied.**

Feitian does not argue that Aladdin failed to follow the appropriate procedures under the Hague Convention and it does not argue that it was not served with Aladdin's Complaint. Feitian's sole argument in support of its motion to quash is contained in one disingenuous sentence: "Plaintiff has not presented evidence that it obtained an executed certificate of service as required by Article 6 of the Hague Convention." [Feitian Opening Brief at 4]. Even if the argument had merit, which it does not, the Court should not consider it because it is premature. The return of an executed certificate of service to the serving plaintiff does not occur contemporaneously with the service, even when the service is made domestically. The fact that an executed certificate of service has not yet been filed does not mean that service was not made and it does not provide a basis for quashing service. Fed.R.Civ.P. 4, which governs service, specifically anticipates this argument and rejects it. Fed.R.Civ.P. 4(l) provides, "[f]ailure to make proof of service does not affect the validity of service."

Further, as set forth in the Hamilton Affidavit, Aladdin has followed the procedures required by the Hague Convention in serving Feitian. [Hamilton Affidavit, ¶¶2-5]. The Chinese government has processed the papers that were filed and all that remains is for the Chinese authorities to deliver proof of service document, which is expected to arrive in the near future. [Hamilton Affidavit, ¶¶6-9; *see also* Affidavit of Mary Ellen O'Laughlin, ¶7]. Once the proof of service document is received from the Chinese authorities, Aladdin will file it with the Court.

Aladdin identified and followed applicable law in serving Feitian in this action. Aladdin has also provided factual evidence establishing that it did properly serve Feitian. Feitian has not provided any legitimate reason for moving to quash Aladdin's service; rather, Feitian's sole

25

proffered basis for quashing Aladdin's "attempted service" – that Aladdin "has not presented evidence that it obtained an executed certificate of service" - does not support a motion to quash. [Feitian Opening Brief at 4]. *See* Fed.R.Civ.P. 4(l). It may reasonably be inferred that Feitian's motion is part of its overall attempt to avoid the consequence of its tortious conduct. Because there is no basis in law or fact for Feitian's motion to quash, it should be denied.

## V.    CONCLUSION

Feitian's motion to dismiss and motion to quash should both be denied. As set forth above, Feitian's interactive English language Internet website is specifically directed toward a U.S. market, including residents of Delaware. One of Feitian's U.S. distributors, which has acknowledged the validity and enforceability of Aladdin's patents and that it distributed Feitian's products that infringe on those patents, is a Delaware corporation. Feitian's contention that it does not maintain an office or mailing address in Delaware and its other contentions relevant to due process issues in the pre-electronic age, is not supportive of its claim that this Court lacks personal jurisdiction in view of the facts that establish that Feitian conducts business almost exclusively through electronic communications and that the infringing products can be purchased in Delaware exclusively through direct electronic communications with Feitian. Further, Aladdin has met its burden of demonstrating that discovery on the limited issue of personal jurisdiction is warranted prior to a final ruling on this motion.

In addition, there is now sufficient factual basis to demonstrate that service has been proper and that it was effectuated on Feitian, requiring the denial of its motion to quash. In the

event that Aladdin's claims against Feitian are dismissed, dismissal should be without prejudice so that Aladdin may re-file elsewhere.

KLEHR, HARRISON, HARVEY, BRANZBURG
& ELLERS LLP

Date: October 26, 2005                    By:    _David S. Eagle, Esquire (Bar No. 3387)_
                                          David S. Eagle, Esquire (Bar No. 3387)
                                          Patrick A. Costello, Esquire (Bar No. 4535)
                                          919 Market Street
                                          Suite 1000
                                          Wilmington, DE  19801-3062
                                          Telephone (302) 552-5508
                                          *deagle@klehr.com*
                                          *pcostello@klehr.com*

                                                 - and –

                                          Michael K. Coran, Esquire
                                          Mary Ellen O'Laughlin, Esquire
                                          260 South Broad Street, 4th Floor
                                          Philadelphia, PA  19102
                                          Telephone (215) 568-6060

                                          Attorneys for Plaintiff
                                          Aladdin Knowledge Systems, Ltd.