IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF DELAWARE**

Aladdin Knowledge Systems, Ltd.,   :
      Plaintiff,    :
   v.       :   CIVIL ACTION NO. 05-149 (GMS)
          :
Feitian Technologies Co., Ltd., et al.,  :
          :
     Defendants.   :
          :

# EXHIBIT A

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
NO. 05-149

ALADDIN KNOWLEDGE          )    DEPOSITION UPON
SYSTEMS, LTD.,             )
                          )    ORAL EXAMINATION
     Plaintiff,            )
                          )         OF
  - vs -                   )
                          )    PETER RASCH
FEITIAN TECHNOLOGIES       )
CO., LTD., ET AL.,         )
                          )
     Defendants.           )
- - - - - - - - - - -

TRANSCRIPT OF DEPOSITION,
taken by and before EDWARD J. RUGGERI,
Professional Reporter and Notary Public, at
the LAW OFFICES OF KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, 260 South Broad Street,
Philadelphia, Pennsylvania, on Thursday,
August 31, 2006, commencing at 10:05 a.m.

ERSA COURT REPORTERS
30 South 17th Street
United Plaza - Suite 1520
Philadelphia, PA 19103
(215) 564-1233

ORIGINAL

PETER RASCH

9

1    Q.        Okay.  And what is the business of

2    RS-Computer?

3    A.        Maintenance and selling products --

4    computer products.

5    Q.        How long have you been the president of

6    RS-Computer?

7    A.        Since it was founded.  Since 1989 -- sorry,

8    19 -- let me think about it -- I think '89.

9    Q.        Okay.  Are there any other officers?

10   A.        No.

11   Q.        Okay.

12   A.        We have -- yes, we have another officer.

13   That's right, yeah.  He has some business here in

14   Germany -- only in Germany here.

15   Q.        How many employees does RS-Computer have?

16   A.        Five.

17   Q.        Who is in charge of sales in the United

18   States for RS-Computer?

19   A.        Can you repeat that, please.

20   Q.        Who at RS-Computer is in charge of sales to

21   the U.S.?

22   A.        We don't have any business in the United

23   States.

24   Q.        Okay.  Since 1999 have you had any business

1   in the United States?

2   A.     No.

3   Q.     Since 1999 have you attempted to have

4   business in the United States?

5   A.     No.

6   Q.     Do you understand what an offer -- if I ask

7   you what an offer of sale is?  Do you understand

8   what that term is?

9   A.     Yeah.  Let's say generally, yes.

10   Q.     Okay.  Have you made any offers of sale of

11   products or services to anyone in the United States

12   since 1999?

13   A.     Not in Delaware, not in California.

14   Q.     That wasn't my question.  My question was

15   have you made any offers for sale of products or

16   services --

17   A.     No, no.  Offer not -- offer not, no.

18   Q.     Pardon?

19   A.     Offer not.

20   Q.     Offer not?

21   A.     No.

22   Q.     Okay.  Have you made any sales or provided

23   any services to anyone in the United States?

24                 MR. REEVES:  And I'll object to

PETER RASCH

11

1       that on the basis that it goes outside of

2       Delaware and California.

3               Peter, you can answer to the

4       extent the question calls for information

5       about Delaware and California.

6               THE WITNESS:  No in Delaware, no

7       in California.

8   BY MS. O'LAUGHLIN:

9   Q.       And my question as to whether or not you've

10  made sales, offers of sales, or provided services to

11  anyone in the United States does not -- is not

12  restricted to Feitian products or services.

13  A.       No.

14  Q.       So has RS-Computer done any kind of

15  business in the United States at any time?

16              MR. REEVES:  And I'll object to

17          the extent it seeks information outside of

18          Delaware and California.

19              To the extent it seeks

20          information inside of Delaware and

21          California, Peter, you can answer.

22              THE WITNESS:  Okay.  No business

23          and any sales in California and Delaware.

24  BY MS. O'LAUGHLIN:

PETER RASCH

12

1    Q.       Okay.  Did you review any business records

2    or documents relating to sales, offers of sales, or

3    the provision of services before today's deposition?

4    A.       No.

5    Q.       Okay.  What do you base your response that

6    RS-Computer has had no offers of sale, sales, or

7    provided services in the State of Delaware or

8    California?

9    A.       No.

10   Q.       No, no.  What's the basis for your

11   response?

12   A.       What do you mean with response?

13   Q.       Okay.  My understanding is that you just

14   testified that RS-Computer has made no offers of

15   sale, sales, or provided any services at any time in

16   the State of Delaware or the State of California.

17   A.       That's correct.

18   Q.       Okay.  And my question to you is what is

19   the basis for that testimony?  Why do you say that?

20   A.       Because we don't have any business in the

21   United States.  We make all our business here in

22   Europe.

23   Q.       And is that based on your personal

24   knowledge?

ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES

PETER RASCH

13

1    A.        Yes.

2    Q.        Okay.  Do you have any salespeople that

3    work at RS-Computer?

4    A.        Correct.

5    Q.        Okay.  Did you ask any of your salespeople

6    whether or not they had made any offers of sale or

7    provided any services in Delaware or California?

8    A.        I asked them and they have no sales or any

9    offers to Delaware or California.  They did nothing.

10   Q.        Had you ever instructed any sale -- any of

11   your sales force at any time to attempt to make

12   sales --

13   A.        No.

14   Q.        -- in Delaware or California?

15   A.        No.

16   Q.        Is RS-Computer a distributor for Feitian?

17   A.        Yes.

18   Q.        And how long has it been a distributor for

19   Feitian?

20   A.        Since around -- about three years.

21   Q.        As a distributor for Feitian, has

22   RS-Computer distributed any products for Feitian in

23   that three year period?

24   A.        Yes.

PETER RASCH

14

1    Q.       And did RS-Computer enter into a

2    distribution contract with Feitian?

3    A.       Yes.

4    Q.       Okay.  Has RS-Computer attempted to

5    distribute or offer to distribute any Feitian

6    products in the United States?

7    A.       No.

8    Q.       Has RS-Computer ever communicated with

9    anyone in the United States concerning Feitian

10   products?

11                   MR. REEVES:  And, again, I'll

12           object to the extent it calls for

13           information outside of California and

14           Delaware.

15                   Peter, to the extent it seeks

16           information concerning California or

17           Delaware, you can answer.

18                   THE WITNESS:  We didn't make any

19           offers to California or Delaware with

20           Feitian products.

21   BY MS. O'LAUGHLIN:

22   Q.       When you have made sales of Feitian

23   products could you describe what kind of business

24   records you receive from Feitian and you send to

ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES

PETER RASCH

25

1    A.        No.  And I must not be prepared because we

2    don't have any business with California or Delaware.

3    Q.        Have you or anyone on behalf of RS-Computer

4    ever come to the United States on business?

5    A.        Could you repeat this, please.

6    Q.        Yes.  Since October of 1999 have you or

7    anyone else from RS-Computer come to the United

8    States on business?

9              MR. REEVES:  I object to the

10             question to the extent it goes farther back

11             in time than October of 1999.

12             MS. O'LAUGHLIN:  I thought that I

13             had said October 1999.

14             MR. REEVES:  I thought you said

15             ever.

16             To the extent, Peter, that she's

17             asking have you or anybody from RS-Computer

18             come to the United States on business since

19             October of 1999, you can answer the

20             question.

21             THE WITNESS:  No.  Nobody came

22             for business to the United States since

23             1999.

24   BY MS. O'LAUGHLIN:

PETER RASCH

35

1    statement RS-Computer also maintains a branch office

2    in New York where it services its U.S. customer base

3    was on the website?

4    A.      Well, this could be only from the earlier

5    time -- from the '80s.

6    Q.      Okay.  But if I looked at your website in

7    2004 and in 2005 and saw this statement on your

8    website, could you explain to me why it was on the

9    website?

10   A.      No, I can't.

11   Q.      Did you ever ask anyone why it was on the

12   website?

13   A.      No.

14   Q.      And you're the president of the company and

15   have been?

16   A.      Yes.

17   Q.      Okay.  Did RS-Computer ever have a U.S.

18   customer base?

19   A.      No.

20   Q.      Did RS-Computer ever attempt to have a U.S.

21   customer base?

22   A.      No.

23   Q.      What business did RS-Computer do with

24   Sysgen concerning Data General?  You mentioned Data

PETER RASCH

37

1              answer after October of 1999.

2                      THE WITNESS:  After October '99

3              we don't have any business on Data General

4              anymore.

5    BY MS. O'LAUGHLIN:

6    Q.        On Data General?

7    A.        Yeah, on any business.

8    Q.        You mentioned Data General equipment.

9    Could you describe what you mean by the Data General

10   equipment business?

11                     MR. REEVES:  Go ahead, Peter.

12                     THE WITNESS:  Well, we bought

13             equipment -- Data General equipment.

14   BY MS. O'LAUGHLIN:

15   Q.        What kind of equipment?

16   A.        Data General equipment.

17   Q.        Bought it from whom?

18   A.        From Sysgen.

19   Q.        Okay.  And your testimony is you've not

20   bought Data General equipment from Sysgen since

21   October of 1999?

22   A.        Correct.

23   Q.        Has RS-Computer done any advertising in

24   California or Delaware?

ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| Aladdin Knowledge Systems, Ltd., | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 05-149 (GMS) |
| | : | |
| Feitian Technologies Co., Ltd., et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

# EXHIBIT B

# (Feitian's document production FT 00001-00065)

# FILED UNDER SEAL PURSUANT TO STIPULATED PROTECTIVE ORDER (D.I. 80)

IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF DELAWARE**

Aladdin Knowledge Systems, Ltd.,       :
                Plaintiff,       :
      v.                      :      CIVIL ACTION NO. 05-149 (GMS)
                     :
Feitian Technologies Co., Ltd., et al.,       :
                     :
              Defendants.       :
_____ :

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALADDIN KNOWLEDGE SYSTEMS, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. 05-149-GMS |
| | § | |
| FEITIAN TECHNOLOGIES CO., LTD., et al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT FEITIAN TECHNOLOGIES C O., LTD.'S
AMENDED RESPONSES TO PLAINTIFF'S FIRST
SET OF INTERROGATORIES ON
JURISDICTIONAL ISSUES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Feitian

Technologies Co., Ltd. ("Feitian") responds to Aladdin Knowledge Systems, Ltd.'s ("Plaintiff")

First Set of Interrogatories on Jurisdictional Issues as follows.

**GENERAL OBJECTIONS**

1.      Feitian objects to all requests to the extent they seek attorney-client privileged or

attorney work product information.

2.      Feitian objects to all requests to the extent they seek information beyond the

scope of discovery permitted in the Court's opinion and order regarding jurisdictional discovery

(D.I. 48), which limits discovery to Feitian's alleged contacts with Delaware.

3.      Feitian objects to all requests to the extent they are vague or ambiguous in

describing the requested information.

4.      Feitian objects to all requests to the extent they are overbroad, unduly

burdensome or seek irrelevant information.

**AMENDED RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

1.    Describe any advertising by you or on your behalf in the United States ("U.S.") or directed to the U.S. market during the period October 1999 to present, including, but not limited to print publications and online advertising conducted on the Internet.

**ANSWER:**

Feitian objects to this interrogatory because it is directed to advertising in the "US Market", and seeks information outside Feitian's contacts in Delaware as permitted in the Court's discovery order (D.I. 48). Subject to the foregoing objections, Feitian has directed no advertising to Delaware. Feitian does operate a website that is available on the World Wide Web, but it is not directed to Delaware.

2.    Provide the Internet website address for any website that had a hyperlink to or from your website at any time during the period October 1999 to present.

**ANSWER:**

Feitian objects to this interrogatory as being overbroad, unduly burdensome, and seeking irrelevant information. The request is not limited to Feitian's alleged contacts with Delaware, as permitted by the Court's order (D.I. 48), but instead is directed to Feitian's website in general. Further Feitian objects that this request seeks information that is not reasonably available to it, such as the identity of hyperlinks to Feitian's website.

Subject to the foregoing objections, Feitian states that it is not aware of any websites that had a hyperlink to or from its website.

3.    Describe the procedures you follow when you receive an inquiry originating in the U.S. concerning a product or service.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information about Feitian's contacts with the U.S. in general and is not limited to Feitian's alleged contacts with Delaware as

2

permitted by the Court's order (D.I. 48). Feitian also objects that the request is vague and ambiguous in that it does not specify what type of "inquiry" is being referred to.

Subject to the foregoing, Feitian has received no inquiries from Delaware, other than a few made by Plaintiff's attorneys in connection with this suit, and therefore, there are no responsive procedures. As to any inquiries from elsewhere in the U.S., Feitian would forward the inquiry to RF Ideas. Feitian would also sent an email to the inquirer to the effect that RF Ideas would be following up. RF Ideas would then, presumably, follow up directly with the person making the inquiry.

    4.    Identify the documents that are created by you or on your behalf relating to the sale of one of your products in the U.S.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information concerning sales of Feitian's products in the U.S., and is not limited to Feitian's contacts with Delaware as permitted by the Court's order (D.I. 48).

Subject to the foregoing objections, Feitian has not sold any products in Delaware, and therefore has created no responsive, non-objectionable documents. To the extent Feitian were to make a sale somewhere else in the U.S., the documents it would generate would be a pro forma invoice to the purchaser. It may also generate an email to the customer informing them of the shipment and DHL tracking number.

    5.    Describe the procedures you follow when you ship a product to the U.S.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information about sales of its products to the U.S., generally, and is not limited to Feitian's alleged contacts with the State of Delaware per the Court's order (D.I. 48).

Subject to the foregoing objections, Feitian has not shipped any products to Delaware and so there are no responsive procedures. To the extent Feitian were to ship a product somewhere else in the U.S., the procedures would follow would be to package the products and label it with a DHL shipping label. DHL picks up the package at Feitian's location and then ships it to the customer. Feitian would also email the customer informing it of the shipment and providing the DHL tracking number.

6.    Describe the procedures you follow when you receive a request for technical assistance or technical support from the United States.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information about technical assistance in the U.S., generally, and is not limited to Feitian's alleged contacts with the State of Delaware per the Court's order (D.I. 48).

Subject to the foregoing objections, Feitian has not provided any technical assistance to Delaware and there are no responsive procedures. Further, even to the extent the interrogatory seeks information outside of Delaware, Feitian's procedure is that it does not generally provide technical assistance in the U.S., but would expect RF Ideas or possibly AZ-Tech to do so and would refer the request to them by email. To the extent that Feitian might directly provide technical assistance directly, it would provide information containing the requested technical assistance by email to the person requesting it.

4

7.    Describe the procedures followed for payment for your products or services sold or delivered in the U.S.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information about payment for sales of its products to the U.S., generally, and is not limited to Feitian's alleged sales of products to the State of Delaware per the Court's order (D.I. 48).

Subject to the foregoing objections, Feitian has received no payments for products to Delaware and therefore there are no responsive procedures. To the extent Feitian were to receive payments for a product somewhere else in the U.S., it would invoice the customer for the product. Generally, payment is received from the customer by bank transfer.

8.    Identify any credit cards you accept for payment for products sold in or services made to the U.S.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information about sales of its products to the U.S., generally, and is not limited to Feitian's alleged contacts with the State of Delaware per the Court's order (D.I. 48).

Subject to the foregoing objection, Feitian has not accepted payments from Delaware nor has it sold products or services in Delaware. Feitian does not generally accept credit cards for payment in other places in the U. S., but on rare occasions has accepted VISA.

9.    Identify any U.S. bank that has provided you with any financial services, including deposit, lending and line of credit services during the period October 1999 to present.

5

**ANSWER:**

Feitian objects that this interrogatory is not limited to its alleged contacts with Delaware as permitted by the Court's opinion and order (D.I. 48).

10.    Identify all records containing revenue information regarding U.S. sales of your products and revenues for services provided in the U.S.

**ANSWER:**

Feitian objects to this interrogatory as irrelevant, overbroad, and unduly burdensome because it seeks information regarding "U.S. sales" in general and is not limited to Feitian's alleged contacts with Delaware as permitted by the Court's discovery order (D.I. 48).

Subject to the foregoing objections, Feitian has no records containing revenue information for sales or services in Delaware.

11.    To whom is Feitian's English language interactive website directed?

**ANSWER:**

Feitian objects that this interrogatory is vague and ambiguous and assumes that the website is "directed" to a particular class of people. Subject to the foregoing objections, Feitian states that it provides its website in the English language for the convenience of English-speaking readers.

12.    Identify each search engine that Feitian has appeared on from October 1999 to present.

**ANSWER:**

Feitian objects that this interrogatory is overbroad, unduly burdensome and seeks irrelevant information and is beyond the scope of discovery permitted by the Court's order (D.I. 48), which is limited to Feitian's alleged contacts with Delaware.

6

Subject to the foregoing objections, Feitian states that it has no way of knowing every search engine on which it may be found. Feitian is aware that it may be found on Google, Yahoo!, and Microsoft MSN.

13.    Identify every search engine on which "pop up" ads for Feitian or Feitian products have appeared from October 1999 to present.

**ANSWER:**

Feitian objects that this request is overbroad, unduly burdensome and seeks irrelevant information and is beyond the scope of discovery permitted by the Court's order, which is limited to Feitian's alleged contacts with Delaware (D.I. 48).

Subject to the foregoing objections, Feitian has never used "pop up" ads, therefore, none.

14.    Identify by location and date each trade show and industry conference that Feitian has attended in the U.S. during the period October 1999 to present.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information concerning Feitian's alleged attendance at trade shows and conferences in the U.S., generally, and is outside the scope of the Court's discovery order which permits discovery only as to Feitian's alleged contacts with Delaware (D.I. 48).

Subject to the foregoing objections, Feitian has not attended any trade show or industry conference in Delaware. Feitian has attended the RSA trade show in California in 2003, 2004, and 2006.

15.    Identify the software used by Feitian for its customer relations management ("CRM") during the period October 1999 to present.

**ANSWER:**

Feitian objects to this interrogatory in that it exceeds the scope of the Court's order, which is limited to Feitian's alleged contacts with Delaware (D.I. 48).

Subject to the foregoing objections, Feitian does not use any such software.

16.    Identify the prospect management software used by Feitian during the period October 1999 to present.

**ANSWER:**

Feitian objects to this interrogatory in that it exceeds the scope of the Court's order, which is limited to Feitian's alleged contacts with Delaware (D.I. 48).

Subject to the foregoing objections, Feitian does not use any such software.

17.    Describe the procedures used by Feitian or on its behalf during the period October 1999 to present for tracking referrals.

**ANSWER:**

Feitian objects to this interrogatory as beyond the scope of the Court's discovery order, which allows discovery only as to Feitian's alleged contacts with Delaware (D.I. 48). Feitian also objects to this interrogatory in that it is vague and ambiguous as to what is means by "tracking referrals."

Subject to the foregoing objections, Feitian does not track referrals. To the extent an email inquiry is considered a referral, Feitian would forward it to RF Ideas to follow up. Feitian would also send an email to the inquirer to the effect that RF Ideas would be following up. Feitian would not "track" the referral any further but if it received a subsequent complaint from the inquirer that it had never received a response, Feitian would again contact RF Ideas and ask it to follow up.

8

18.    Identify each contract entered into by you or on your behalf that applies Delaware law.

**ANSWER:**

None.

19.    With regard to any inquiry originating in the U.S. regarding an "ePass" Software Developer Kit ("SDK"), state the name, address, telephone number and email address of the inquirer.

**ANSWER:**

Feitian objects to this interrogatory because it is beyond the scope of the Court's discovery order, which permits discovery only as to Feitian's alleged contacts with Delaware (D.I. 48).

Subject to the foregoing objections, Feitian has received no inquiries regarding its ePass Software Developer Kit from Delaware except for some received from Plaintiff's attorneys. Pursuant to Fed. R. Civ. P. 33(d), Feitian will produce documents from which the answer to the interrogatory may be obtained.

20.    State the number of Feitian's "ePass" products, including SDKs, which have been made, sold or offered for sale in the U.S. or imported into the U.S. during the period October 1999 to present.

**ANSWER:**

Feitian objects to this interrogatory because it is outside the scope of the Court's discovery order which permits discovery only as to Feitian's alleged contacts in Delaware (D.I. 48).

Subject to the foregoing objection, Feitian has not made, sold or offered for sale any such products in Delaware or imported any products into Delaware.

9

21.    With regard to each sale or offer for sale in the U.S. of Feitian's "ePass" products, including SDKs, state the name, address, telephone number and email address of the purchaser/offeree.

**ANSWER:**

Feitian objects to this interrogatory because it is outside the scope of the Court's discovery order which permits discovery only as to Feitian's alleged contacts in Delaware (D.I. 48).

Subject to the foregoing objections, Feitian states that it has not made, sold or offered for sale any such products in Delaware or imported any such products into Delaware.

22.    With regard to any inquiry originating in the U.S. regarding an "Rockey" Software Developer Kit ("SDK"), state the name, address, telephone number and email address of the inquirer.

**ANSWER:**

Feitian objects to this interrogatory because it is outside the scope of the Court's discovery order which permits discovery only as to Feitian's alleged contacts in Delaware (D.I. 48).

Subject to the foregoing objection, Feitian has received no inquiries regarding its Rockey Software Developer Kit from Delaware except for some received from Plaintiff's attorneys. Pursuant to Fed. R. Civ. P. 33(d), Feitian will produce documents from which the answer to the interrogatory may be obtained.

23.    State the number of Feitian's "Rockey" products, including SDKs, which have been made, sold or offered for sale in the U.S. or imported into the U.S. during the period October 1999 to present.

**ANSWER:**

Feitian objects to this interrogatory because it is outside the scope of the Court's discovery order which permits discovery only as to Feitian's alleged contacts in Delaware (D.I. 48).

Subject to the foregoing objection, Feitian has not made, sold or offered for sale any products in Delaware or imported any products into Delaware.

24.    With regard to each sale of offer for sale in the U.S. of Feitian's "Rockey" products, including SDKs, state the name, address, telephone number and email address of the purchaser/offeree.

**ANSWER:**

Feitian objects to this interrogatory because it is outside the scope of the Court's discovery order which permits discovery only as to Feitian's alleged contacts in Delaware (D.I. 48).

Subject to the foregoing objections, Feitian has not made, sold or offered for sale any such products in Delaware or imported any such products into Delaware.

25.    Identify all documents that were reviewed in preparing the Declaration of Zhao Wenwang in Support of Motion to Dismiss for Lack of Personal Jurisdiction and Lack of Service.

**ANSWER:**

Feitian objects to this interrogatory to the extent it seeks attorney work product or attorney/client privilege information. Feitian also objects to the extent that it seeks information beyond the scope of the Court's discovery order, which is limited to Feitian's alleged contacts

11

with Delaware (D.I. 48). Feitian is unaware of any documents reviewed by Zhao Wenwang in connection with his declaration.

Subject to the foregoing objections, the following documents were reviewed:

LOCKE LIDDELL & SAPP LLP

Dated: July 27, 2006

Matthew G. Reeves
State Bar No. 00791498
600 Travis, Suite 600
Houston  TX  77002-3095
(713) 226-1200
(713) 223-3717 (FAX)

*Attorneys for Defendant*
Feitian Technologies, Ltd.

## CERTIFICATE OF SERVICE

I also certify that copies of the foregoing were caused to be served on July 27, 2006, upon the following in the manner indicated:

Via U.S. Mail and Email
David S. Eagle – *deagle@klehr.com*
Patrick A. Costello – *pcostello@klehr.com*
Klehr, Harrison, Harvey, Branzburg & Ellers LLP
919 Market Street, Suite 1000
Wilmington, DE 19801-3062

Via U.S. Mail and Email
Michael K. Coran – *mcoran@klehr.com*
Mary Ellen O'Laughlin – *molaughlin@klehr.com*
260 S. Broad Street, 4th Floor
Philadelphia  PA  19102-5003

Matthew G. Reeves

12

IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF DELAWARE**

Aladdin Knowledge Systems, Ltd.,      :
              Plaintiff,      :
      v.      :      CIVIL ACTION NO. 05-149 (GMS)
     :
Feitian Technologies Co., Ltd., et al.,      :
     :
           Defendants.      :
_____ :

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALADDIN KNOWLEDGE SYSTEMS, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. NO. 05-149-GMS |
| v. | § | |
| | § | |
| FEITIAN TECHNOLOGIES CO., LTD., et al., | § | |
| | § | |
| Defendants. | § | |

**FEITIAN TECHNOLOGIES CO., LTD.'S AMENDED RESPONSE TO
PLAINTIFF'S SECOND REQUEST FOR ADMISSIONS
ON JURISDICTIONAL ISSUES**

TO:    Plaintiff, by and through its attorney of record, David S. Eagle, Patrick A. Costello of Klehr Harrison Harvey Branzburg & Ellers, LLP, 919 Market Street, Suite 1000, Wilmington DE 19801 and Michael K. Coran, Mary Ellen O'Laughlin, 260 South Broad Street, 4th Floor, Philadelphia, PA 19102-5003

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant, Feitian

Technologies Co., Ltd. ("Feitian") hereby responds to Plaintiff's Second Request for Admissions

on Jurisdictional Issues as follows:

**General Objections**

Feitian objects to the extent any admission seeks discovery outside the scope of the

Court's order of February 24, 2006. (D.I. 48) or California.

**REQUEST FOR ADMISSION NO. 1.:**    Admit that Feitian has transacted business or performed any character of work or service in the State of California sufficient to subject it to the jurisdiction of one or more of the federal courts in that State without violating the Due Process Clause of the Fourteenth Amendment.

**ANSWER:**    Feitian admits it has transacted business in California but can neither admit nor

deny whether these transactions would be sufficient to subject it to jurisdiction in California.

**REQUEST FOR ADMISSION NO. 2.:**    Admit that Feitian has transacted business or performed any character of work or service in the State of Illinois sufficient to subject it to the

jurisdiction of one or more of the federal courts in that State without violating the Due Process Clause of the Fourteenth Amendment.

**ANSWER**:    Feitian objects that this requests seeks information about alleged contacts outside

the state of Delaware and is outside the scope of the Court's discovery order of February 24,

2006 (D.I. 48) or California.

**REQUEST FOR ADMISSION NO. 3.:**    Admit that Feitian has transacted business or performed any character of work or service in the Commonwealth of Pennsylvania sufficient to subject it to the jurisdiction of one or more of the federal courts in that Commonwealth without violating the Due Process Clause of the Fourteenth Amendment.

**ANSWER**:    Feitian objects that this requests seeks information about alleged contacts outside

the state of Delaware and is outside the scope of the Court's discovery order of February 24,

2006 (D.I. 48) or California.

**REQUEST FOR ADMISSION NO. 4.:**    Admit that Feitian has transacted business or performed any character of work in the State of Colorado sufficient to subject it to the jurisdiction of one or more of the federal courts in that State in a manner that comports with the Due Process Clause of the Fourteenth Amendment.

**ANSWER**:    Feitian objects that this requests seeks information about alleged contacts outside

the state of Delaware and is outside the scope of the Court's discovery order of February 24,

2006 (D.I. 48) or California.

**REQUEST FOR ADMISSION NO. 5.:**    Admit that Feitian has transacted business or performed any character of work or service in the State of New York sufficient to subject it to the jurisdiction of one or more of the federal courts in that Commonwealth in a manner that comports with the Due Process Clause of the Fourteenth Amendment.

**ANSWER**:    Feitian objects that this requests seeks information about alleged contacts outside

the state of Delaware and is outside the scope of the Court's discovery order of February 24,

2006 (D.I. 48) or California.

**REQUEST FOR ADMISSION NO. 6.:**    Admit that Feitian has transacted business or performed any character of work or service in the Commonwealth of Massachusetts sufficient to

2

subject it to the jurisdiction of one or more of the federal courts in any of that State in a manner that comports with the Due Process Clause of the Fourteenth Amendment.

**ANSWER:**    Feitian objects that this requests seeks information about alleged contacts outside

the state of Delaware and is outside the scope of the Court's discovery order of February 24,

2006 (D.I. 48) or California.

**REQUEST FOR ADMISSION NO. 7.:**    Admit that Feitian has transacted business or performed any character of work or service in the Commonwealth of Virginia sufficient to subject it to the jurisdiction of one or more of the federal courts in that Commonwealth without violating the Due Process Clause of the Fourteenth Amendment.

**ANSWER:**    Feitian objects that this requests seeks information about alleged contacts outside

the state of Delaware and is outside the scope of the Court's discovery order of February 24,

2006 (D.I. 48) or California.

**REQUEST FOR ADMISSION NO. 8.:**    Admit that Feitian has transacted business or performed any character of work or service in the State of Texas sufficient to subject it to the jurisdiction of one or more of the federal courts in that State without violating the Due Process Clause of the Fourteenth Amendment.

**ANSWER:**    Feitian objects that this requests seeks information about alleged contacts outside

the state of Delaware and is outside the scope of the Court's discovery order of February 24,

2006 (D.I. 48) or California.

**REQUEST FOR ADMISSION NO. 9.:**    Admit that Feitian has transacted business or performed any character of work or service in the State of Tennessee sufficient to subject it to the jurisdiction of one or more of the federal courts in that State without violating the Due Process Clause of the Fourteenth Amendment.

**ANSWER:**    Feitian objects that this requests seeks information about alleged contacts outside

the state of Delaware and is outside the scope of the Court's discovery order of February 24,

2006 (D.I. 48) or California.

3

**REQUEST FOR ADMISSION NO. 10.:**   Admit that Feitian has transacted business or performed any character of work or service in a State of the United States of America sufficient to subject it to the jurisdiction of one or more of the federal courts in that State in a manner that comports with the Due Process Clause of the Fourteenth Amendment.

**ANSWER**:   Feitian objects that the request is outside to scope of discovery permitted by the Court's order (D.I. 48) and that term "in that State" is ambiguous as to the state in question. Subject to the foregoing objections, Feitian denies it is subject to jurisdiction in Delaware. Feitian admits it has transacted business in the State of California but can neither admit nor deny whether these transactions would be sufficient to subject it to jurisdiction in the State of California.

**REQUEST FOR ADMISSION NO. 11.:**   Admit that Feitian has transacted business or performed any character of work or service in a Commonwealth of the United States of America sufficient to subject it to the jurisdiction of one or more of the federal courts in that Commonwealth in a manner that comports with the Due Process Clause of the Fourteenth Amendment.

**ANSWER**:   Feitian objects to the extent that the request is outside to scope of discovery permitted by the Court's order (D.I. 48) and that term "in that Commonwealth" is ambiguous as to the Commonwealth in question.   Subject to the foregoing objections, Feitian denies it is subject to jurisdiction in Delaware.   Feitian admits it has transacted business in the State of California but can neither admit nor deny whether these transactions would be sufficient to subject it to jurisdiction in the State of California.

**REQUEST FOR ADMISSION NO. 12.:**   Admit that Feitian has not transacted business or performed any character of work or service in any State or Commonwealth of the United States of America sufficient to subject it to the jurisdiction of one or more of the federal courts in any of those States or Commonwealths in a manner that comports with the Due Process Clause of the Fourteenth Amendment.

**ANSWER**:   Feitian objects to the extent that the request is beyond the scope of the limited jurisdictional discovery permitted by the Court (D.I. 48).   Subject to the foregoing objection,

4

Feitian denies it is subject to Personal Jurisdiction in Delaware. Feitian admits it has transacted business in the State of California but can neither admit nor deny whether these transactions would be sufficient to subject it to jurisdiction in the State of California.

**REQUEST FOR ADMISSION NO. 13.:** Admit that while employed by you John O'Mara was a citizen of the United States.

**ANSWER**:    Feitian objects that the request is beyond the scope of the limited jurisdictional discovery permitted by the Court (D.I. 48) or pertaining to California.

**REQUEST FOR ADMISSION NO. 14.:** Admit that while employed by you, Cecile Y. Stadler was a citizen of the United States.

**ANSWER**:    Feitian objects that the request is beyond the scope of the limited jurisdictional discovery permitted by the Court (D.I. 48) or pertaining to California.

**REQUEST FOR ADMISSION NO. 15.:** Admit that Feitian has been an advertiser for a U.S. publication, Card Technology News.

**ANSWER**:    Feitian objects that the request is beyond the scope of the limited jurisdictional discovery permitted by the Court (D.I. 48) or pertaining to California. Feitian also objects that the request assumes facts not in evidence.

**REQUEST FOR ADMISSION NO. 16.:** Admit that Feitian is a certified member of the OPSEC Alliance, a U.S. based alliance.

**ANSWER**:    Feitian objects that the request is beyond the scope of the limited jurisdictional discovery permitted by the Court (D.I. 48) or pertaining to California. Feitian also objects that the requests assumes facts not in evidence.

**REQUEST FOR ADMISSION NO. 17.:** Admit that in 2004 more than 20% of Feitian's exports were directed to the United States.

**ANSWER**:    Deny.

5

**REQUEST FOR ADMISSION NO. 18.:**  Admit that in 2006 more than 20% of Feitian's exports were directed to the United States.

**ANSWER:**   Deny.

**REQUEST FOR ADMISSION NO. 19.:**  Admit that Zhao Wenwang did not review any documents in preparing the Declaration of Zhao Wenwang in Support of Motion to Dismiss for Lack of Personal Jurisdiction and Lack of Service.

**ANSWER:**   Admitted.

**REQUEST FOR ADMISSION NO. 20.:**  Admit that Zhao Wenwang did not draft the Declaration of Zhao Wenwang in Support of Motion to Dismiss for Lack of Personal Jurisdiction and Lack of Service.

**ANSWER:**  Admitted.

**REQUEST FOR ADMISSION NO. 21.:**  Admit that no documents were reviewed in preparing the Declaration of Zhao Wenwang in Support of Motion to Dismiss for Lack of Personal Jurisdiction and Lack of Service.

**ANSWER:**   Feitian objects that the use of the passive voice "were reviewed" is vague and unspecific as to any person and could be read to include Feitian's attorneys and thus intrude on the attorney/client relationship or work product privileges.  Subject to the foregoing objections, Feitian admits Zhao Wenwang did not review any documents in preparing the Declaration of Zhao Wenwang.

6

LOCKE LIDDELL & SAPP LLP

Dated: September 22, 2006

_____
Matthew G. Reeves
State Bar No. 00791498
600 Travis, Suite 600
Houston TX 77002-3095
(713) 226-1200
(713) 223-3717 (FAX)

*Attorneys for Defendant*
Feitian Technologies, Ltd.

## CERTIFICATE OF SERVICE

I also certify that copies of the foregoing were caused to be served on September 22, 2006, upon the following in the manner indicated:

Via U.S. Mail and Email
David S. Eagle – *deagle@klehr.com*
Patrick A. Costello – *pcostello@klehr.com*
Klehr, Harrison, Harvey, Branzburg & Ellers LLP
919 Market Street, Suite 1000
Wilmington, DE 19801-3062

Via U.S. Mail and Email
Michael K. Coran – *mcoran@klehr.com*
Mary Ellen O'Laughlin – *molaughlin@klehr.com*
260 S. Broad Street, 4th Floor
Philadelphia PA 19102-5003

_____
Matthew G. Reeves

IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| Aladdin Knowledge Systems, Ltd., | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 05-149 (GMS) |
| | : | |
| Feitian Technologies Co., Ltd., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

# EXHIBIT E

1

1                IN THE UNITED STATES DISTRICT COURT

2                IN AND FOR THE DISTRICT OF DELAWARE

3                          -   -   -

4    ALADDIN KNOWLEDGE SYSTEMS,   :     Civil Action
     LTD.,                        :
5                                 :
                Plaintiff,        :
6                                 :
7           v.                    :
                                  :
8    FEITIAN TECHNOLOGIES CO.,    :
     LTD., RF IDEAS, INC.,        :
     d/b/a SECURITY TOKENS,       :
9    AZ-TECH SOFTWARE, INC.,      :
     SOFTKEY E-SOLUTION SDN BHD,  :
10   NOVARIS INNOVATIVE           :
     TECHNOLOGIES, FUTURE         :
11   SYSTEMS, INC.,               :
     RS-COMPUTER OPENFORTRESS     :
12   DIGITAL SIGNATURES, and      :
     SECURE TECHNOLOGY, INC.,     :
13                                :
                Defendants.       :     No. 05-149 (GMS)

14                         -   -   -

15
                      Wilmington, Delaware
16                  Wednesday, July 12, 2006
                          10:00 a.m.
17                   Telephone Conference

18                         -   -   -

19   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

20   APPEARANCES:

21           PATRICK A. COSTELLO, ESQ.
             Klehr, Harrison, Harvey, Branzburg & Ellers LLP
22                  -and-
             MARY ELLEN O'LAUGHLIN, ESQ.
23           Klehr, Harrison, Harvey, Branzburg & Ellers, LLP
             (Philadelphia, PA)

24                          Counsel for Plaintiff

25

1                    Is there another issue?  I see a fourth

2    paragraph here.  There is a --

3                    MS. O'LAUGHLIN:  Yes, Your Honor.  The issue,

4    their objection to Interrogatory No. 5, which they objected

5    to on attorney-client and work product privilege, and

6    also --

7                    THE COURT:  You mean Interrogatory 25.

8                    MS. O'LAUGHLIN:  Yes.  Which simply sought the

9    identification of the documents that were reviewed in

10   Feitian's declaration in support of its motion to dismiss,

11   that it had no contacts with Delaware.  And we have been

12   told that, my discussion with Mr. Reeves was that if there

13   are documents being withheld then we need a privilege log.

14   He told me that currently there aren't any documents being

15   withheld.

16                   But they have not provided us with a full answer

17   to this interrogatory.

18                   If there are no documents, then they can tell us

19   that, that were reviewed.  But if there are, and they are

20   withholding them for privilege, then they need to tell us

21   that.

22                   And this also implicates our request for

23   production of documents which requests the documents

24   identified in the answer to the interrogatory.

25                   THE COURT:  Mr. Reeves.

1          MR. REEVES:  Well, Your Honor, first off, with

2    respect to the privilege objection, we think that is a

3    valid, always a valid objection.  As it turns out, as I have

4    informed counsel, we are not withholding any documents under

5    privilege at this time.  If she likes, we will give her a

6    privilege log.  But I think it would be kind of superfluous

7    given our representation.  But we would be willing to do

8    that.

9          THE COURT:  Ms. O'Laughlin.

10          MS. O'LAUGHLIN:  Your Honor, that is fine.  I

11    just want an answer to that interrogatory.  If there are no

12    documents, that's fine, that were reviewed.  If there are

13    and they are subject to a privilege, fine, give me the

14    privilege log.

15          THE COURT:  Why don't you just tell her there

16    are no documents, as you just stated on the record.

17          MR. REEVES:  We will update our interrogatories

18    accordingly.

19          MS. O'LAUGHLIN:  The only other issue is we have

20    noticed designee depositions.  The defendants had objected

21    and we agreed, we worked it out, we agreed we would do the

22    depositions by telephone.  But, however, we have not

23    received dates yet.  I wanted --

24          THE COURT:  Counsel, I am not going to get

25    involved in that.