IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| Aladdin Knowledge Systems, Ltd., | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 05-149 (GMS) |
| | : | |
| Feitian Technologies Co., Ltd., et al., | : | |
| | : | |
| Defendants. | : | |

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALADDIN KNOWLEDGE SYSTEMS, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. NO. 05-149-GMS |
| v. | § | |
| | § | |
| FEITIAN TECHNOLOGIES CO., LTD., et al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT FEITIAN TECHNOLOGIES CO., LTD.'S
SECOND AMENDED RESPONSES TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES ON
JURISDICTIONAL ISSUES**

TO:    Plaintiff, by and through its attorney of record, David S. Eagle, Patrick A. Costello of
Klehr Harrison Harvey Branzburg & Ellers, LLP, 919 Market Street, Suite 1000,
Wilmington DE 19801 and Michael K. Coran, Mary Ellen O'Laughlin, 260 South Broad
Street, 4th Floor, Philadelphia, PA 19102-5003

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Feitian

Technologies Co., Ltd. ("Feitian") responds to Aladdin Knowledge Systems, Ltd.'s ("Plaintiff")

First Set of Interrogatories on Jurisdictional Issues as follows.

**GENERAL OBJECTIONS**

1.    Feitian objects to all requests to the extent they seek attorney-client privileged or

attorney work product information.

2.    Feitian objects to all requests to the extent they seek information beyond the

scope of discovery permitted in the Court's opinion and order regarding jurisdictional discovery

(D.I. 48), which limits discovery to Feitian's alleged contacts with Delaware or California.

3.    Feitian objects to all requests to the extent they are vague or ambiguous in

describing the requested information.

4.     Feitian objects to all requests to the extent they are overbroad, unduly burdensome or seek irrelevant information.

2

## AMENDED RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

1.    Describe any advertising by you or on your behalf in the United States ("U.S.") or directed to the U.S. market during the period October 1999 to present, including, but not limited to print publications and online advertising conducted on the Internet.

**ANSWER:**

Feitian objects to this interrogatory because it is directed to advertising in the "US Market", and seeks information outside Feitian's contacts in Delaware as permitted in the Court's discovery order (D.I. 48) or California. Subject to the foregoing objections, Feitian has directed no advertising to Delaware. Feitian does operate a website that is available on the World Wide Web, but it is not directed to Delaware.

2.    Provide the Internet website address for any website that had a hyperlink to or from your website at any time during the period October 1999 to present.

**ANSWER:**

Feitian objects to this interrogatory as being overbroad, unduly burdensome, and seeking irrelevant information. The request is not limited to Feitian's alleged contacts with Delaware, as permitted by the Court's order (D.I. 48) or California, but instead is directed to Feitian's website in general. Further Feitian objects that this request seeks information that is not reasonably available to it, such as the identity of hyperlinks to Feitian's website.

Subject to the foregoing objections, Feitian states that it is not aware of any websites that had a hyperlink to or from its website.

3.    Describe the procedures you follow when you receive an inquiry originating in the U.S. concerning a product or service.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information about Feitian's contacts with the U.S. in general and is not limited to Feitian's alleged contacts with Delaware as

3

permitted by the Court's order (D.I. 48) or California. Feitian also objects that the request is vague and ambiguous in that it does not specify what type of "inquiry" is being referred to.

Subject to the foregoing, Feitian has received no inquiries from Delaware or California, other than a few made by Plaintiff's attorneys in connection with this suit and the emails from California that have been produced. There are no responsive procedures. Feitian responds on an individual basis. As to any inquiries from elsewhere in the U.S., Feitian would forward the inquiry to RF Ideas. Feitian would also sent an email to the inquirer to the effect that RF Ideas would be following up. RF Ideas would then, presumably, follow up directly with the person making the inquiry.

4.    Identify the documents that are created by you or on your behalf relating to the sale of one of your products in the U.S.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information concerning sales of Feitian's products in the U.S., and is not limited to Feitian's contacts with Delaware as permitted by the Court's order (D.I. 48) or California.

Subject to the foregoing objections, Feitian has not sold any products in Delaware, and therefore has created no responsive, non-objectionable documents. To the extent Feitian were to make a sale somewhere else in the U.S., like California, the documents it would generate would be a pro forma invoice to the purchaser. It may also generate an email to the customer informing them of the shipment and DHL tracking number.

4

5.    Describe the procedures you follow when you ship a product to the U.S.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information about sales of its products to the U.S., generally, and is not limited to Feitian's alleged contacts with the State of Delaware per the Court's order (D.I. 48) or California.

Subject to the foregoing objections, Feitian has not shipped any products to Delaware and so there are no responsive procedures. To the extent Feitian were to ship a product somewhere else in the U.S., like California, the procedures would follow would be to package the products and label it with a DHL shipping label. DHL picks up the package at Feitian's location and then ships it to the customer. Feitian would also email the customer informing it of the shipment and providing the DHL tracking number.

6.    Describe the procedures you follow when you receive a request for technical assistance or technical support from the United States.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information about technical assistance in the U.S., generally, and is not limited to Feitian's alleged contacts with the State of Delaware per the Court's order (D.I. 48) or California.

Subject to the foregoing objections, Feitian has not provided any technical assistance to Delaware and there are no responsive procedures. Further, even to the extent the interrogatory seeks information outside of Delaware, like California, Feitian's procedure is that it does not generally provide technical assistance in the U.S., but would expect RF Ideas or possibly AZ-Tech to do so and would refer the request to them by email. To the extent that Feitian might

5

directly provide technical assistance directly, it would provide information containing the requested technical assistance by email to the person requesting it.

7.      Describe the procedures followed for payment for your products or services sold or delivered in the U.S.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information about payment for sales of its products to the U.S., generally, and is not limited to Feitian's alleged sales of products to the State of Delaware per the Court's order (D.I. 48) or California.

Subject to the foregoing objections, Feitian has received no payments for products to Delaware and therefore there are no responsive procedures.  To the extent Feitian were to receive payments for  a product somewhere else in the U.S., it would invoice the customer for the product.  Generally, payment is received from the customer by bank transfer.

8.      Identify any credit cards you accept for payment for products sold in or services made to the U.S.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information about sales of its products to the U.S., generally, and is not limited to Feitian's alleged contacts with the State of Delaware per the Court's order (D.I. 48) or California.

Subject to the foregoing objection, Feitian has not accepted payments from Delaware nor has it sold products or services in Delaware.  Feitian does not generally accept credit cards for payment in other places in the U. S., but on rare occasions has accepted VISA.

6

9.    Identify any U.S. bank that has provided you with any financial services, including deposit, lending and line of credit services during the period October 1999 to present.

**ANSWER:**

Feitian objects that this interrogatory is not limited to its alleged contacts with Delaware as permitted by the Court's opinion and order (D.I. 48) or California.

None?

10.    Identify all records containing revenue information regarding U.S. sales of your products and revenues for services provided in the U.S.

**ANSWER:**

Feitian objects to this interrogatory as irrelevant, overbroad, and unduly burdensome because it seeks information regarding "U.S. sales" in general and is not limited to Feitian's alleged contacts with Delaware as permitted by the Court's discovery order (D.I. 48).

Subject to the foregoing objections, Feitian has no records containing revenue information for sales or services in Delaware or California.

11.    To whom is Feitian's English language interactive website directed?

**ANSWER:**

Feitian objects that this interrogatory is vague and ambiguous and assumes that the website is "directed" to a particular class of people. Subject to the foregoing objections, Feitian states that it provides its website in the English language for the convenience of English-speaking readers.

7

12.    Identify each search engine that Feitian has appeared on from October 1999 to present.

**ANSWER:**

Feitian objects that this interrogatory is overbroad, unduly burdensome and seeks irrelevant information and is beyond the scope of discovery permitted by the Court's order (D.I. 48), which is limited to Feitian's alleged contacts with Delaware or California.

Subject to the foregoing objections, Feitian states that it has no way of knowing every search engine on which it may be found. Feitian is aware that it may be found on Google, Yahoo!, and Microsoft MSN.

13.    Identify every search engine on which "pop up" ads for Feitian or Feitian products have appeared from October 1999 to present.

**ANSWER:**

Feitian objects that this request is overbroad, unduly burdensome and seeks irrelevant information and is beyond the scope of discovery permitted by the Court's order, which is limited to Feitian's alleged contacts with Delaware (D.I. 48) or California.

Subject to the foregoing objections, Feitian has never used "pop up" ads, therefore, none.

14.    Identify by location and date each trade show and industry conference that Feitian has attended in the U.S. during the period October 1999 to present.

**ANSWER:**

Feitian objects to this interrogatory because it seeks information concerning Feitian's alleged attendance at trade shows and conferences in the U.S., generally, and is outside the scope of the Court's discovery order which permits discovery only as to Feitian's alleged contacts with Delaware (D.I. 48) or California.

8

Subject to the foregoing objections, Feitian has not attended any trade show or industry conference in Delaware. Feitian has attended the RSA trade show in California in 2003, 2004, and 2006.

15.    Identify the software used by Feitian for its customer relations management ("CRM") during the period October 1999 to present.

**ANSWER:**

Feitian objects to this interrogatory in that it exceeds the scope of the Court's order, which is limited to Feitian's alleged contacts with Delaware (D.I. 48) or California.

Subject to the foregoing objections, Feitian does not use any such software.

16.    Identify the prospect management software used by Feitian during the period October 1999 to present.

**ANSWER:**

Feitian objects to this interrogatory in that it exceeds the scope of the Court's order, which is limited to Feitian's alleged contacts with Delaware (D.I. 48) or California.

Subject to the foregoing objections, Feitian does not use any such software.

17.    Describe the procedures used by Feitian or on its behalf during the period October 1999 to present for tracking referrals.

**ANSWER:**

Feitian objects to this interrogatory as beyond the scope of the Court's discovery order, which allows discovery only as to Feitian's alleged contacts with Delaware (D.I. 48) or California. Feitian also objects to this interrogatory in that it is vague and ambiguous as to what is means by "tracking referrals."

9

Subject to the foregoing objections, Feitian does not track referrals. To the extent an email inquiry is considered a referral, Feitian would forward it to RF Ideas to follow up. Feitian would also send an email to the inquirer to the effect that RF Ideas would be following up. Feitian would not "track" the referral any further but if it received a subsequent complaint from the inquirer that it had never received a response, Feitian would again contact RF Ideas and ask it to follow up.

18.    Identify each contract entered into by you or on your behalf that applies Delaware law.

**ANSWER:**

None.

19.    With regard to any inquiry originating in the U.S. regarding an "ePass" Software Developer Kit ("SDK"), state the name, address, telephone number and email address of the inquirer.

**ANSWER:**

Feitian objects to this interrogatory because it is beyond the scope of the Court's discovery order, which permits discovery only as to Feitian's alleged contacts with Delaware (D.I. 48) or California.

Subject to the foregoing objections, Feitian has received no inquiries regarding its ePass Software Developer Kit from Delaware except for some received from Plaintiff's attorneys. Pursuant to Fed. R. Civ. P. 33(d), Feitian will produce documents from which the answer to the interrogatory may be obtained with respect to California.

20.    State the number of Feitian's "ePass" products, including SDKs, which have been made, sold or offered for sale in the U.S. or imported into the U.S. during the period October 1999 to present.

**ANSWER:**

Feitian objects to this interrogatory because it is outside the scope of the Court's discovery order which permits discovery only as to Feitian's alleged contacts in Delaware (D.I. 48) or California.

Subject to the foregoing objection, Feitian has not made, sold or offered for sale any such products in Delaware or imported any products into Delaware. Pursuant to Fed. R. Civ. P. 33(d), Feitian will produce documents from which the answer to the interrogatory may be obtained with respect to California.

21.    With regard to each sale or offer for sale in the U.S. of Feitian's "ePass" products, including SDKs, state the name, address, telephone number and email address of the purchaser/offeree.

**ANSWER:**

Feitian objects to this interrogatory because it is outside the scope of the Court's discovery order which permits discovery only as to Feitian's alleged contacts in Delaware (D.I. 48) or California.

Subject to the foregoing objections, Feitian states that it has not made, sold or offered for sale any such products in Delaware or imported any such products into Delaware. Pursuant to Fed. R. Civ. P. 33(d), Feitian will produce documents from which the answer to the interrogatory may be obtained with respect to California.

22.    With regard to any inquiry originating in the U.S. regarding an "Rockey" Software Developer Kit ("SDK"), state the name, address, telephone number and email address of the inquirer.

11

**ANSWER:**

Feitian objects to this interrogatory because it is outside the scope of the Court's discovery order which permits discovery only as to Feitian's alleged contacts in Delaware (D.I. 48) or California.

Subject to the foregoing objection, Feitian has received no inquiries regarding its Rockey Software Developer Kit from Delaware except for some received from Plaintiff's attorneys. Pursuant to Fed. R. Civ. P. 33(d), Feitian will produce documents from which the answer to the interrogatory may be obtained.

23.    State the number of Feitian's "Rockey" products, including SDKs, which have been made, sold or offered for sale in the U.S. or imported into the U.S. during the period October 1999 to present.

**ANSWER:**

Feitian objects to this interrogatory because it is outside the scope of the Court's discovery order which permits discovery only as to Feitian's alleged contacts in Delaware (D.I. 48) or California.

Subject to the foregoing objection, Feitian has not made, sold or offered for sale any products in Delaware or imported any products into Delaware. Pursuant to Fed. R. Civ. P. 33(d), Feitian will produce documents from which the answer to the interrogatory may be obtained with respect to California.

24.    With regard to each sale of offer for sale in the U.S. of Feitian's "Rockey" products, including SDKs, state the name, address, telephone number and email address of the purchaser/offeree.

**ANSWER:**

Feitian objects to this interrogatory because it is outside the scope of the Court's discovery order which permits discovery only as to Feitian's alleged contacts in Delaware (D.I. 48) or California.

Subject to the foregoing objections, Feitian has not made, sold or offered for sale any such products in Delaware or imported any such products into Delaware. Pursuant to Fed. R. Civ. P. 33(d), Feitian will produce documents from which the answer to the interrogatory may be obtained with respect to California.


25.     Identify all documents that were reviewed in preparing the Declaration of Zhao Wenwang in Support of Motion to Dismiss for Lack of Personal Jurisdiction and Lack of Service.

**ANSWER:**

Feitian objects to this interrogatory to the extent it seeks attorney work product or attorney/client privilege information. Feitian also objects to the extent that it seeks information beyond the scope of the Court's discovery order, which is limited to Feitian's alleged contacts with Delaware (D.I. 48) or California. Feitian is unaware of any documents reviewed by Zhao Wenwang in connection with his declaration. Mr. Zhao is no longer employed by Feitian

13

LOCKE LIDDELL & SAPP LLP

Dated: September 22, 2006

_____
Matthew G. Reeves
State Bar No. 00791498
600 Travis, Suite 600
Houston TX 77002-3095
(713) 226-1200
(713) 223-3717 (FAX)

*Attorneys for Defendant*
Feitian Technologies, Ltd.

## CERTIFICATE OF SERVICE

I also certify that copies of the foregoing were caused to be served on September 22, 2006, upon the following in the manner indicated:

Via U.S. Mail and Email
David S. Eagle – *deagle@klehr.com*
Patrick A. Costello – *pcostello@klehr.com*
Klehr, Harrison, Harvey, Branzburg & Ellers LLP
919 Market Street, Suite 1000
Wilmington, DE 19801-3062

Via U.S. Mail and Email
Michael K. Coran – *mcoran@klehr.com*
Mary Ellen O'Laughlin – *molaughlin@klehr.com*
260 S. Broad Street, 4th Floor
Philadelphia PA 19102-5003

_____
Matthew G. Reeves

14

IN THE UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF DELAWARE**

Aladdin Knowledge Systems, Ltd.,          :
              Plaintiff,          :
      v.          :          CIVIL ACTION NO. 05-149 (GMS)
                       :
Feitian Technologies Co., Ltd., et al.,          :
                       :
          Defendants.          :
_____ :

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

NO. 05-149

| | |
|---|---|
| ALADDIN KNOWLEDGE SYSTEMS, )<br>LTD., | DEPOSITION UPON |
| ) | ORAL EXAMINATION |
| Plaintiffs,) | OF |
| - vs - ) | WEI LI |
| FEITIAN TECHNOLOGIES CO., )<br>LTD., | |
| ) | |
| Defendants.) | |

- - - - - - - - - - - - -


TRANSCRIPT OF TELEPHONIC DEPOSITION,
taken by and before ELISABETTA L. ANDREINI,
Professional Reporter and Notary Public, at the offices
of KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS,
Philadelphia, Pennsylvania, on Wednesday, August 30,
2005, commencing at 9:00 p.m.

ERSA COURT REPORTERS
30 South 17th Street
United Plaza - Suite 1520
Philadelphia, Pennsylvania  19103
(215) 564-1233

ORIGINAL

WEI LI

2

A P P E A R A N C E S:

        KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS

        BY:  MARY ELLEN O'LAUGHLIN, ESQUIRE

        260 South Broad Street

        Philadelphia, PA 19103

        Attorney for the Plaintiff

        LOCKE, LIDDELL & SAPP, LLP

        BY:  MATTHEW G. REEVES, ESQUIRE

        3400 JP Morgan Chase Tower

        600 Travis

        Houston, TX 77002-3095

        Attorney for the Defendant

        Via Telephone

Yan Lu, Interpreter # 294304

Via Telephone

WEI LI

3

# I N D E X

WITNESS                                        PAGE

WEI LI


By:  Ms. O'Laughlin                             6




- - -



# E X H I B I T S

                                              PAGE

NUMBER                    DESCRIPTION          MARKED


(There were no exhibits marked at this time.)

WEI LI

4

1        -- PROCEEDINGS --

2        MS. O'LAUGHLIN:  First, as we start I

3    want to -- there's a noise that keeps coming

4    in the background, so if anyone has problems

5    hearing me, just let me know.  But the first

6    thing I'd like to do is for everyone to

7    introduce themselves and to state where they

8    are.

9        My name is Mary Ellen O'Laughlin, and I

10   represent the Plaintiff, Aladdin Knowledge

11   Systems Limited, and I'm at my offices in

12   Philadelphia, Pennsylvania.  I'm also here

13   with the court reporter.

14       MR. REEVES:  Matt Reeves.  I represent

15   the Defendant, Feitian.  I'm here in Houston,

16   Texas.

17       MS. O'LAUGHLIN:  Interpreter, could you

18   state where you are?

19       THE INTERPRETER:  Sure.  This is

20   interpreter Yan Lu in Abington, Virginia.

21       MS. O'LAUGHLIN:  Okay.  And could you

22   ask the witness to state his name and to tell

23   us where he is located?

24       THE WITNESS:  This is Wei Li in Beijing.

WEI LI

5

1          MS. O'LAUGHLIN:  Okay.  Before we start,

2    I'd like an agreement that although the court

3    reporter is in Philadelphia and the witness

4    is located in Beijing, China, that the court

5    reporter will administer the oath to the

6    witness, Mr. Li, as if the witness were in

7    the presence of the court reporter.

8          MR. REEVES:  We agree to that.

9          MS. O'LAUGHLIN:  Interpreter, you don't

10   have to translate that.  Counsel has agreed.

11         THE INTERPRETER:  Okay.

12         MS. O'LAUGHLIN:  Also, just as a

13   preliminary matter, I'd like to state that

14   Aladdin has requested jurisdictional recovery

15   of all of Feitian's U.S. contacts, and

16   Feitian has objected to providing any

17   information of contacts outside of Delaware.

18   The Court has now ordered that Aladdin may

19   obtain discovery of Feitian's contacts with

20   California as well as Delaware.  Aladdin

21   understands that Feitian will object to

22   answering any questions during this

23   deposition as to its U.S. contacts other than

24   its contacts with Delaware and California; is

WEI LI

6

1    that correct, Mr. Reeves?

2            MR. REEVES:  That is correct.

3            MS. O'LAUGHLIN:  Okay.  So I will ask

4    questions of this witness, the designee

5    witness, during this deposition without

6    waiving Aladdin's position that it's entitled

7    to information about Feitian's contact with

8    the U.S. as a whole, and I just wanted to put

9    on the record that by taking this deposition

10   Aladdin is not waiving its right to recall

11   this witness or any other Feitian designee to

12   ask him or her about Feitian's contacts with

13   the U.S. as a whole.  Okay?

14           MR. REEVES:  I understand, and we are

15   not necessarily agreeing that we would put

16   him up again anyways, but I understand your

17   reservation.

18           MS. O'LAUGHLIN:  Okay.  I am going to

19   have the court reporter now swear in the

20   witness.

21           WEI LI, having been duly sworn, was

22   examined and testified as follows:

23   BY MS. O'LAUGHLIN:

24   Q.      Okay.  Mr. Li, do you understand that you are

ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES

WEI LI

7

1    going to be testifying here today under oath as if you

2    were in a courtroom before a judge or a jury

3    testifying?

4    A.        Yes.

5    Q.        Okay.  And do you understand what the

6    penalties are under U.S. law for not telling the truth

7    when you testify under oath?

8    A.        I don't know.

9    Q.        You do not know.  Do you know that you

10   could -- well, what is your understanding of saying

11   that you will tell the truth and nothing but the truth

12   as you testify here today?

13              THE INTERPRETER:  Your Honor, Mr. Li is

14          asking to interpreter to repeat.

15              MS. O'LAUGHLIN:  Okay.

16              THE WITNESS:  Well, I believe I need to

17          tell the truth.

18   BY MS. O'LAUGHLIN:

19   Q.        Okay.  Do you understand that under -- well,

20   when you say that you need to tell the truth, is it

21   your understanding that you could be punished by a fine

22   or other kinds of punishment including imprisonment

23   under U.S. law if you do not tell the truth here today?

24   A.        I'm not very clear about this in United

ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES

**WEI LI**

8

1    States.

2    Q.        Okay.  Do you have any personal belief system

3    that would insure that when you say -- when you promise

4    to tell the truth that you are going to tell the truth?

5    A.        Yes.

6    Q.        Okay.  And what is that?

7              THE INTERPRETER:  Your Honor, the

8              interpreter needs to ask the caller again.

9              THE WITNESS:  I don't have any

10             religional belief.

11   BY MS. O'LAUGHLIN:

12   Q.        Okay.  But you have, have you not, agreed to

13   tell the truth here today?

14   A.        Yes.

15   Q.        Okay.  Do you think that there will be any

16   repercussions against you if you do not tell the truth

17   here today?

18   A.        Yes.

19   Q.        And what do you think -- okay.

20   A.        Well, by telling the truth it's beneficial to

21   our company.

22             MR. REEVES:  And with that, Counselor,

23             he's told you now he's here to tell the truth

24             a couple of times, and he's under oath, so if

1    we could move along.

2                MS. O'LAUGHLIN:  Matt, the court

3            reporter is having a hard time hearing you

4            because of pings that are in the background.

5                MR. REEVES:  I understand it's going to

6            be difficult.

7    BY MS. O'LAUGHLIN:

8    Q.        Mr. Li, are you here as the designee of the

9    Defendant, Feitian Technologies Company Limited, to

10   answer questions about Feitian's business in Delaware,

11   the State of Delaware and the State of California?

12   A.        Yes.

13   Q.        Okay.  Have you seen Aladdin's revised notice

14   of deposition to the designee of Feitian?

15                THE INTERPRETER:  Ma'am, Mr. Li is

16            asking the interpreter to repeat.

17                MS. O'LAUGHLIN:  Okay.

18                THE WITNESS:  Yes.

19   BY MS. O'LAUGHLIN:

20   Q.        Do you have it in front of you now?

21   A.        No.  Someone reported it to me.

22   Q.        Okay.  Do you know how you were selected to

23   be the witness today?

24                THE INTERPRETER:  Ma'am, the interpreter

WEI LI

**10**

1          needs to ask Mr. Li.  The interpreter didn't

2          hear him very clearly.

3              MS. O'LAUGHLIN:  Okay.

4              THE WITNESS:  Because I'm the vice

5          manager in charge of sales.

6  BY MS. O'LAUGHLIN:

7  Q.       How long have you been the vice manager in

8  charge of sales?

9  A.       Two years.

10  Q.       Before that did you work for Feitian?

11  A.       Yes.

12  Q.       In what position?

13  A.       Also vice manager.

14  Q.       Were you also in charge of sales?

15  A.       No.  I was in charge of finance accounting.

16  Q.       Okay.  How long have you worked for Feitian?

17  A.       Eight years.

18  Q.       Okay.  Before you were vice manager of

19  accounting, did you have another position at Feitian?

20  A.       No.

21  Q.       As vice manager in charge of sales are you

22  also in charge of sales to the United States?

23              THE INTERPRETER:  Ma'am, the interpreter

24          need to ask Mr. Li again.  The interpreter

**ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES**

WEI LI

11

1    didn't hear him very clearly.

2    THE WITNESS:  I was not in charge of

3    sales to United States specifically.  I

4    listen to other people's reports to sales

5    about United States.

6  BY MS. O'LAUGHLIN:

7  Q.        Okay.  Is there anyone at Feitian who is in

8  charge of sales to the United States?

9  A.        Yes.

10  Q.        And who is that?

11  A.        Well, this person already quit.

12  Q.        Okay.  How many people report to you

13  concerning sales to the U.S.?

14  A.        One person.

15  Q.        Has that been true the entire time you have

16  been the vice manager in charge of sales, just one

17  person reports to you about U.S. sales?

18  A.        Yes.

19  Q.        Who is the person who reports to you?

20    THE INTERPRETER:  Ma'am, the interpreter

21    needs to ask Mr. Li again.  The interpreter

22    didn't hear him very clearly.

23    MS. O'LAUGHLIN:  Maybe the interpreter

24    could ask -- could the interpreter please ask

WEI LI

12

1          Mr. Li to keep his voice up?

2                    THE INTERPRETER:  Okay.  Sure.

3                    THE WITNESS:  That person name is Liu

4          Hui, last name.

5     BY MS. O'LAUGHLIN:

6     Q.        Could you spell it?

7                    THE INTERPRETER:  If you want the

8          interpreter spell it out for you, or do you

9          want the interpreter to ask Mr. Li to spell

10         it out for you?

11                   MS. O'LAUGHLIN:  I would like you to ask

12         Mr. Li to spell it for you.

13                   THE INTERPRETER:  Okay.  Sure.

14                   MS. O'LAUGHLIN:  And when you're asking

15         him that, then I would also like you to ask

16         him to spell his name for the court reporter.

17                   THE INTERPRETER:  Okay.  Sure.

18                   THE WITNESS:  L-I-U -- well, the last

19         name of that person is L-I-U and the first

20         name is Y-U-H-O-N-G.

21                   MS. O'LAUGHLIN:  Y-U-H-O-N-T?

22                   THE INTERPRETER:  G, as in girl.

23                   MS. O'LAUGHLIN:  Could you then ask

24         Mr. Li to spell his name for the court

WEI LI

13

1    reporter?

2         THE WITNESS:  Last name is L-I, first

3    name is W-E-I.

4         MS. O'LAUGHLIN:  Thank you.

5    BY MS. O'LAUGHLIN:

6    Q.    The person who is in charge of sales to the

7    U.S. who quit, what was that person's name?

8    A.    Liu Yuhong.

9    Q.    Could you spell it?

10        THE WITNESS:  L-I-U, Y-U-H-O-N-G.  Last

11        name L-I-U, first name Y-U-H-O-N-G.

12    BY MS. O'LAUGHLIN:

13    Q.    My question was the name of the person who

14    was in charge of U.S. sales who quit?

15    A.    Yes, it's Liu Yuhong.

16    Q.    Well, then what is the name of the person who

17    currently reports to Mr. Li?

18    A.    Liu Hui.

19        MS. O'LAUGHLIN:  Did you respond?  I

20        didn't --

21        THE WITNESS:  Yes, Liu Hui.

22    BY MS. O'LAUGHLIN:

23    Q.    And how do you spell that?

24    A.    Last name L-I-U, first name H-U-I.

WEI LI

14

1   Q.        Okay.  Has Feitian replaced or does Feitian

2   intend to replace -- well, strike that.

3            Never mind.  Mr. Li, what did you do to

4   prepare for this deposition?

5   A.        I got relevant information from them.

6   Q.        From who?

7   A.        From Liu Hui.

8   Q.        Anyone else?

9   A.        No.

10  Q.        What relevant information did you get?

11  A.        Information about this case.

12  Q.        Could you be more specific?

13  A.        Well, he told me orally.  I do not remember

14  clearly now.

15  Q.        Who told you that you would be the one to

16  testify as the designated witness for Feitian at this

17  deposition?

18  A.        Liu Hui.

19            MS. O'LAUGHLIN:  That's, Interpreter,

20       L-I-U, H-U-Y-O-N-G?

21            THE INTERPRETER:  No.  It's L-I-U,

22       H-U-I.

23            MS. O'LAUGHLIN:  L-I-U, H-U-I?

24            THE WITNESS:  Yes.

ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES

WEI LI

15

1   BY MS. O'LAUGHLIN:

2   Q.         And what position does that person have at

3   Feitian?

4   A.         Sales manager.

5   Q.         Did the sales manager tell you why you were

6   selected to be the designated witness?

7   A.         No.

8   Q.         Okay.  Is the sales manager your superior at

9   Feitian?

10  A.         No, I am he superior.

11  Q.         So Mr. Li is superior to the sales manager?

12  A.         Yes.

13  Q.         Okay.  Did you review any documents to

14  prepare for the deposition?

15  A.         No.  I listen to other people's report.

16  Q.         Okay.  Besides Liu Yuhong, who else gave you

17  information for you to prepare for today's deposition?

18              THE INTERPRETER:  Ma'am, do you mean

19              besides L-I-U, H-U-I?

20              MS. O'LAUGHLIN:  That's the person I

21              thought it was.

22  BY MS. O'LAUGHLIN:

23  Q.         The other person -- okay.  Besides -- yes,

24  besides the -- let's just call him the sales manager.

ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES

WEI LI

16

1    Besides the sales manager, who else reported to you

2    about -- to give you information about today's

3    deposition?

4    A.          No.

5    Q.          No one?

6    A.          No one.

7    Q.          Okay.  Did you ask the sales manager or

8    anyone else for information to help you prepare for

9    your testimony today?

10   A.          Yes.

11   Q.          What did you ask?

12   A.          About the programs of the case.

13   Q.          Okay.  Did you ask anyone for information

14   about Feitian's business in Delaware or in California?

15   A.          I asked for information about the business in

16   Delaware.

17   Q.          Did you ask for information about Feitian's

18   business in California?

19   A.          Not yet.  I haven't got time yet.

20   Q.          Were you asked to ask for information about

21   Feitian's business in California?

22              MR. REEVES:  I object to that on

23              attorney/client privilege grounds, and I'll

24              instruct the witness not to answer what he

**ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES**

WEI LI

17

1          was asked by me to do.

2    BY MS. O'LAUGHLIN:

3    Q.        Mr. Li, do you have any information about

4    Feitian's business in California?

5               THE INTERPRETER:  Ma'am, Mr. Li is

6          asking the interpreter to repeat.

7               THE WITNESS:  I have some information.

8    BY MS. O'LAUGHLIN:

9    Q.        What information do you have about Feitian's

10   business in California?

11   A.        I know I have attended exhibit.

12   Q.        I didn't -- the court reporter could not hear

13   you.  He has attended what exhibit there?

14          Mr. Li, you personally attended an exhibition

15   in California; is that correct?

16   A.        No.

17   Q.        Okay.  Then could you explain your answer?  I

18   do not understand it.

19   A.        It's not me.  It's my company that attended

20   the exhibition in California.

21   Q.        Okay.  And by exhibition are you referring to

22   the RSA Conference?

23               THE INTERPRETER:  Ma'am, can you repeat

24          the conference name?

**ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES**

**WEI LI**

**18**

1              MS. O'LAUGHLIN:  RSA, the letters R-S-A.

2              THE WITNESS:  Yes.

3   BY MS. O'LAUGHLIN:

4   Q.        As far as you know, did Feitian attend any

5   other exhibitions or conferences in California?

6   A.        No.

7   Q.        What do you know about Feitian's attendance

8   at the RSA Conference in California?

9   A.        I know it's a conference for technology

10  exchange.

11  Q.        Do you know what years Feitian -- well, do

12  you know whether it's a conference that is held every

13  year?

14  A.        I know.

15  Q.        You know that it is held every year?

16  A.        Well, it seems like it in my memory.  It

17  seems like it.

18  Q.        That it is every year?

19  A.        Yes.

20  Q.        Do you know, did you get any information as

21  to what years Feitian attended the conference in

22  California?

23              THE INTERPRETER:  Ma'am, I need to

24              confirm with Mr. Li.

**ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES**

WEI LI

19

1          THE WITNESS:  Well, I remember before

2          2006 Feitian attended this conference.

3    BY MS. O'LAUGHLIN:

4    Q.      Okay.  Let's go back to what you did to

5    prepare for this deposition.  Am I correct that the

6    only thing you did was to talk to the sales manager?

7    A.      Yes.

8    Q.      Am I also correct that you only talked to the

9    sales manager about Feitian's business in Delaware and

10   not Feitian's business in California?

11   A.      I'm not clear.

12   Q.      My question is, did you in order to prepare

13   for this deposition, get any information about

14   Feitian's business in California?

15   A.      Yes.

16   Q.      What information did you get about Feitian's

17   business in California?

18   A.      That we attended the conference in

19   California.

20   Q.      Did you get any other information?

21   A.      No.

22   Q.      Did you ask for any other information about

23   Feitian's business in California?

24   A.      Yes.

**ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES**

WEI LI

20

1    Q.        What did you ask for?

2    A.        Information about the business.

3    Q.        Could you explain that answer in more detail,

4    please?

5    A.        Well, I asked all aspect of the business, but

6    they did not have time to report to me yet.

7              MS. O'LAUGHLIN:  Okay.  Mr. Reeves --

8              MR. REEVES:  Yes.

9              MS. O'LAUGHLIN:  -- are you going to

10             produce this witness again so that I can ask

11             questions about Feitian's business contacts

12             with California?

13             MR. REEVES:  Well, I'll take it under

14             advisement, but, you know, it was only a day

15             before yesterday that the Court ordered us to

16             come up with California information, and he's

17             tried to obtain that information but has not

18             gotten it yet.  We also are gathering it

19             right now, and we'll produce whatever

20             documents we have related to California.  But

21             he's already testified that, you know, he's

22             aware of the RSA Conference, which we've

23             already admitted to.  So we'll see what else

24             comes out in discovery, I guess.

**ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES**

WEI LI

21

1      MS. O'LAUGHLIN:  Well, Mr. Reeves, if

2  you had called me and told me that there

3  wasn't sufficient time to obtain the

4  information about the California business

5  before the deposition that was scheduled for

6  tonight, I would have continued the

7  deposition.  Since you did not call me and

8  advise me and we are now having the

9  deposition, I fully intend to conduct the

10  deposition of a designee of Feitian

11  concerning its California contacts and the

12  Court has granted us that right.  And I,

13  specifically, raised this issue during the

14  conference with the judge to make sure that

15  there was going to be a witness that was

16  produced by Feitian and by RS Computer who

17  would answer my questions both about

18  Feitian's contact with the State of Delaware

19  and Feitian's contacts with the State of

20  California.

21      MR. REEVES:  Well, you're assuming that

22  they're more contacts than just the RSA

23  Conferences.

24      MS. O'LAUGHLIN:  Well --

ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES

1              MR. REEVES:  He may have already

2         answered your questions right now.

3              MS. O'LAUGHLIN:  Okay.

4              MR. REEVES:  So let's see what comes out

5         of it.  You're still trying to gather the

6         information to see what contacts exist in

7         California, if any, other than he's already

8         testified to.

9    BY MS. O'LAUGHLIN:

10   Q.        Well, Mr. Li, does Feitian keep records of

11   its sales in the United States?

12   A.        No.

13   Q.        So if I live in California, can I buy a

14   product from Feitian?

15   A.        No.

16   Q.        Does Feitian sell -- make sales of its

17   products through distributors or partners or other

18   companies that are located in the United States?

19              MR. REEVES:  Objection to the extent

20         that it calls for information outside of

21         California or Delaware.

22   BY MS. O'LAUGHLIN:

23   Q.        Mr. Li, could you please answer the question?

24              MR. REEVES:  Would you translate my

1      objection first, please?

2            THE INTERPRETER:  Okay.  The interpreter

3            will translate both.

4   BY MS. O'LAUGHLIN:

5   Q.      Let me ask Mr. Li -- and you can translate it

6   and then if there's an objection you can translate

7   that -- Mr. Li, does Feitian make sales in the United

8   States through other companies?

9            MR. REEVES:  And I'll object to the

10           extent that it seeks information outside of

11           California or Delaware.

12           THE INTERPRETER:  Mr. Li say I'm sorry;

13           can you repeat that?

14           MS. O'LAUGHLIN:  So, Interpreter, you'll

15           need to ask him those questions again.

16           THE INTERPRETER:  Sure.

17           THE WITNESS:  I will only answer

18           questions about Delaware and California.

19  BY MS. O'LAUGHLIN:

20  Q.      Does Feitian have any company who distributes

21  Feitian's products in Delaware or California?

22  A.      No.

23  Q.      Are you familiar with the company known as RF

24  Ideas, Inc. doing business as Security Tokens?

WEI LI

24

1          THE INTERPRETER:  Ma'am, can you repeat

2              question?

3   BY MS. O'LAUGHLIN:

4   Q.        Are you familiar with the company known as RF

5   Ideas, RF Ideas, Inc. doing business as Security

6   Tokens?

7          THE INTERPRETER:  Ma'am, Mr. Li is

8              asking the interpreter to repeat.

9          THE WITNESS:  I know this company.

10  BY MS. O'LAUGHLIN:

11  Q.        Okay.  Do you know what its relationship with

12  Feitian was?

13  A.        This company is located neither in California

14  nor Delaware.

15  Q.        Did this company act as a distributor of

16  Feitian products?

17  A.        It used to be Feitian's agent.

18  Q.        Its agent in the United States?

19  A.        Yes.

20  Q.        And didn't Feitian have an agreement with RF

21  Ideas whereby it could sell Feitian's products anywhere

22  in the United States including in Delaware and

23  California?

24          MR. REEVES:  I'll object to the extent

ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES

WEI LI

25

1          it seeks information outside of Delaware and

2          California, but to the extent it seeks

3          information about Delaware and California,

4          you can answer.

5               THE INTERPRETER:  Ma'am, can you repeat

6          the question?

7    BY MS. O'LAUGHLIN:

8    Q.          Did RF Ideas have an agreement with Feitian

9    whereby RF Ideas could make sales of Feitian products

10   in Delaware and California?

11   A.          Well, because this company is not in Delaware

12   nor California so I can't answer this question.

13   Q.          Did Feitian have an agreement with RF Ideas

14   pursuant to which RF Ideas could make sales of Feitian

15   products anywhere in the United States?

16   A.          It's the issue of RF Ideas Company.

17   Q.          I don't understand.  I do not understand your

18   answer.  Could you explain it to me?

19   A.          Well, it's the same answer as I answered

20   before.  This company is not in those two states, so I

21   can't answer this question.

22   Q.          Have you ever looked at the distribution

23   agreement between Feitian and RF Ideas?

24   A.          No.

1   Q.      No?

2   A.      No.

3   Q.      Did you ever look at any of the agreement --

4   any of the documents that were produced by Feitian in

5   response to our jurisdictional discovery?

6   A.      No.

7   Q.      Okay.  So you don't know whether or not the

8   distribution agreement between Feitian and RF Ideas

9   that was produced has a sales territory in it?

10              MR. REEVES:  I'm going to object to

11              questions about the RF Ideas and RF Ideas

12              sales agreement as going outside the scope of

13              California and Delaware.

14  BY MS. O'LAUGHLIN:

15  Q.      Okay.  Do you know, Mr. Li, whether or not

16  the distribution with RF Ideas, the distribution

17  agreement between Feitian and RF Ideas, allowed RF

18  Ideas to sell Feitian products in the United States?

19              MR. REEVES:  Again, same objection.

20  BY MS. O'LAUGHLIN:

21  Q.      You can answer, Mr. Li.

22  A.      I don't know the details.

23  Q.      Okay.  Do you know whether or not the State

24  of Delaware is a state in the United States of America?

WEI LI

27

1    A.        Yes.

2    Q.        So if RF Ideas were allowed to sell anywhere

3    in the United States, that would include the State of

4    Delaware; is that right?

5    A.        Yes.

6    Q.        Okay.  And do you know whether or not

7    California is a state within the United States of

8    America?

9    A.        Yes, I know.

10   Q.        So if RF Ideas could sell anywhere in the

11   United States of America, it would also be entitled to

12   sell Feitian products in California; is that correct?

13   A.        Yes.

14   Q.        Do you know whether or not RF Ideas or any

15   representatives from RF Ideas ever attended the RSA

16   Conference in California with Feitian?

17   A.        I don't know.

18   Q.        Did you ever hear of a company called AZ-Tech

19   Software, Inc.?

20                    THE INTERPRETER:  Ma'am, the company

21              name is AZ?

22   BY MS. O'LAUGHLIN:

23   Q.        AZ, the letters A-Z and then hyphen Tech

24   Software, Inc.

ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES

WEI LI

28

1    A.        Yes, I heard of it.

2    Q.        Is AZ-Tech a part anywhere of Feitian in the

3    U.S.?

4    A.        This company is not located in those two

5    states.

6    Q.        Do you know if this is a -- if AZ-Tech is a

7    U.S. company?

8    A.        U.S. company.  I know.

9    Q.        What do you know?

10   A.        It is a U.S. company.

11   Q.        Okay.  Do you know if anyone from AZ-Tech

12   ever participated in the RSA Conference with Feitian?

13   A.        I don't know.

14   Q.        Do you know whether or not -- are you

15   familiar with Feitian's English language web site?

16   A.        I know.

17   Q.        Okay.  Do you know whether or not you can

18   link onto AZ-Tech's web site from Feitian's web site?

19             MR. REEVES:  Again, I'll object to the

20             extent that's outside of the scope of

21             California or Delaware.

22             THE WITNESS:  I will not answer it.

23   BY MS. O'LAUGHLIN:

24   Q.        Does Feitian keep e-mails that it receives

ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES

WEI LI

29

1    with inquiries about its products from the United

2    States?

3    A.        Well, I've heard from the report that Feitian

4    got such e-mails.

5    Q.        Okay.  Did you ask -- and by the report

6    you're talking about the report the sales manager made

7    to you?

8    A.        Yes.

9    Q.        Okay.  And did you ask the sales manager to

10   look to see if there were any e-mails from anyone

11   located in Delaware?

12   A.        No.

13   Q.        Did you ask the sales manager or anyone else

14   to look to see if there were any e-mails from anyone

15   located in California?

16   A.        No.

17   Q.        Okay.  Does Feitian -- if Feitian gets an

18   inquiry from someone located in Delaware, how would

19   Feitian respond to that person?

20   A.        No response.

21   Q.        Feitian would not respond to anyone who made

22   an inquiry about a Feitian product from the State of

23   Delaware?

24   A.        Yes.

WEI LI

30

1    Q.        Why not?

2    A.        Because we do not have a specific person,

3    specific salesperson, in charge of sales in U.S.

4    market.

5    Q.        What about before when you had a specific

6    person in charge of sales in the U.S. market, how would

7    you respond to an inquiry from the State of Delaware?

8    A.        I do not know the information before.

9    Q.        Did you ask anyone to give you the

10   information before?

11   A.        No.

12   Q.        Okay.  When was the last time that Feitian

13   had someone in charge of sales to the U.S.?

14   A.        I don't know.  I need to ask around.

15   Q.        Does Feitian do any business or does Feitian

16   now or has it since October of 1999 done any business

17   in Delaware?

18   A.        No.

19   Q.        How do you know that?

20   A.        I asked specifically about it.

21   Q.        You asked the sales manager?

22   A.        Nobody tells me that we have business in this

23   state.

24   Q.        Who did you ask?

WEI LI

31

1    A.        Well, previously I asked Liu Yuhong.

2    Q.        Who else?

3    A.        Well, now I ask Liu Hui.

4    Q.        Okay.  When you asked Liu Yuhong, when was

5    that?

6              THE INTERPRETER:  Ma'am, I need to

7              confirm the answer with Mr. Li.  I didn't

8              hear him very clearly.

9              MS. O'LAUGHLIN:  Okay.

10             THE WITNESS:  With Liu Yuhong was when

11             Liu Yuhong was in that position.  I exchanged

12             information with Liu Yuhong constantly and it

13             was about last year.

14   BY MS. O'LAUGHLIN:

15   Q.        Okay.  Did you ask Liu Yuhong specifically

16   when you checked constantly whether there was business

17   in Delaware or --

18   A.        Yes.

19   Q.        And since Liu Yuhong has left Feitian about a

20   year ago, the person that you've -- have you asked

21   anyone else whether or not Feitian does any business in

22   Delaware?

23   A.        Yes.

24   Q.        Who?