**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| Aladdin Knowledge Systems, Ltd., | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 05-149 (GMS) |
| Feitian Technologies Co., Ltd., et al., | : | |
| Defendants. | : | |

**COMPENDIUM OF UNREPORTED DECISIONS CITED IN THE SUPPLEMENTAL MEMORANDUM OF LAW OF PLAINTIFF ALADDIN KNOWLEDGE SYSTEMS, LTD. IN OPPOSITION TO THE MOTION OF DEFENDANT FEITIAN TECHNOLOGIES CO., LTD. TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

CO-COUNSEL:

Michael K. Coran, Esquire
Mary Ellen O'Laughlin, Esquire
Albert Keyack, Esquire
260 S. Broad Street, 4th Floor
Philadelphia, PA 19102-5003

David S. Eagle (Bar No. 3387)
Patrick A. Costello (Bar No. 4535)
KLEHR, HARRISON, HARVEY, BRANZBURG & ELLERS LLP
919 Market Street, Suite 1000
Wilmington, DE 19801-3062
Telephone (302) 552-5508
*deagle@klehr.com*
*pcostello@klehr.com*

Dated: November 20, 2006

Counsel for Plaintiff Aladdin Knowledge Systems, Ltd.

**UNREPORTED DECISIONS**

Blackwell v. Marina Associates, 2006 WL 573793 (E.D. Pa. March 9, 2006)

Blistex Inc. v. Circle Laboratories, Inc., 2000 WL 1154635 (N.D. Ill. Aug. 15, 2000)

Blizzard v. FCI Elkton, 2006 WL 2934826 (E.D. Pa. Oct. 12, 2006)

Gummow v. Superior Ratchet and Tool Co., 1997 WL 374406 (N.D. Ill. June 20, 1997)

Mateer v. Interocean American Shipping Corp., 2006 WL 997248 (N.D. Ca. April 17, 2006)

School Stuff, Inc. v. School Stuff, Inc., 2001 WL 558050 (N.D. Ill. May 21, 2001)

Telecordia Technologies, Inc. v. Alcatel S.A., 2005 WL 1268061 (D. Del. May 27, 2005)

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 573793 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

C
Briefs and Other Related Documents
Blackwell v. Marina AssociatesE.D.Pa.,2006.Only the Westlaw citation is currently available.

United States District Court,E.D. Pennsylvania.
William BLACKWELL
v.
MARINA ASSOCIATES d/b/a Harrah's Casino Hotel Atlantic City
**No. Civ.A. 05-5418.**

March 9, 2006.

Joseph J. Aversa, Aversa & Linn PC, Philadelphia, PA, for William Blackwell.
Steven B. Kantrowitz, Kantrowitz & Phillippi, LLC, Philadelphia, PA, for Marina Associates.

*MEMORANDUM*

ONEILL, J.
***1** Plaintiff, William Blackwell, filed an action in the Philadelphia Court of Common Pleas on September 9, 2005 against defendant, Marina Associates, doing business as Harrah's Casino Hotel Atlantic City, alleging that defendant's negligent maintenance of its premises caused plaintiff to suffer various injuries when a slot machine stool collapsed beneath him on the casino floor on January 4, 2004. Defendant removed this action to this Court on October 17, 2005. Before me now is defendant's motion to dismiss for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), and improper venue, Fed.R.Civ.P. 12(b)(3), or, in the alternative, motion to transfer and plaintiff's response thereto.

BACKGROUND

Blackwell is a citizen of Pennsylvania. Marina Associates is a New Jersey corporation with its principal place of business in New Jersey. Marina Associates alleges that it is not licensed to do business in Pennsylvania, does not conduct business in Pennsylvania regularly, does not have registered agents in Pennsylvania, does not own property in Pennsylvania that is related to this action, and does not maintain offices in Pennsylvania.

Blackwell disagrees and alleges that Marina Associates regularly conducted business in Philadelphia. In support of this position, Blackwell asserts that Harrah's Entertainment, Inc. is nationally traded on the New York Stock Exchange and "owns or manages through various subsidiaries more than 40 casinos in three countries, primarily under the Harrah's Caesers and Horseshoe brand names." Moreover, Blackwell asserts that "Harrah's has formed a specific corporation in Pennsylvania for the purpose of developing a racetrack and gambling venue in Chester, Pennsylvania and is believed to be soliciting assitance for this venture from individuals, investors, and corporations in and about Philadelphia." Harrah's advertises that its Chester Casino & Racetrack "will feature over 2,500 slot machines, a 5/8 mile harness racetrack, year 'round simulcasting and a variety of food & beverage offerings."

Blackwell traveled to Harrah's Atlantic City Casino on January 3, 2004 after receiving a promotional flier and voucher offering a complimentary overnight stay at Harrah's addressed to his wife (then fiancé) at their home in Philadelphia. Blackwell alleges that he and his wife receive similar promotional materials from Harrah's on a regular basis. Blackwell alleges that on the following day, January 4, 2004, he was injured when a slot machine stool collapsed beneath him.

STANDARD OF REVIEW

Once a defendant raises a jurisdiction defense, *see* Fed.R.Civ.P. 12(h)(1), plaintiff bears the burden of demonstrating a prima facie case that defendant has sufficient contacts with the forum state to establish personal jurisdiction. *North Penn Gas v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir.1990). However, "[o]nce the plaintiff has made out a prima facie case of minimum contacts, the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir.1993). "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy." *Id.*

***2** Initially, "courts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Bank, FA v. Shushan, 954 F.2d 141, 142, n. 1 (3d Cir.1992). However, "a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute." *Id.* "The plaintiff must sustain its burden of proof through sworn affidavits or other competent evidence." *North Penn,* 897 F.2d at 689. A plaintiff may not "rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Time Share,* 735 F.2d at 66, n. 9; *Peek v. Golden Nugget Hotel & Casino,* 806 F.Supp. 555, 558 (E.D.Pa.1992) ( "References in a brief, unsupported by affidavit, are not properly before the Courts as facts evidencing contact for jurisdictional purposes.") (citations omitted).

DISCUSSION

*I. Personal Jurisdiction*

Federal Rule of Civil Procedure 4(e) grants a district court personal jurisdiction over nonresident defendants to the extent permissible under the law of the jurisdiction where the district court sits. Fed.R.Civ.P. 4(e); *Grand Entertainment,* 988 F.2d at 481. Pennsylvania's long arm statutes are "coextenstive with the limits placed on the states by the federal Constitution." *Vetrotex v. Certainteed Corp. v. Consol. Fiber Glass Prods. Co.,* 75 F.3d 147, 150 (3d Cir.1996); 42 Pa. Cons.Stat. § § 5301 (general jurisdiction) & 5322 (specific jurisdiction).

The due process limits on the reach of personal jurisdiction are defined by a two prong test. *See generally Vetrotex,* 75 F.3d at 150-51. First, plaintiff must demonstrate that defendant has constitutionally sufficient "minimum contacts" with the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum"). To determine whether minimum contacts exist, I must examine "the relationship among the forum, the defendant and the litigation," *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and determine whether defendant has "purposefully directed" its activities toward residents of the forum. *Burger King,* 471 U.S. at 472. In other words, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490, (1980) ("[I]t is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.").[FN1] Typically, as here, Courts' analyses turn on the first step.

FN1. The Supreme Court has further examined the due process limits on a court's exercise of personal jurisdiction over defendants:

Jurisdiction is proper ... where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King,* 471 U.S. at 475-76.

***3** Second, if plaintiff demonstrates sufficient "minimum contacts," I must determine whether the exercise of personal jurisdiction would comport with "traditional notions of fair play and substantial justice." *Grand Entertainment,* 988 F.2d at 482 *quoting Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In deciding this second step, courts consider the following factors: (1) the burden on defendant; (2) the interests of the forum state; (3) plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; (5) and the shared interest of the several states in furthering fundamental substantive social policies. *Grand Entertainment,* 988 F.2d at 482 *quoting Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Because I find that Blackwell has not demonstrated sufficient minimum contacts, I do not address whether the exercise of personal jurisdiction would comport with traditional notions of fair play and substantial justice.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 573793 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

*A. General Jurisdiction*

There are two theories under which a defendant may be subjected to personal jurisdiction: general and specific jurisdiction.FN2 First, a defendant may be subjected to general jurisdiction "when the plaintiff's cause of action arises from the defendant's non-forum related activities. In order to establish general jurisdiction, the plaintiff must show that the defendant has maintained continuous and substantial forum affiliations." North Penn, 897 F.2d at 690 n. 2; 42 Pa. Cons.Stat. § 5301. "To establish general jurisdiction, the plaintiff must show that the defendant has maintained 'continuous and systematic' contacts with the forum." Vetrotex, 75 F.3d at 151 n. 3 *citing* Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 n. 9 & 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Burger King, 471 U.S. at 473 n. 15. "The threshold for establishing general jurisdiction is very high, and requires a showing of extensive and pervasive facts demonstrating connections with the forum state." O'Connor v. Sandy Lane Hotel Co., Ltd., No. 04-2436, 2005 WL 994617, at *2 (E.D.Pa. Apr.28, 2005) *citing* Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir.1982).

FN2. The parties do not recognize any distinction.

Marina Associates appears to argue that general jurisdiction is not proper in this case because: (1) it is a citizen of New Jersey; (2) it is not licensed to do business in Pennsylvania; (3) it does not regularly conduct business in Pennsylvania; (4) it does not maintain offices in Pennsylvania or own property in Pennsylvania that is related to this action; and (5) all of the events giving rise to this action occurred in New Jersey. Blackwell disagrees and argues that general jurisdiction is proper because: (a) Harrah's frequently pursues claims against Pennsylvania gamblers in Pennsylvania courts and files numerous cases in the Philadelphia Court of Common Pleas to enforce its New Jersey judgments; (b) a Harrah's subsidiary is now involved in developing a racetrack in Chester, Pennsylvania; (c) "Harrah's trades its stock on the New York Stock Exchange and it is quite likely that a good number of stockholders reside in Philadelphia"; and (d) by mailing promotional materials to him and his wife, among other Pennsylvanians, in order to solicit their gambling business at Harrah's Casino in Atlantic City, New Jersey, Marina Associates is "purposefully availed itself" of jurisdiction in Pennsylvania.

*4 Blackwell relies predominantly on two cases, *Peek v. Golden Nugget Hotel & Casino,* 806 F.Supp. 555 (E.D.Pa.1992) and *Gavigan v. Walt Disney World, Inc.,* 646 F.Supp. 786 (E.D.Pa.1986), to support is general jurisdiction arguments. *Peek* does not support Blackwell's argument. In *Peek,* this Court held that plaintiff who was injured in a slip and fall in defendant's hotel/casino in Nevada failed to establish general jurisdiction because: (i) defendants did not own any property, pay any taxes, operate any offices, incorporate, or lease any space in Pennsylvania; and (ii) there was no evidence to show that defendants consciously targeted Pennsylvania consumers or advertised in Pennsylvania print, radio, or television media. *Peek,* 806 F.Supp. 555. Blackwell presumes that "if the plaintiff [in *Peek* ] had been able to show target[ed] mailings to him, there would have been jurisdiction over [defendant]." *See id.* However, the mere fact that defendant mailed promotional materials to at least two Pennsylvania residents (Mr. & Mrs. Blackwell) is not sufficient to demonstrate that defendant engaged in continuous and systematic contacts with Pennsylvania.FN3

FN3. Although plaintiff alleges that defendant mailed promotional materials to numerous other Pennsylvanians, he does not support this allegation with any evidence.

*Gavigan* is easily distinguishable. In *Gavigan,* this Court held that plaintiff who was injured in a motor vehicle accident at defendant's complex had demonstrated general jurisdiction over Disney World because the evidence demonstrated that Disney World had engaged in a promotional campaign in a well known Philadelphia department store, had advertised in Pennsylvania newspapers and television stations, had conducted six month advertising campaign directed at Philadelphia residents, had conducted "Disney Salutes Philadelphia" promotional campaign, had dispatched Mickey Mouse to award honorary Disney World citizenship on Mayor of Philadelphia, and had sent Disney's chef to participate in cooking festival in Philadelphia. *Gavigan,* 646 F.Supp. 786. By contrast, Blackwell's evidence only demonstrates Marina Associates/Harrah's sent promotional fliers to at least himself and his wife.

This Court frequently has held that such

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 573793 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

advertisements are not sufficient to establish general jurisdiction. *See, e.g.,* O'Connor, 2005 WL 994617 (refusing to find general jurisdiction where defendant mailed newsletter to 865 individuals and travel related companies with Pennsylvania addresses because "Defendant's newsletter is sent only to a targeted clientele of individuals who have independently sought out information, [and] this limited interaction with Pennsylvania residents is insufficient to establish general jurisdiction."); *Inzillo v. The Cont'l Plaza,* No. 99-0100, 2000 WL 1752121, (M.D.Pa.2000) (holding that plaintiff's allegations that travel agents placed at least two of defendant's advertisements in Pennsylvania were not sufficient to support a finding of general jurisdiction; there was no evidence that defendant had ever employed an agent, maintained a mailing address, maintained a bank account, paid any tax in Pennsylvania, advertised in any newspapers, magazines, or other media in Pennsylvania); *Wims v. Beach Terrace Motor Inn, Inc.,* 759 F.Supp. 264, 267-68 (E.D.Pa.1991) (declining to exercise general jurisdiction over New Jersey motel because defendant's yearly mailing of 1,133 brochures to potential Pennsylvania customers and evidence that a substantial number of its guests were Pennsylvania residents was not sufficient to constitute substantial and continuous contacts); *Johnson v. Summa Corp.,* 632 F.Supp. 122 (E.D.Pa.1985) (failing to find general jurisdiction over Nevada hotel because defendant's maintenance of toll free telephone number, mailing of brochures to plaintiff, and the presence of promotional materials at a Philadelphia travel agency did not constitute extensive and persuasive contact with Pennsylvania); *see also* *Gehling v. St. George's Sch. of Med., Ltd.,* 773 F.2d 539 (3d Cir.1985) (refusing to exercise personal jurisdiction over Grenada medical school because although the medical school solicited students by placing advertisements in national publications, sent representatives on media tour to Philadelphia to increase school's exposure in medical community, appeared on Pennsylvania radio and television programs, established join academic program with Pennsylvania college, and received tuition from Pennsylvania residents, these contacts with Pennsylvania were not substantial and continuous).

***5** Blackwell's assertion that defendant uses the Pennsylvania courts to pursue judgment against Pennsylvania gamblers is not supported by any evidence. Even assuming that defendant has filed lawsuits in Pennsylvania to vindicate its legal rights, there is no allegation that Blackwell's personal injury claim has any relationship with any of these other actions. Without such a relationship, the fact that defendant has brought suit in Pennsylvania as a plaintiff is immaterial to the question of whether it can be haled into a Pennsylvania court as a defendant via general or specific jurisdiction. As my colleague Judge Padova stated in a similar case:

Plaintiffs' argument seems to improperly conflate purposeful availment-a specific jurisdiction concept-with general jurisdiction to argue that once a defendant makes use of the Commonwealth's court system it has opened itself to being sued in the Commonwealth on any claim. Filing even nineteen lawsuits, without more, cannot constitute continuous and systematic activity so as to establish general jurisdiction. The unrelated lawsuits are also too random, fortuitous and attenuated to support any finding of specific jurisdiction.

*Merlino v. Harrah's Entertainment, Inc.,* No. 05-6660, 2006 WL 401847, at *3 (E.D.Pa. Feb.17, 2006).

Blackwell's assertion that Harrah's trades its stock on the NYSE is immaterial to the determination of whether defendant maintains continuous and systematic contacts with Pennsylvania sufficient for general jurisdiction. Blackwell's assertion that many stockholders may reside in Philadelphia similarly is immaterial and is not supported by any evidence.

Blackwell's assertion that Harrah's has or will be opening a subsidiary in Chester, Pennsylvania is also without merit. *See generally* *Action Mfg. Co., Inc. v. Simon Wrecking Co.,* 375 F.Supp.2d 411, 420 (E.D.Pa.2005). "[A] foreign corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing business in that state." *Lucas v. Gulf & Western Indus., Inc.,* 666 F.2d 800, 805-06 (3d Cir.1981) (abrogated on other grounds). In other words, "a parent-subsidiary relationship is by itself an insufficient reason to pierce the corporate veil in the jurisdictional context." *Action Mfg.,* 375 F.Supp.2d at 420 *quoting* *Dutoit v. Strategic Minerals Corp.,* 735 F.Supp. 169, 171 (E.D.Pa.1990) (refusing to find jurisdiction over a foreign corporation with a subsidiary in Pennsylvania because "plaintiffs have not shown that corporate formalities have been disregarded in any significant way" nor did plaintiff demonstrate that the subsidiary acted as the parent's agent in Pennsylvania). Accordingly, in order to impute the jurisdictional contacts of Harrah's Chester operations, Blackwell must present prima facie evidence to overcome the general rule that mere ownership of a subsidiary does

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 573793 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 5

not subject the parent corporation to personal jurisdiction in the state of the subsidiary.FN4 *See id.* Here, Blackwell has presented no evidence to overcome this presumption.

FN4. The Court of Appeals has set forth numerous factors to be considered in determining whether a court may impute the jurisdictional contacts of a subsidiary to its parent corporation: (1) whether the subsidiary corporation played a part in the transactions at issue; (2) whether the subsidiary was merely the alter ego or agent of the parent; and (3) whether the independence of the separate corporate entities was disregarded. *Lucas,* 666 F.2d at 806. This Court has added another factor: (4) "whether the subsidiary is necessarily performing activities that the parent would otherwise have to perform in the absence of the subsidiary." *Arch v. Am. Tobacco Co., Inc.,* 984 F.Supp. 830, 837 (E.D.Pa.1997).

*B. Specific Jurisdiction*

***6** Second, defendant may be subjected to specific jurisdiction "when the cause of action arises from the defendant's forum related activities. To establish specific jurisdiction a plaintiff must show that the defendant has minimum contacts with the state such that the defendant should reasonably anticipate being haled into court there." *Vetrotex,* 75 F.3d at 151 n. 3 *quoting North Penn,* 897 F.2d at 690 *and World-Wide Volkswagen,* 444 U.S. at 297 (internal quotations omitted); 42 Pa. Cons.Stat. § 5322. In other words, "specific jurisdiction is established when a non-resident defendant has purposefully directed his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG,* 270 F.3d 144, 150 (3d Cir.2001) *citing Burger King,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Here, Blackwell's stool injury does not arise out of Marina Associates' promotional mailings. Blackwell nevertheless appears to argue that Marina Associates' promotional mailings to him and his wife in order to solicit their gambling business at Harrah's Casino in Atlantic City creates specific jurisdiction. Although "[m]ail and telephone communications sent by a defendant into the forum may count toward the minimum contacts that support jurisdiction," *Grand Entertainment,* 988 F.2d at 482, this Court routinely has held that "advertising contracts with the forum state will not give rise to specific personal jurisdiction over defendants charged with tortious injury occurring outside the state." *O'Connor,* 2005 WL 994617, at *2 (refusing to. find specific jurisdiction because the causal link between plaintiff's injury in defendant's spa shower and defendant's mailed spa brochures was too attenuated to suggest that the injury arose from defendant's advertising activities in Pennsylvania). Accordingly, I do not have specific jurisdiction over Marina Associates in this case.

The supporting cases are legion. *See, e.g., Rushton v. Marina Associates,* No. 04-1889, 2005 WL 2176835 (W.D.Pa. Aug.18, 2005) (recommending that defendant's motion to dismiss be granted because plaintiff's allegations of defendant's negligence for failure to maintain properly the slot stool did not arise out of defendant's conduct in Pennsylvania, namely its provision of a tour bus to take plaintiff to its casino in Atlantic City) (Hay, M.J.); *Inzillo,* 2000 WL 1752121 (declining to find specific jurisdiction where defendant paid commissions to travel agencies and placed advertisements in Pennsylvania newspapers because causal link between defendant's activities in Pennsylvania and plaintiff's slip and fall at defendant's resort in Mexico was too attenuated); *Peek,* 806 F.Supp. 555 (refusing to find specific jurisdiction where Pennsylvania citizen was injured in a slip and fall in defendant's hotel/casino in Nevada because: (i) she did not provide the Court with any evidence to support her assertion that defendants benefitted from long and continuous campaigns of advertising, travel industry promotions, and sales agreements with Pennsylvania residents (she only provided an affidavit of unknown origin and a general brochure); and (ii) even assuming that defendants' brochures were displayed in Pennsylvania, plaintiff failed to show that defendants purposefully distributed the these brochures in Pennsylvania or that they induced plaintiff to travel to defendant's resort); *Wims,* 759 F.Supp. 264 (holding that patrons injured at motel in New Jersey could not establish specific jurisdiction in Pennsylvania despite alleging that they were solicited to visit the motor inn by advertising directed to them in Pennsylvania because the causal link between the brochures and the injury was too remote to say that the injury arose from defendant's activities in Pennsylvania); *Johnson,* 632 F.Supp. 122 (failing to find specific jurisdiction because Pennsylvania resident's injury at Nevada hotel did not arise from defendant's advertising in Pennsylvania or maintenance of toll free telephone number).FN5

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN5. Marina Associates also argues that venue is improper in this Court under 28 U.S.C. § 1391(a). However, because I hold that personal jurisdiction is not proper in this case, I need not discuss the parties' arguments with respect to venue.

*7 Notwithstanding my lack of personal jurisdiction over defendant, I believe it to be in the interests of justice to transfer this action to the District of New Jersey. *See* 28 U.S.C. § 1631 ("Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed ..."). Personal jurisdiction and venue are proper in the District of New Jersey because New Jersey has general jurisdiction over Marina Associates, Marina Associates resides in New Jersey, and the relevant events giving rise to Blackwell's personal injury claim occurred in New Jersey. *See* N.J. Stat. § 4:4-4; *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir.2004); 28 U.S.C. § 1391(a) & (c). Transfer is in the interests of justice because jurisdiction and venue are clearly proper in the District of New Jersey and the Court's interests in judicial economy will be served by obviating the need for plaintiff to refile his claim in New Jersey. *See Lawman Armor Corp. v. Simon,* 319 F.Supp.2d 499, 507 (E.D.Pa.2004) ("Normally transfer will be in the interest of justice because dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating.") *citing Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) *and Societe Nouvelle Generale de Promotion v. Kool Stop Int'l, Inc.,* 633 F.Supp. 153, 155 (E.D.Pa.1985) ("If the lack of in personam jurisdiction is in doubt, sound judicial administration requires transfer to a district where it clearly could have been brought.").[FN6] This action will be transferred to the District of New Jersey.

FN6. Blackwell argues that I should not transfer this case to the District of New Jersey because plaintiff's choice of forum generally is a "paramount consideration in any determination of a transfer request." *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (Section 1404(a) transfer). However, I note that personal jurisdiction is not proper in this Court and even when considering a Section 1404(a) transfer of venue "a plaintiff's choice of forum receives less weight where none of the operative facts occurred in the selected forum." *See, e.g., Zeevi v. Am. Home Prods. Corp.,* No. 99-20277, 2002 WL 92902, at *1 (E.D.Pa. Jan.24, 2002).

An appropriate order follows.

*ORDER*

AND NOW, this 9th day of March 2006, upon consideration of defendant's motion to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, motion to transfer and plaintiff's response thereto, and for the reasons set forth in the accompanying memorandum, it is ORDERED that defendant's motion to transfer is GRANTED. This action is TRANSFERRED to the United States District Court for the District of New Jersey.

E.D.Pa.,2006.
Blackwell v. Marina Associates
Not Reported in F.Supp.2d, 2006 WL 573793 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

- 2:05cv05418 (Docket) (Oct. 17, 2005)
- 2005 WL 3135091 (Trial Motion, Memorandum and Affidavit) Brief of Defendant, Marina Associates, d/b/a Harrah's Casino Hotel Atlantic City, in Support of Motion to Dismiss (2005) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1154635 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

H

Briefs and Other Related Documents

Blistex Inc. v. Circle Laboratories, Inc.N.D.Ill.,2000.Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.

BLISTEX INC. Plaintiff,
v.
CIRCLE LABORATORIES, INC. Defendant.
**No. 00 C 3084.**

Aug. 15, 2000.

*MEMORANDUM OPINION AND ORDER*

CONLON, J.

***1** Blistex Inc. ("Blistex") sues Circle Laboratories, Inc. ("Circle") for a declaration of non-infringement of Circle's United States Patent No. 5,879,693 ("the '693 patent"). Blistex manufactures individually packaged acne wash pads known as "Stri-Dex Facewipes To Go." Circle makes similar products sold as "Pocket Scrubz." Circle moves to dismiss the complaint for lack of subject matter jurisdiction and for lack of personal jurisdiction. In the alternative, Circle moves to transfer the case to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404.

*DISCUSSION*

I. SUBJECT MATTER JURISDICTION

Circle argues subject matter jurisdiction does not exist because there is not an actual controversy. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a district court may declare the rights and legal obligations of an interested party "[i]n a case of actual controversy." The act enables an accused infringer who is reasonably at legal risk because of an unresolved dispute to obtain judicial resolution of the dispute without waiting for commencement of litigation by the patent owner. *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed.Cir.1993). To find that an actual controversy exists in the patent context, federal courts commonly require that (1) the plaintiff has a reasonable apprehension of facing an infringement suit based on actions by the patent holder; and (2) action by the plaintiff to produce or prepare to produce an allegedly infringing product. *BP Chemicals*, 4 F.3d at 978; *International Harvester Co. v. John Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir.1980).

There is no dispute that Blistex has produced an allegedly infringing product. Rather, Circle argues its actions do not support a reasonable apprehension by Blistex that Circle would sue Blistex for infringement. Circle asserts it has not expressly threatened to sue Blistex and has done nothing aside from offering in a November 9, 1999 letter to license the '693 patent to Blistex. *See* Compl. Ex. A.[FN1] Circle relies on *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051 (Fed.Cir.1995) and *Indium Corp. of America v. Semi-Alloys, Inc.*, 781 F.2d 879 (Fed.Cir.1985), cases finding that a reasonable apprehension of suit did not exist where the patent holders offered to license their patents to the plaintiffs. *Phillips Plastic* explained that "[t]he offer of a patent license does not create an actual controversy" and that "[w]hen there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken down." *Phillips Plastic*, 57 F.3d at 1053.

FN1. On a motion to dismiss for lack of subject matter jurisdiction, the court draws all inferences and resolves all ambiguities in the plaintiff's favor and assumes all well-pleaded facts are true. *United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir.1996). The court may properly consider evidence outside the complaint bearing on the court's jurisdiction. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir.1993); *Bowyer v. United States Dep't of Air Force*, 875 F.2d 632, 635 (7th Cir.1989).

Circle has done more than simply offer to license the '693 patent. The November 1999 letter accuses Blistex of manufacturing an "unlicensed copycat product" and an "unlicensed infringing product." *Id.* at 1. The letter asserts that "[i]t is [Circle's] firm opinion that what Blistex has done is an obvious and intentional rip off of Pocket Scrubz" and that "our

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1154635 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

attorneys strongly believe a jury would agree." *Id.* at 2. The letter further states that "if a court found [Blistex's] product was an infringement on our patent then Blistex ... could be liable for monetary damages" and cites applicable statutory provisions. *Id.* at 1. Finally, the letter asserts that retailers carrying Blistex's products could be liable for damages. *Id.*[FN2] These accusations support a reasonable apprehension of suit by Circle to enforce its patent. Where the patent holder "has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988); *see also Waters Corp. v. Hewlett-Packard Co.,* 999 F.Supp. 167, 171 (D.Mass.1998); *Infinitech v. Vitrophage, Inc.,* 842 F.Supp. 332, 335-36 (N.D.Ill.1994) (finding reasonable apprehension of litigation where defendant's letters to plaintiff repeatedly referred to plaintiff's conduct as infringement). An express threat of litigation by the patent holder is not required. *Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 888 (Fed.Cir.1992); *Arrowhead Indus.,* 846 F.2d at 736. Accordingly, Blistex has demonstrated a reasonable apprehension of suit by Circle sufficient to create an actual controversy.

FN2. Circle contends the November 1999 letter is an offer to settle and therefore inadmissible under Federal Rule of Evidence 408. Rule 408 bars the use of offers to settle a claim to establish liability for or invalidity of the claim. Even assuming the letter constituted an offer to settle, Rule 408 is clearly inapplicable, as the letter is not offered to prove the merits of any claim.

***2** Circle attempts to skirt a finding of actual controversy by responding in conclusory fashion that it lacks the financial resources to mount a patent infringement suit in federal court. *See* Wolfe Aff. ¶ 5. Not only is this assertion unsupported by evidence of Circle's financial status, but Circle fails to cite any authority showing that the patent holder's actual ability to sue is a dispositive consideration. A controversy exists where the plaintiff's fear of suit is reasonable. Circle sent Blistex a letter accusing Blistex of infringement, stating that a jury would find infringement, and citing statutory bases for Blistex's liability for damages. Circle did not send Blistex its financial records demonstrating an inability to sue or otherwise indicate that it was bluffing. Moreover, Circle's capacity to sue could change at any moment. Circle could raise revenue by issuing stock or finding a deep-pocket licensee. Circle could also reach a contingent fee arrangement with another attorney. A financially-strapped patent holder cannot threaten alleged infringers with impunity. Those accused of infringement must be able to seek judicial resolution of the dispute so that they may order their affairs accordingly rather than operate in a climate of uncertainty. *Arrowhead Indus.,* 846 F.2d at 735. On the present record, the court concludes an actual controversy exists. Accordingly, the motion to dismiss of lack of subject matter jurisdiction must be denied.

II. PERSONAL JURISDICTION

Circle next argues the court lacks personal jurisdiction over it because it is a Florida-based corporation that has no contacts with Illinois. A federal district court may assert personal jurisdiction over non-resident defendants so long as jurisdiction over those defendants is proper under the law of the forum state. Fed.R.Civ.P. 4(e); *Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 589 (7th Cir .1984). The Illinois long-arm statute governs jurisdiction over non-resident defendants, and its reach extends as far as that permitted by due process. *See* 735 ILCS § 5/2-209(c); *FMC Corp. v. Varanus,* 892 F.2d 1308, 1311 n. 5 (7th Cir.1990). Jurisdiction over non-resident defendants is proper in Illinois as long as defendants "purposefully established 'minimum contacts" ' with Illinois. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985); *Heritage House Restaurants v. Continental Funding,* 906 F .2d 276, 282 (7th Cir.1990). The crux of the minimum contacts analysis is essentially whether it is fair to assert jurisdiction over a non-resident defendant-whether that defendant could "reasonably anticipate being haled into court" in Illinois. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). This requirement is met where the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. *Burger King,* 471 U.S. at 472.

***3** Circle has Illinois contacts sufficient to subject it to personal jurisdiction in Illinois. The court will not recount the entirety of Circle's contacts, but will highlight the most pertinent-Circle's efforts to sell and promote Pocket Scrubz to Illinois consumers and retailers. From January 1999 through May 2000, Illinois residents could place direct orders for Pocket Scrubz on Circle's website, www .pocketscrubz.com

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1154635 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

(the order page was eventually removed because it was not profitable). Blistex's Resp. Ex. A. During this time, three Illinois residents purchased Pocket Scrubz over Circle's website. *Id.* Ex. J. From January 1999 through December 1999, visitors to Circle's website were asked to write letters to retailers requesting that the retailers stock Pocket Scrubz in their stores. For each letter sent, visitors received a box of Pocket Scrubz from Circle. *Id.* Ex. A. During this time, ten Illinois residents received boxes of Pocket Scrubz from Circle for writing letters. *Id.* Ex. K.

Moreover, Circle has recently distributed product samples to the Dominick's chain of grocery stores in Illinois. *Id.* Ex. B. In March and April 1997, Circle distributed free samples of Pocket Scrubz and coupons to approximately 250,000 Illinois public school students. *Id.* Ex. A. In June 1997, Circle distributed approximately 21,600 samples during a concert in Chicago. The samples included a toll-free telephone number that consumers could call to purchase Pocket Scrubz. Circle placed 20 direct response advertisements for Pocket Scrubz on a Chicago radio station during a two-week period surrounding the concert. *Id.* Circle also placed advertisements in Seventeen, a nationally distributed magazine directed toward teen women. *Id.* Ex. A. Circle received at least seven purchase orders from Illinois residents as a result of the radio and magazine advertisements. *Id.* Ex. G. Circle also received over 60 requests from Illinois residents for free Pocket Scrubz samples as a result of the magazine ads. *Id.* Ex. F. In 1999, sales of Pocket Scrubz in Illinois accounted for 9.8% of Circle's total sales; in 2000, Illinois sales have accounted for 45.5% of Circle's total sales. *Id.* Ex. A.

The direct sale of Pocket Scrubz to Illinois residents and Circle's wide-ranging promotional efforts in Illinois clearly establish Circle's minimum contacts with Illinois. These activities need not be continuing at the present time, and Circle's actual sales to Illinois residents need not be significant. When the cause of action at issue "arises out of or relates to" the defendant's contacts, a court may properly assert personal jurisdiction, even if those contacts are "isolated and sporadic." *Burger King*, 471 U .S. at 472-73. "In fact, 'even a single act can support jurisdiction,' so long as it creates a 'substantial connection' with the forum, as opposed to an 'attenuated affiliation.'" ' *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed.Cir.1998) (quoting *Burger King*, 471 U.S. at 475 & n. 18). Circle's sales and promotions of Pocket Scrubz in Illinois relate directly to the subject matter of this suit-whether Blistex's "Stri-Dex" line of individually packages acne wash pads infringes the '693 patent upon which Circle's Pocket Scrubz are based. The contacts began in 1997 and have continued through this year. Accordingly, Circle's motion to dismiss for lack of personal jurisdiction must be denied.

III. TRANSFER

***4** Finally, Circle moves to transfer this case to the United States District Court for the Southern District of Florida pursuant to 28 U .S.C. § 1404. There are three prerequisites to transfer under § 1404:(1) venue must be proper in the transferor court; (2) venue must be proper in the transferee court; and (3) the transfer must be for the convenience of the parties and witnesses, and in the interest of justice. 28 U.S.C. § 1404; *Keppen v. Burlington N.R.R. Co.*, 749 F.Supp. 181, 183 (N.D.Ill.1991). Venue should be transferred only if there is a clear balance of inconvenience in the transferor district. *Sky Valley Ltd. Partnership v. ATX Sky Valley*, Ltd., 776 F.Supp. 1271, 1276 (N.D.Ill.1991). It is Circle's burden to show that the transferee forum is clearly more convenient. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 833 F.2d 1286, 1293 (7th Cir.1989).

Circle devotes one half-page to its transfer argument. It argues that as a small corporation with a negative net worth, it will be able to defend this case more effectively in the Southern District of Florida. Circle contends Blistex has sufficient resources to litigate the action in Florida. However, Circle makes no showing whatsoever that venue is proper in Florida. Moreover, Circle fails to address other factors relevant to transfer, such as the weight given to the plaintiff's choice of forum, the location of witnesses and evidence, and the primary locus of the events underlying the suit. Accordingly, the conclusory motion for transfer must be denied.

*CONCLUSION*

Circle's motions to dismiss and motion to transfer are denied.

N.D.Ill.,2000.
Blistex Inc. v. Circle Laboratories, Inc.
Not Reported in F.Supp.2d, 2000 WL 1154635 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 1154635 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

• 2001 WL 34769404 (Trial Motion, Memorandum and Affidavit) Blistex' Response Memorandum to Clerk, U.S. District Court Circle'S Motion of January 23, 2001 for Summary Judghment of Infringement of the 5.879.693 Patent (Feb. 12, 2001)
• 2001 WL 34769400 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Blistex Inc.'s Motion for Summary Judgment of Non-Infringement of the 5,879,693 Patent as Scheduled by Judge Bobrick's Order for Filing on January 23. 2001 (Jan. 23, 2001)
• 2001 WL 34765252 (Trial Pleading) Complaint (Jan. 01, 2001)
• 2001 WL 34765253 (Trial Pleading) Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Jan. 01, 2001)
• 2001 WL 34769393 (Trial Motion, Memorandum and Affidavit) Memorandum of Fact and Law in Support of Defendant Circle Laboratories, Inc.'s Motion to Dismiss for Want of Subject Matter Jurisdiction (Jan. 01, 2001)
• 2001 WL 34769394 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant's Motion for Summary Judgment with Regards to its Counterclaim (Jan. 01, 2001)
• 2001 WL 34769395 (Trial Motion, Memorandum and Affidavit) Inventor's Affidavit Defining Claims in U.S Patent Number 5,879,693 as to Pad and Square in Support of Defendant's Motion for Summary Judgment as to Defendant's Counterclaim (Jan. 01, 2001)
• 2001 WL 34769396 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Support of Plaintiff's Cross - Motion for Summary Judgment of Patent Invalidity of The 5.879.693 Patent (Jan. 01, 2001)
• 2001 WL 34769398 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Support of Plaintiff's Cross - Motion for Summary Judgment of Non-Infringement of the 5.879.693 Patent (Jan. 01, 2001)
• 2001 WL 34769399 (Trial Motion, Memorandum and Affidavit) Plaintiffs Response Memorandum to Defendant's Motion for Summary Judgment of Infringement of the 5,879.693 Patent (Jan. 01, 2001)
• 2000 WL 34504357 (Trial Motion, Memorandum and Affidavit) Plaintiffs Cross - Motion for Summary Judgment of Patent Invalidity of the 5,879,693 Patent (Nov. 17, 2000)
• 2000 WL 34504354 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendant'SMotion to Dismiss for an Asserted Lack of Personal Jurisdiction (Aug. 04, 2000)
• 2000 WL 34443545 (Trial Pleading) Complaint (May 19, 2000) Original Image of this Document with Appendix (PDF)
• 1:00CV03084 (Docket) (May. 19, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Briefs and Other Related Documents
Blizzard v. FCI ElktonE.D.Pa.,2006.Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Donald Furman BLIZZARD
v.
FCI ELKTON, et al.
**Civil Action No. 05-CV-5761.**

Oct. 12, 2006.

Frank J. Marcone, Law Offices of Frank J. Marcone, Media, PA, for Donald Furman Blizzard.
Daniel J. McCarthy, Mintzer Sarowitz Zeris Ledva & Meyers, Philadelphia, PA, William Scott Fowler, Comstock, Springer & Wilson Co., LPA, Youngstown, OH, for FCI Elkton, et al.

***MEMORANDUM AND ORDER***
KAUFFMAN, J.
*1 Plaintiff Donald Furman Blizzard ("Plaintiff") brings this action against Dr. Bruce Ziran ("Ziran"), St. Elizabeth Health Center ("St.Elizabeth"), and the United States of America [FN1] (collectively, "Defendants") for medical malpractice, and for violations of the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* Now before the Court are: (1) Ziran's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) (lack of personal jurisdiction) and (b)(3) (improper venue) and Pennsylvania Rule of Civil Procedure 1042.3 (certificate of merit), and (2) St. Elizabeth's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (b)(3) and Pennsylvania Rule of Civil Procedure 1042.3. For the reasons that follow, both motions will be granted in part, and the case will be transferred to the United States District Court for the Northern District of Ohio.[FN2]

FN1. Pursuant to a Stipulation and Order dated February 28, 2006 (docket no. 16), the United States was substituted for defendants FCI Elkton, FCI Fort Devens, 4 unknown guards at FCI Elkton and FCI Fort Devens, medical personnel at FCI Elkton, medical personnel at FCI Fort Devons, and Dr. Sandra Howard.

FN2. Also before the Court are "United States' Motion to Dismiss" (docket no. 15) and "Plaintiff's Motion to Waive Necessity to Comply with Pennsylvania Rule of Civil Procedure 1042.3 or in the Alternative to Grant an Extension of Time in Which to File a Certificate of Merit" (docket no. 17). As discussed below, the Court finds that transfer of the entire case to the Northern District of Ohio pursuant to 28 U.S.C. § § 1404 and 1631 is in the interest of justice. Accordingly, the Court will not consider these motions.

**I. BACKGROUND**

Accepting the allegations in the Complaint as true and construing all factual disputes in Plaintiffs' favor, the facts pertinent to these motions are as follows. On January 1, 2004, Plaintiff, at the time an inmate at FCI Elkton in Elkton, Ohio, slipped and fell on the prison grounds. Compl. ¶ ¶ 3, 7. Plaintiff subsequently was taken by ambulance to St. Elizabeth in Youngstown, Ohio, where he was x-rayed and then examined by Ziran. *Id.* at ¶ ¶ 14, 15. Ziran diagnosed Plaintiff as suffering from a broken right leg and ankle, and on January 2, 2004, performed surgery to repair his injuries. *Id.* at ¶ ¶ 15, 16. Plaintiff alleges that when he awoke from surgery, he was told that another surgery would be required and was operated on again that same day. *Id.* at ¶ ¶ 17, 18. Plaintiff was reexamined on January 5, 2004 by Ziran and discharged after being told that he must return every week to have the "adjusters" which had been implanted in his leg set. *Id.* at ¶ 20.

After his discharge, Plaintiff was transported back to FCI Elkton during a snow and ice storm in a non-ambulatory van. *Id.* at ¶ 21. Plaintiff alleges that he was dropped by two guards with no medical training, and that as a result, he suffered additional injuries to his leg. *Id.* at ¶ 27. He was taken to the prison's hospital, but there were no medical personnel present at the time. *Id.* at ¶ 28. The following morning, Plaintiff was x-rayed at the prison hospital; he claims to have been kicked and further injured by the x-ray technician. *Id.* at ¶ ¶ 30-32. Plaintiff was ordered by prison personnel to engage in physical therapy despite his complaints that his leg had been reinjured when he was dropped. *Id.* at ¶ 35-36. Plaintiff's leg subsequently became infected. *Id.* at ¶ 34.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff again was transported to St. Elizabeth in a non-ambulatory van on February 12, 2004 during a snow and ice storm. *Id.* at ¶ 37. On the way, the van went off the road twice, and Plaintiff, who was in an unsecured wheelchair, again suffered injuries to his leg. *Id.* at ¶ ¶ 39-41, 43.

***2** Upon Plaintiff's arrival at St. Elizabeth, Ziran ordered x-rays and determined that Plaintiff's leg had been rebroken when he was dropped on January 5. *Id.* at ¶ ¶ 44, 45. Ziran informed Plaintiff that he would not reset his leg due to the displacement and the positioning of his "halo" cast. *Id.* at ¶ 47. Plaintiff was sent back to the prison with instructions that the cast be readjusted at the prison. *Id.* at ¶ 48.

After returning to the prison, Plaintiff was confined in a segregation cell and subsequently developed another infection in his leg. *Id.* at ¶ 49. The infection was so severe that Plaintiff was transported by aircraft to FCI Devens, a federal medical facility located in Ayers, Massachusetts. *Id.* at ¶ ¶ 4, 50. He was examined by Dr. Sandra Howard who recommended that he be taken to the University of Massachusetts Hospital. *Id.* at ¶ 52. Plaintiff remained at FCI Devens despite repeated requests that he be taken to the hospital. *Id.* at ¶ 53.

In his complaint, filed on November 1, 2005, Plaintiff alleges that he had to have his leg re-broken because it was deformed from the second break, that he suffered a heart defibrilation based on his shock immediately after he broke his leg and ankle, and that he broke his foot in a fall at the Antioch Transitional House due to his weakened condition from his prior injuries. *Id.* at ¶ ¶ 55-57.

## II. LEGAL STANDARD

When, as in this case, a defendant brings a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff "bears the burden of establishing the court's jurisdiction[.]" *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir.2004). To meet that burden, the plaintiff "need only establish a prima facie case of personal jurisdiction and ... is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id.*

A federal district court sitting in diversity may exercise jurisdiction over a foreign defendant's person to the extent allowed by the law of the state in which the district court is located. *See* Fed.R.Civ.P. 4(e). Under state law, consideration of personal jurisdiction involves two steps: (1) the court must determine that exercising jurisdiction over the defendant is consistent with the relevant state long-arm statute; and (2) the court must then consider whether exercising jurisdiction would be consistent with the requirements of due process. *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir.1998). The Pennsylvania long-arm statute allows courts to exercise personal jurisdiction to the fullest extent allowed by the Constitution. *See* 42 Pa.C.S.A. § 5322(b). Accordingly, the Court's analysis focuses solely on federal due process requirements. *Applied Tech. Int'l, Ltd. v. Goldstein,* 2004 WL 2360388, at * 2 (E.D.Pa. October 20, 2004).

The Due Process Clause requires "(1) that the 'defendant have constitutionally sufficient minimum contacts with the forum ... and (2) that subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice.' " *Toys "R" Us, Inc. v. Step Two,* 318 F.3d 446, 451 (3d Cir.2003) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)). Minimum contacts exist when there is " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws [.]' " *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 109 (1987)).

***3** A defendant's contacts with the forum state reach the minimum level in one of two ways. When the contacts are "continuous and systematic," the court may exercise "general jurisdiction" over the defendant even if the contacts are unrelated to the plaintiff's cause of action. *See Verotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.,* 75 F.3d 147, 151 n. 3 (3d Cir.1996). In contrast, specific jurisdiction exists "only if the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum," *Pinker v. Roche Holdings, Ltd.,* 292 F .3d 361, 368 (3d Cir.2002), such that the defendant "should reasonably anticipate being haled into court" in that forum. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

## III. ANALYSIS

In their motions to dismiss, both Ziran and St. Elizabeth argue that this Court lacks personal jurisdiction over them because they do not have sufficient contacts with Pennsylvania to subject them either to the general or specific jurisdiction of this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Court. *See* Ziran Mot. at 3; St. Elizabeth Mot. at 4. Next, both defendants assert that even if this Court did have personal jurisdiction, the case should be dismissed because the Eastern District of Pennsylvania is an improper venue. *See* Ziran Mot. at 3; St. Elizabeth Mot. at 4-6. Both defendants further claim that even if venue were proper, the Eastern District of Pennsylvania would be sufficiently inconvenient that the case should be transferred to the Northern District of Ohio. *See* Ziran Mot. at 4-5; St. Elizabeth Mot. at 6-8. Finally, Ziran and St. Elizabeth argue that Plaintiff's complaint must be dismissed for failure to file a certificate of merit pursuant to Pa. R.C.P. 1042.3. *See* Ziran Mot. at 6-7; St. Elizabeth Mot. at 8-11.

"Generally, the question of personal jurisdiction should be decided before the court turns to the issue of venue, unless there is a sound reason for deciding venue first." *Gallant v. Trustees of Columbia University*, 111 F.Supp.2d 638, 640 (E.D.Pa.2000) (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)). Accordingly, the Court must first address the defendant's arguments regarding personal jurisdiction. Finding that the Court lacks personal jurisdiction over either of these defendants, the Court need not reach the other arguments presented by these motions.

**A. The Court Lacks Personal Jurisdiction Over Ziran and St. Elizabeth**

Plaintiff fails to assert that either Ziran or St. Elizabeth has "continuous and systematic" contacts sufficient to allow this Court to exercise general personal jurisdiction over them. In fact, Plaintiff makes no allegations regarding a possible connection between Ziran or St. Elizabeth and Pennsylvania other than that *his* permanent address is in Delaware County, Pennsylvania. *Id* . at ¶ 2. Ziran, on the other hand, asserts that at the time of the alleged incident, he was practicing medicine in Ohio and was not licensed to practice in Pennsylvania. *See* Ziran Mot. at 3. Moreover, he did not maintain an office in Pennsylvania and did not have any agents or employees conducting business in Pennsylvania on his behalf. *See id.* St. Elizabeth asserts that it is located in Youngstown, Ohio, and that Plaintiff was treated in its facilities in Youngstown. *See* St. Elizabeth Hospital at 4. Based on these assertions, neither Ziran nor St. Elizabeth has the "continuous and systematic" contacts with this state necessary to confer general personal jurisdiction. *See Kurtz v. Drauer*, 434 F.Supp. 958, 962 (E.D.Pa.1977) (finding that Plaintiff had not established general personal jurisdiction over a physician and his employer where the only contact with the forum state was the residual harm suffered by the decedent); *see also Walters v. St. Elizabeth Medical Center*, 543 F.Supp. 559, 560 (W.D.Pa.1982) (finding that plaintiffs' residence in Pennsylvania was insufficient to sustain jurisdictional power over dispute involving Ohio-based hospital with no contacts with Pennsylvania).

***4** The Complaint similarly fails to assert that Plaintiff's causes of action are "related to or arise[ ] out of" contacts that Ziran or St. Elizabeth has with the Commonwealth so as to confer this Court with specific personal jurisdiction. Plaintiff alleges that all of the medical care he received from Ziran occurred at the St. Elizabeth facilities in Youngstown, Ohio. *See* Compl. at ¶¶ 15-20, 44-47, 76-85. "The weight of authority holds that when treatment is rendered outside the forum state, a nonresident medical provider cannot be subject to specific jurisdiction" in the forum state. *Gallant*, 111 F.Supp.2d at 643; *see also Kurtz*, 434 F.Supp. at 962 (finding that the Court did not have specific jurisdiction where the alleged negligent acts of a physician and the alleged harm caused by those acts occurred in Nebraska). Accordingly, neither Ziran nor St. Elizabeth is subject to specific personal jurisdiction before this Court.

"When a defendant raises the defense of the court's lack of personal jurisdiction, the plaintiff has the burden of bringing forward sufficient jurisdictional facts to establish with reasonable particularity that there were sufficient contacts between the defendant and the forum to make jurisdiction proper." *Guardi v. Desai*, 151 F.Supp.2d 555, 558 (E.D.Pa.2001) (citing *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992)). Rather than alleging additional facts that would allow this Court to exercise personal jurisdiction over Ziran and St. Elizabeth, Plaintiff argues that 28 U.S.C. § 1391 provides the basis for personal jurisdiction. *See* Pl.'s Reply to Ziran Mot. at 9.[FN3] However, 28 U.S.C. § 1391, entitled "Venue Generally," is clearly a venue statute, and therefore provides no independent basis for the Court to exercise personal jurisdiction over Ziran or St. Elizabeth. Accordingly, since Plaintiff has failed to assert sufficient jurisdictional facts, this Court lacks personal jurisdiction over Ziran and St. Elizabeth.

FN3. Plaintiff also suggests that Ziran "may be considered [an] agent [ ] of the United

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

States Government." *See* Pl.'s Reply to Ziran's Mot. at 9. The Court need not consider this argument since pursuant to the parties' Stipulation (docket no. 16), which was submitted after Plaintiff's reply was filed, the United States Government was substituted as the sole defendant for all defendant federal employees and correctional institutions. Ziran was not one of those parties for whom the United States was substituted.

**B. Transfer to the Northern District of Ohio Is In The Interests of Justice**

Both Ziran and St. Elizabeth argue in their motions that, based on lack of personal jurisdiction, the claims against them should be dismissed. The Court, however, concludes that, in the interest of justice, the entire action should be transferred to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 1631.[FN4]

FN4. The Court may transfer the claims against Ziran and St. Elizabeth even though it lacks personal jurisdiction over them. *See* *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467 (1962).

28 U.S.C. § 1404(a) allows the Court to transfer an action to another district where it could have been brought originally "[f]or the convenience of parties and witnesses, in the interest of justice ." Section 1631 provides that:

Whenever a civil action is filed in a court ... and that court finds that there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

***5** 28 U.S.C. § 1631. Thus, the Court has the authority to transfer the claims against Ziran and St. Elizabeth to another venue where the action originally could have been brought if such a transfer would be in the interest of justice. *See* *Island Steel Sys., Inc. v. Waters,* 296 F.3d 200, 218 n. 9 (3d Cir.2002); *see also* *Gallant,* 111 F.Supp.2d at 644-45; *Kishi Int'l, Inc. v. Allstates Textile Mach., Inc.,* 1997 WL 186324, at *5 (E.D. Pa. April 11, 1997); *Chicosky v. Presbyterian Med. Center,* 979 F.Supp. 316, 320. Moreover, the Court has the authority to transfer the claims against the United States at the same time if it would be in the interest of justice to do so. *See* *Chicosky,* 979 F.Supp. at 319-20.

In his Complaint, Plaintiff acknowledges that the alleged causes of action against Ziran and St. Elizabeth occurred in Ohio and that he is no longer a resident of Ohio. Therefore, this action properly could have been brought in a venue in Ohio. In addition, most of the witnesses, including Ziran, the relevant personnel from St. Elizabeth, and the relevant personnel from FCI Elkton, and likely most of the documentary evidence are located in Ohio. Moreover, both Ziran and St. Elizabeth suggest that the Northern District of Ohio would have been the more appropriate forum. *See* Ziran Mot. at 5; St. Elizabeth Mot. at 6. Given the alternative of dismissing the claims against Ziran and St. Elizabeth, the Court finds that it would be in the interest of justice to transfer the entire action to the Northern District of Ohio. Accordingly, the Court will not reach the other issues raised in Defendants' motions to dismiss.

**IV. CONCLUSION**

For the above reasons, Ziran's and St. Elizabeth's motions will be granted in part, and this action will be transferred in its entirety to the Northern District of Ohio. An appropriate Order follows.

***ORDER***

**AND NOW,** this 12th day of October, 2006, upon consideration of Defendant Bruce Ziran's Motion to Dismiss (docket no. 2), Plaintiff Donald Blizzard's Response thereto (docket no. 7), Defendant Ziran's Surreply (docket no. 9), and Defendant St. Elizabeth Hospital's Motion to Dismiss (docket no. 11), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that:

(1) Defendant Ziran's Motion is **GRANTED IN PART;**

(2) Defendant St. Elizabeth Hospital's Motion is **GRANTED IN PART;** and

(3) The entire action is **TRANSFERRED** to the United States District Court for the Northern District of Ohio.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

E.D.Pa.,2006.
Blizzard v. FCI Elkton
Slip Copy, 2006 WL 2934826 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1784508 (Trial Motion, Memorandum and Affidavit) United States of America's Reply Brief to Plaintiff's Response to Defendant United States' Motion to Dismiss (May 17, 2006) Original Image of this Document (PDF)
• 2006 WL 1358087 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to the Defendant United States Motion to Dismiss (Apr. 27, 2006) Original Image of this Document (PDF)
• 2006 WL 1382046 (Trial Motion, Memorandum and Affidavit) United States's Motion to Dismiss Complaint (Mar. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 431451 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss of Defendant St. Elizabeth Hospital (Properly Known as St. Elizabeth Health Center) Pursuant to F.R.C.P. 12(B)(2) and (3) and Motion to Dismiss Pursuant to PA. R.C.P. 1042.3 (Jan. 26, 2006) Original Image of this Document (PDF)
• 2006 WL 431452 (Trial Motion, Memorandum and Affidavit) Defendant St. Elizabeth Health Center's Memorandum of Law in Support of Motion to Dismiss Pursuant to F.R.C.P. 12(B)(2) and (3) and Motion to Dismiss Pursuant to Pa. R.C.P. 1042.3 (Jan. 26, 2006) Original Image of this Document (PDF)
• 2006 WL 431450 (Trial Motion, Memorandum and Affidavit) Motion (Jan. 20, 2006) Original Image of this Document (PDF)
• 2:05cv05761 (Docket) (Nov. 1, 2005)
• 2005 WL 3797110 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss of Defendant, Bruce Ziran, M.D. (Incorrectly Identified by Plaintiff as Bruce Zinar, M.D.) Pursuant to F.R.C.P. 12(b)(2) and (3) and motion to Dismiss for non Pros Pursuant to PA. R.C.P. 1042.3 (2005) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 374406 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 1

C
Briefs and Other Related Documents
Gummow v. Superior Ratchet and Tool Co., Inc.N.D.Ill.,1997.Only the Westlaw citation is currently available.

United States District Court,N.D. Illinois.
Stephen A. GUMMOW and Cygnet Enterprises, Inc., Plaintiffs,
v.
SUPERIOR RATCHET AND TOOL COMPANY, INC., f/k/a Superior Tool Company, Splined Tool Corporation, James E. Cole, and A & I Supply, Defendants.FN1

FN1. Although the caption of the amended complaint does not reflect the present name of Superior Tool Company, the body of the amended complaint names as defendant "Superior Ratchet and Tool Company, Inc., f/k/a Superior Tool Company." Likewise, although this defendant has mirrored the caption of the amended complaint in its responsive pleadings, it has used its present corporate name in the body of those pleadings. Accordingly, the caption in this case has been corrected by the court to reflect the proper name of this defendant. All further filings by the parties in this case should reflect this correction.

**No. 96 C 50213.**

June 20, 1997.

Peter Alexander, Alexander & Cicero, P.C., Rockford, IL, Keith E. Frantz, Rockford, IL, for plaintiffs.
Robert A. Vitale, Jr., Niro, Scavone, Haller & Niro, Ltd., Chicago, IL, John J. Little, Fred C. Pedersen, Little, Pedersen, Frankhauser & Cox, Dallas, TX, for defendants.

*MEMORANDUM OPINION AND ORDER*
REINHARD, District Judge.

INTRODUCTION

*1 Plaintiffs, Stephen A. Gummow and Cygnet Enterprises Inc. ("Cygnet"), filed an amended two-count complaint against defendants, Superior Ratchet and Tool Company, Inc., f/k/a Superior Tool Company ("Superior"), Splined Tool Corporation ("Splined"), James E. Cole and A & I Supply, alleging patent infringement by defendants in violation of 35 U.S.C. § 271.FN2 Pending before the court is a motion to dismiss or, in the alternative, to transfer venue to the Northern District of Texas, Dallas Division, by Superior, Splined and Cole.FN3

FN2. The original complaint, filed on July 2, 1996, named Superior Tool Company, Matco Tools and A & I Supply as defendants. Shortly after the complaint was filed, plaintiffs settled their claims against Matco Tools. Superior moved to dismiss or, in the alternative, to transfer venue to the Northern District of Texas, Dallas Division. Midstream in the briefing of that motion, plaintiffs moved to file their amended complaint. The filing of their amended complaint mooted Superior's motion to dismiss or transfer venue.

FN3. A & I Supply has not entered an appearance in the case. Plaintiffs report to the court that by agreement, A & I Supply is not required to appear or answer pending the outcome of this court's decision on the pending motion.

BACKGROUND

The facts are taken from the amended complaint and the various affidavits and answers to interrogatories submitted by the parties in connection with the pending motion. Cygnet is an Illinois corporation based in Rockford, Illinois. Gummow is a resident of Rockton, Illinois, and is the president of Cygnet. Gummow is also the owner and inventor of United States Patent No. 4,406,186 ("186 patent") entitled "Dual Action Ratchet Wrench," which was issued to Gummow on September 27, 1983. Since 1983, Gummow has manufactured and sold wrenches in accordance with his patent. Under a license from Gummow, Cygnet has manufactured and sold wrenches in accordance with the 186 patent since 1994.

Cole is a resident of Dallas County, Texas, and is the inventor and original owner of United States Patent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 374406 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 2

No. 5,419,221 ("221 patent") entitled "Indexable Head Ratchet Wrench," which was issued on May 30, 1995. Cole manufactured and sold wrenches in accordance with his patent during 1994 and 1995. In November 1995, Cole assigned his patent to Splined, a Texas corporation based in Dallas County, Texas. Splined is owned by various members of Cole's family. Cole then formed Superior, a Texas corporation based in Dallas County, Texas, to manufacture and market his ratchet wrench. Cole is the president and sole shareholder of Superior. Superior currently manufactures and sells wrenches in accordance with the 221 patent under a license from Splined.

A & I Supply is, according to the allegations of the complaint, an Illinois company based in North Pekin, Illinois, (a city located in the Central District of Illinois). A & I Supply has been selling Superior's wrenches in this district and elsewhere in the United States through trade shows and mail order catalogs.

The amended complaint alleges that Superior, in connection with making and selling wrenches pursuant to the 221 patent, has been making, using and selling wrenches which infringe the 186 patent. The amended complaint also alleges that Superior has been selling and/or offering for sale these infringing wrenches in this district and elsewhere in the United States and has been actively inducing infringement of the 186 patent by selling the infringing wrenches through intermediaries (e.g., Matco Tools, A & I Supply and Snap-On Incorporated), having established distribution channels terminating in this district and elsewhere.

Similarly, the amended complaint alleges that Splined, in connection with its ownership of the 221 patent, has been doing the following: (1) using and selling the infringing wrenches to customers (directly and through intermediaries) in this district and elsewhere and (2) actively inducing infringement of the 186 patent by encouraging Superior to make wrenches which infringe the 186 patent and by encouraging Superior to induce others to infringe the 186 patent.

***2** The amended complaint alleges that Cole was and is the "active and driving force in full charge of Superior and at least one of the active and driving forces in charge of Splined" and has been personally directing the design, manufacture and sale of the infringing wrenches. It is further alleged that Cole was and is actively involved in promoting the sale of the infringing wrenches to customers in this district and elsewhere.

Count I alleges infringement of plaintiffs' patent and seeks compensatory damages, injunctive relief and attorney fees. Count II is a declaratory judgment action which seeks a judgment declaring that the 221 patent held by Splined is invalid and a judgment declaring that plaintiffs do not infringe upon the 221 patent by making and selling wrenches manufactured in accordance with the 186 patent.

Superior, Splined and Cole move to dismiss the amended complaint on the grounds that this court lacks personal jurisdiction over them. In the alternative, these defendants move to transfer venue to the Northern District of Texas, Dallas Division. The parties have engaged in limited discovery for purposes of this motion, and this discovery has disclosed the following with respect to these defendants' contacts with this forum.

Cole, operating as a sole proprietorship and doing business as Superior Tool Company, made and sold wrenches pursuant to his patent between October 1994 and April 1995. In 1994, Cole met with Kishwaukee Forge in Cortland, Illinois, and with Illinois Broach in Chicago, Illinois, both in this district. As a result of those meetings, Cole began to purchase forged wrench bodies from Kishwauke Forge and splined pins and wrench heads from Illinois Broach for use in the manufacture of wrenches.

In April 1995, Superior was incorporated to make and sell wrenches pursuant to the 221 patent. Superior has continued the business relationships with Kishwaukee Forge and Illinois Broach, purchasing forged wrench bodies, splined pins and machined wrench heads for use in the manufacture of the alleged infringing wrenches. In addition, Superior also purchases internal drive anvils from S-K Tools in Chicago, Illinois for use in the wrenches.

Although Superior denies that it has any "distributors" in Illinois, it admits that it has sold a "limited number" of wrenches to A & I Supply for resale to its customers. In its answers to written interrogatories, Superior also admits that it has sold approximately 800 wrenches to Central Tool & Equipment Corp. located in North Pekin, Illinois.[FN4] In addition, Gummow states in his affidavit that he is personally aware of sales of Superior's wrenches by Snap-On in this district.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 374406 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 3

FN4. A close examination of James E. Cole's affidavit warrants a word of caution to Cole and his counsel. Various declarations made by Cole in his affidavit are arguably inconsistent with the answers to interrogatories relating to sales of wrenches. In particular, Cole's affidavit purports to set forth all sales made to Illinois customers but fails to mention the sales made to Central Tool & Equipment Corp.

As to Splined, there is no evidence of it having any contacts with Illinois. Splined does not do business anywhere outside the State of Texas, nor has it engaged in any transactions in Illinois. From the date of its incorporation to the present, the principal business of Splined has been limited to the ownership of the 221 patent. Although there is some evidence that Splined was involved in soliciting sales of wrenches through the distribution of a promotional flier, none of those activities occurred in Illinois.

DISCUSSION

I. Motion to dismiss

***3** Plaintiffs bear the burden of demonstrating that personal jurisdiction exists. *McIlwee v. ADM Indus., Inc.,* 17 F.3d 222, 223 (7th Cir.1994). When deciding a motion to dismiss for lack of personal jurisdiction before trial, the court has a number of options. *See, e.g., Serras v. First Tennessee Bank Nat'l Assoc.,* 875 F.2d 1212, 1214 (6th Cir.1989). One option is to decide the motion on the basis of written submissions. *MdIlwee,* 17 F.3d at 223; Nelson *v. Park Indus., Inc.,* 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied,* 465 U.S. 1024 (1984). In considering the written submissions, the court views the pleadings and affidavits in a light most favorable to plaintiffs and resolves all factual disputes in plaintiffs' favor. *Logan Prod., Inc. v. Optibase, Inc.,* 103 F.3d 49, 52 (7th Cir.1996). Plaintiffs' burden is merely that of making a prima facie showing that personal jurisdiction exists, and if plaintiffs meet that burden, the motion to dismiss should be denied notwithstanding any controverting presentation by the moving party. *Serras,* 875 F.2d at 1214.

In determining the extent of the court's personal jurisdiction in a patent case, the court must examine the forum state's personal jurisdiction law as well as the law governing a defendant's right to due process under the Fifth Amendment. *Viam Corp. v. Iowa Export-Import Trading Co.,* 84 F.3d 424, 427 n. 2 (Fed.Cir.1996). This ordinarily involves a two-part inquiry: (1) whether the state law allows jurisdiction, and (2) whether the assertion of jurisdiction complies with federal constitutional due process standards. *Wilson v. Humphreys (Cayman) Ltd.,* 916 F.2d 1239, 1243 (7th Cir.1990), *cert. denied,* 499 U.S. 947, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991). Because Illinois' long-arm statute provides for the exercise of jurisdiction to the fullest extent permitted by the Illinois and United States Constitutions, *see* 735 ILCS 5/2-209(c), the two-part inquiry collapses into one in this case-whether each defendant has minimum contacts with Illinois such that the maintenance of this suit does not offend "traditional notions of fair play and substantial justice." *Id.* (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).[FN5]

FN5. The court is mindful that the Illinois Constitution's guarantee of due process stands separate and independent from the federal guarantee of due process. *See Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1316 (Ill.1990). Under the Illinois Constitution, jurisdiction may be asserted if it is "fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Id.* In construing Illinois' guarantee of due process, the court may look to federal due process law for guidance. *Id.; see also Michael J. Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.,* 15 F.3d 721, 725 (7th Cir.1994). Because defendants have not presented this court with any reason to construe Illinois' guarantee of due process to be anything but coextensive with the federal requirements, the court confines its substantive discussion to federal due process standards.

Of the two types of jurisdiction, general and specific, the court only concerns itself with specific, as plaintiffs' arguments, in substance, fall under this category. Specific jurisdiction lies when a defendant's activities in the state with respect to the transaction underlying the litigation serve as the basis for jurisdiction. *Wilson,* 916 F.2d at 1244. Jurisdiction based on such contacts comports with due process only if the defendant reasonably should

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.