Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 374406 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

have anticipated being haled into court in the forum state. *Id.* (citing *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).* The defendant must "purposefully have availed [himself] of the 'privilege of conducting activities' " in the form state. *Id.* (quoting *Burger King,* 471 U.S. at 475). This analysis turns on a particularized assessment of the relationship among the defendant, the forum, arid the litigation. *Id.* Once a defendant is found to have certain minimum contacts, the court must evaluate the fairness of a state's exercise of jurisdiction over the defendant. Factors the court considers are the burden on the defendant, the interests of the forum state and the plaintiff's interest in obtaining relief. *Dehmlow v. Austin Fireworks, 963 F.2d 941, 945 (7th Cir.1992)* (citing *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). In addition, the court must also weigh the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several States in furthering fundamental substantive social policies. *Id.*

**\*4** The court need not belabor whether it may exercise personal jurisdiction over Superior and Cole, as the facts before the court show that exercising jurisdiction over these parties would not run afoul of the requirements of both the Illinois and U.S. Constitutions.[FN6] Superior and Cole made, and Superior continues to make, regular purchases of parts used in the manufacture of the alleged infringing wrenches from companies in Illinois. Moreover, these defendants sold the alleged infringing wrenches to distributors and retailers who either are in Illinois (e.g., A & I Supply and Central Tool and Equipment Corp.) or have distribution points in Illinois (e.g., Snap-On), and sales of those wrenches have been made to consumers in this district. This litigation arises out of these Illinois-related activities. These activities and their relatedness to this litigation form the necessary minimum contacts such that Superior and Cole should have reasonably anticipated being haled into court in Illinois.[FN7] Moreover, Superior's and Cole's placement of the alleged infringing wrenches into the stream of commerce knowing that they were destined for Illinois, combined with Illinois' interest in prohibiting the importation of infringing articles and vindicating the rights of one of its domiciliaries, is such that the maintenance of this suit would not offend traditional notions of fair play and substantial justice. *North Am. Philips Corp. v. American Vending Sales, Inc., 35 F.3d 1576, 1580*

(Fed.Cir.1994). Accordingly, the motion to dismiss for lack of personal jurisdiction is denied as to Superior and Cole.[FN8]

FN6. The court notes that Superior and Cole all but expressly concede this, stating in their reply brief that the discovery disclosed thus far "demonstrates that this Court probably can exercise jurisdiction over [them]." Defendants still contend, however, that there is no basis for exercising jurisdiction over Splined.

FN7. Under an alternative analysis, Superior's and Cole's regular purchases in Illinois would constitute the "transaction of business" in Illinois under section 2-209(a)(1) of Illinois' long-arm statute. Similarly, because the sale of an infringing article to a buyer in Illinois is to commit a tort in Illinois, their sale of infringing wrenches to the various distributors and retailers in Illinois constitutes the "commission of a tort" in Illinois under section 2-209(a)(2) of Illinois' long-arm statute. *North Am. Philips Corp. v. American Vending Sales, Inc., 35 F.3d 1576, 1579 (Fed.Cir.1994).*

FN8. To the extent Superior and Cole seek a dismissal for improper venue, the motion is denied in that respect as well. Superior's and Cole's activities within this district establishing personal jurisdiction render them as "residing" in this district for purposes of 28 U.S.C. § 1400(b). *See VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1583 (Fed.Cir.1990) (holding that, for purposes of 28 U.S.C. § 1400(b), a corporate defendant "resides" in districts as provided for by 28 U.S.C. § 1391(c)), *cert. denied,* 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991); *Hoover Group, Inc. v. Custom Metalcraft, Inc.,* 84 F.3d 1408, 1410 (Fed.Cir.1996) (holding that venue for personal liability of a corporate officer/owner for acts of infringement by the corporation may be reasonably based on venue provisions governing the corporation).

Splined's contacts with Illinois are altogether different. Plaintiffs have not come forth with any evidence that Splined has transacted any business in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                        Page 5
Not Reported in F.Supp., 1997 WL 374406 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

Illinois or sold (or even promoted) any wrenches in Illinois. Plaintiffs contend Splined has sufficient contacts with Illinois because defendants have not rebutted the amended complaint's allegation that Cole, although not an employee, officer or shareholder of Splined, is "an active driving force in Splined." Based on Cole's alleged involvement with Splined, plaintiffs attempt to attribute Cole's activities in Illinois to Splined. Plaintiffs, however, have not pointed to any conduct by Cole occurring in or directed at Illinois which was performed on behalf of Splined.

Plaintiffs also contend that Splined has sufficient contacts with Illinois because the amended complaint alleges that Splined has actively induced infringement by licensing the 221 patent to Superior, which in turn has infringed the 186 patent by manufacturing wrenches in Texas and selling them in Illinois. Apart from the mere fact of Splined granting a license under the 221 patent, however, there are no facts alleged in the amended complaint (or offered by affidavit) showing how Splined has been actively inducing Superior to infringe. Moreover, even if the court accepts the generalized allegations of active inducement, there are no facts which link Splined to any activities in Illinois. Absent some evidence of "purposeful" activity by Splined directed at Illinois residents, it would not be proper to exercise personal jurisdiction over Splined. *See Akro Corp. v. Luker,* 45 F.3d 1541, 1545 (Fed.Cir.), *cert. denied,* 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995). Accordingly, the court grants the motion to dismiss as to Splined.

## II. Motion to Transfer Venue

**\*5** Superior, Cole and Splined move in the alternative to transfer venue to the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1404(a). Underlying their desire to have this case transferred is the fact that Superior, Cole and Splined filed a similar action against plaintiffs in the Northern District of Texas, Dallas Division.[FN9] Superior, Cole and Splined contend that upon a transfer, this case would most likely be consolidated with the Texas action, thereby conserving judicial resources.

> FN9. The case, filed subsequent to plaintiffs' filing of this case, is *Cole, et al. v. Gummow, et al.,* No. 3-96CV2501-5 (N.D. Tex., Dallas Div.). Presently pending before the district court in Texas is a motion to dismiss or

transfer venue by Gummow and Cygnet.

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts have broad discretion to grant or deny a motion to transfer under section 1404(a). *Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989). In addition, the moving party bears the burden of establishing that the transfer to the new forum is clearly more convenient. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir.1986).

Before balancing the three factors, the court must first determine whether venue is proper in both the current and proposed district. In patent infringement actions, venue lies in the district where the "defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Although the court has already found venue to be proper in this district, *see supra* note 8, it has not yet determined whether venue would be proper in the Northern District of Texas. Where there are multiple defendants, the moving party must demonstrate that personal jurisdiction and venue in the transferee district would have been proper for all defendants. *American Home Assurance Co. v. Glovegold, Ltd.,* 153 F.R.D. 695, 698 (M.D.Fla.1994); *Tomar Elec., Inc. v. Whelen Tech., Inc.,* 819 F.Supp. 871, 877 (D.Ariz.1992).

Superior, Cole and Splined contend that plaintiffs have "admitted that they could have filed this action in the Northern District of Texas," citing to a portion of plaintiffs' response to the first motion to dismiss or transfer venue. Superior, Cole and Splined contend that this admission, standing alone, is sufficient to support transfer under section 1404(a). On the other hand, Superior, Cole and Splined also point out in a footnote that plaintiffs "may have been unable to join A & I in this action if it were filed in the Northern District of Texas," that "Superior cannot determine at this time whether venue is proper as to A & I in this Court" and that plaintiffs' "inability, if any, to join A & I and/or Matco in the Northern District of Texas does not defeat the propriety of a transfer of this action as to Superior," citing to *Siemens Aktiengesellschaft v. Sonotone Corp.,* 370 F.Supp. 970, 972 (N.D.Ill.1973). In their response to the present motion, plaintiffs do not squarely address whether venue would be proper in the Northern

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 6
Not Reported in F.Supp., 1997 WL 374406 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

District of Texas.

*6 The court first rejects the contention that plaintiffs have conceded that they could have filed this action in the Northern District of Texas. The portion of plaintiffs' brief defendants cite merely states that plaintiffs "could have chosen to file this infringement action against *Superior* in Texas." [emphasis added] Plaintiffs did not state that this action could have been filed against any of the non-Texas defendants. Moreover, this court would be bound to independently determine the propriety of venue regardless of any concession by plaintiffs. Thus, the court attaches no significance to the passing remark in plaintiffs' brief filed in response to the previous motion to dismiss or transfer venue.

The court finds that Superior, Cole and Splined have not demonstrated that this action could have been brought in the Northern District of Texas. They have made no effort to show whether A & I Supply is deemed to "reside" in that district, *see* 28 U.S.C. § § 1391(c) and 1400(b), or whether it committed an infringing act and has an established and regular place of business in that district. As an aside, the court must note that it is a bit troubled by the fact that A & I Supply has not entered an appearance in this case and that plaintiffs have given this party some sort of "pass" in responding to the action pending an outcome of this decision. One could arguably infer from this that plaintiffs have no intention of proceeding against A & I Supply, and it would be unseemly, to say the least, to deny a transfer of venue due to the presence of this party only to have plaintiffs voluntary dismiss it at a later date. Nonetheless, the court cannot conclude, on the record before it, that this action could have been filed in the Northern District of Texas. The court further rejects Superior, Cole and Splined's contention that venue as to A & I Supply is of no hindrance to transferring the case as to the rest of the parties. Not only is this contention undeveloped and fleetingly raised in a footnote, but a court acting under 28 U.S.C. § 1404(a) may not transfer part of a case. *Chrysler Credit Corp. v. Country Chrysler*, 928 F.2d 1509, 1519 (10th Cir.1991). The claims must first be severed under Rule 21 of the Federal Rules of Civil Procedure to create two separate actions, *see id.* at 1519-20, and no such motion has been made. Because it has not been shown that venue would be proper in the Northern District of Texas as to all defendants, the court denies the motion to transfer venue.

The court further finds that even if venue would be

proper in the Northern District of Texas, the court nonetheless agrees with plaintiffs that transferring the case to that district would merely shift the burden of litigating this case on the shoulders of plaintiffs and would not create a "clearly more convenient" forum. The bulk of Superior, Cole and Splined's argument consists of claiming that it would be more convenient for unspecified witnesses located in Texas and that it would be a better use of judicial resources to have both patent cases consolidated in Texas. The court is not persuaded by either claim. A party seeking a transfer of venue on the basis of convenience for witnesses must, at a minimum, identify who those witnesses are and the nature of what their testimony would be. Similarly, although there is a pending action in the Northern District of Texas related to this action, it is not clear whether that court can exercise personal jurisdiction over Gummow and Cygnet, and they have moved to dismiss the Texas action on that basis. Thus, the court is hesitant to give any weight at all to the fact that there is a related action pending in the Northern District of Texas.[FN10] The court also points out that if Superior, Cole and Splined were truly concerned about conserving judicial resources, they could have filed their action in this district rather than filing what is arguably a duplicative action in the opposite reaches of the United States. Accordingly, for all of the foregoing reasons, the court denies the motion to transfer venue.

> FN10. Whether or not plaintiffs are subject to personal jurisdiction in the Northern District of Texas, an issue plaintiffs argue at length in their response brief, is not a factor the court considers in deciding whether a transfer is warranted under section 1404(a).

CONCLUSION

*7 For the foregoing reasons, Superior, Cole and Splined's motion to dismiss, or in the alternative, to transfer venue is granted in part and denied in part. Splined is dismissed as a defendant in this case. The motion is denied in all other respects.

N.D.Ill.,1997.
Gummow v. Superior Ratchet and Tool Co., Inc.
Not Reported in F.Supp., 1997 WL 374406 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 3:96cv50213 (Docket) (Jul. 02, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 374406 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
Slip Copy, 2006 WL 997248 (N.D.Cal.)
(Cite as: Slip Copy)

Briefs and Other Related Documents
Mateer v. Interocean American Shipping Corp.N.D.Cal.,2006.Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Christina MATEER, Plaintiff,
v.
INTEROCEAN AMERICAN SHIPPING CORP. and Does 1-25, Defendants.
No. C 06-01642 WHA.

April 17, 2006.

Deborah Kochan, Mathew Stephenson, Kochan & Stephenson, San Francisco, CA, for Plaintiff.
James Joseph Tamulski, Katharine Essick, Emard Danoff Port Tamulski & Paetzold LLP, San Francisco, CA, for Defendants.

**ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**
WILLIAM ALSUP, District Judge.

**INTRODUCTION**

*1 Defendant Interocean American Shipping Corp. moves to dismiss this action for lack of personal jurisdiction over Interocean. Immediately prior to the instant litigation, defendant operated three oceangoing ships based in the San Francisco Bay, employed two dozen people here, leased real estate in Alameda and was registered to do business in California for more than sixteen years. The assertion of general jurisdiction over defendant is therefore justified. The motion is **Denied.**

**STATEMENT**

Defendant concedes that this order must take as true all undisputed allegations in the complaint and resolve all conflicts between the parties' declarations in plaintiff Christina Mateer's favor (Br. 4, citing *Amer. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir.1996)).

This action arose out of alleged sexual harassment, retaliation and Jones Act negligence during plaintiff's employment as a steward aboard the M/V Patriot

Pacific Gulf Marine, a ship that was operated by IUM, a name under which defendant did business (Compl.1, ¶ 7). A ship's steward is in charge of provisions and dining arrangements. All of the acts that gave rise to the complaint occurred outside California, during a voyage from Europe to Brunswick, Georgia, from November or late October 2004 to November 26, 2004 (Rogers Decl. ¶ ¶ 9-11 (Mar. 6, 2006) ("Rogers Decl. I")).

Defendant is incorporated in Delaware and headquartered in New Jersey. It operates ships under contract with the United States government and shipowners (Rogers Decl. I ¶ ¶ 2, 5-6). On March 9, 1989, defendant registered to conduct business in California as an out-of-state corporation. As of September 3, 2004, January 6, 2006, and March 10, 2006, defendant's registration status was "active" and it had an agent for service of process in Alameda (Stephenson Decl. ¶ 5, Exh. D).

On April 28, 2000, defendant began performance of a contract with the U.S. Maritime Administration to operate three ships, the Mt. Washington, Cape Mohican and Cape Fear. The ships were part of the Ready Reserve Fleet, which stood on alert to support any rapid deployment of U.S. military force (Rogers Decl. I ¶ 14). Defendant thus became the employer of the ships' crews, although the location of the ships was controlled by the Maritime Administration (*id.* ¶ 15; Stephenson Decl., Exh. B (Jt. Statement of Stipulated Facts re Def.'s Mot. for Summ. J. ¶ 1, *Dixon v. Interocean Ugland Management Corp.,* No. CGC 04 432882 (Cal.Super.Ct. Mar. 14, 2006).[FN1]

> FN1. Interocean Ugland Management Corp. was the same entity as Interocean American Shipping Corp. It used different names at different times (Rogers Decl. I ¶ ¶ 2-3).

Defendant operated the Cape Fear and Cape Mohican out of a home port in Alameda, California, for the entire period of the contract, April 28, 2000, to July 28, 2005. In January 2002, the Maritime Administration ordered the Mt. Washington from Texas to San Francisco. It was here until the end of the contract, except for about five to six weeks in Oregon in late 2002 and about two months off the coast of South America in the first half of 2004 (Rogers Decl. I ¶ 16; Rogers Decl. ¶ ¶ 14, 16 (Mar.

Slip Copy                                                                                                    Page 2
Slip Copy, 2006 WL 997248 (N.D.Cal.)
**(Cite as: Slip Copy)**

30, 2006) ("Rogers Decl. II"); Stephenson Decl. ¶ 3, Exh. B ¶ 3).[FN2]

> FN2. In an attempt to minimize its contacts with Northern California, defendant states that two of the three ships went to sea during the contract period (Br.10). There is only evidence that one ship went to sea during that period. Defendant offers no evidence to support the contention that a second ship also left port. For purposes of this motion, therefore, the Court bases its analysis on just one ship going to sea.

**\*2** While the ships were stationed in California, defendant employed their approximately 23 crewmembers, plus two to three port engineers (one per ship). One, and later two, of the engineers worked out of shoreside space in Alameda that was leased by defendant. The other engineer worked out of a shared trailer on Pier 50 in San Francisco. Defendant deducted California payroll taxes from the wages of the engineers and carried California workers compensation insurance for them. No taxes were deducted from the wages of the crewmembers, nor was workers compensation insurance carried for them. In 2004, defendant reported that it earned about six percent of its revenue in California (Rogers Decl. I ¶ ¶ 17, 19; Rogers Decl. II ¶ ¶ 7, 17; Stephenson Decl. ¶ 3, Exh. B, ¶ ¶ 1, 8).

Defendant had no connections to California other than those described above during the time period in which plaintiff's claims arose and in the decade immediately preceding it.

Plaintiff filed a complaint against defendant in Alameda County Superior Court on January 18, 2006. Although she did not cite to specific statutes, the complaint clearly states two claims for employment discrimination, one under 42 U.S.C.2000e-2(a) (sexual harassment) and another under 42 U.S.C.2000e-3(a) (retaliation). A third claim was for maritime negligence pursuant to 46 App. U.S.C. 688 (Compl.1, ¶ ¶ 11-22). A state-court summons and the complaint were served upon defendant January 31. On March 1, defendant removed the case to district court, asserting that the court had diversity and federal-question subject-matter jurisdiction (Notice of Removal of Action 1, ¶ ¶ 2-4; Summons).

**ANALYSIS**

A court may not adjudicate claims against a party unless it has personal jurisdiction over the party. A plaintiff typically consents to a court's jurisdiction by filing suit with it. A defendant, however, may contend that it is not subject to the plaintiff's chosen forum. A defendant may move pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss a complaint for lack of personal jurisdiction over it. Upon such motion, the plaintiff can only prevail by making out a prima facie showing of facts sufficient to establish jurisdiction. Even if the plaintiff prevails at this stage, however, she must prove the jurisdictional facts by a preponderance of the evidence at trial. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977).

The typical personal-jurisdiction analysis begins by asking whether there is a rule or statute that potentially confers jurisdiction over defendant. *Go-Video, Inc. v. Akai Elec. Co., Ltd.,* 885 F.2d 1406, 1413 (9th Cir.1989). If so, the inquiry moves to whether asserting jurisdiction will offend due process. In that regard, the court must decide whether to analyze the case under the Fifth Amendment or under the Fourteenth Amendment. In diversity-jurisdiction cases, the court applies the Due Process Clause of the Fourteenth Amendment, which constrains the exercise of power by the various states. *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 311. In a federal-question case in federal court, the Fourteenth Amendment is not implicated because the power of the states is not at issue. Instead, the court applies the Due Process Clause of the *Fifth* Amendment, which constrains *federal*-but not state-power. *Go-Video, Inc.,* 885 F.2d at 1413.[FN3]

> FN3. There is also a subcategory of federal-question cases, concerning foreign entities with such weak connections to each individual state that they would not be subject to jurisdiction in any one of them. Personal jurisdiction in such actions is analyzed under the Fifth Amendment, as in federal-question cases involving only U.S. defendants. The *statutory* analysis, however, is different in these foreign-entity cases. Normally, the summons and complaint are served on the authority of state statutes. *E.g.,* Cal.Civ.Proc.Code § 410.10. Such state statutes have no power over someone without sufficient connections to the individual states. *See, e.g., World-Wide*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 997248 (N.D.Cal.)
(Cite as: Slip Copy)

*Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295 (1980). Instead, service is accomplished through Federal Rule of Civil Procedure 4(k)(2), which allows service on anyone who is not subject to the jurisdiction of any state. Cases in which service is affected pursuant to this rule are thus analyzed under a different *statutory* framework than the instant motion. They share, however, a common *constitutional* rule: the Fifth Amendment.

**\*3** In most cases, a Fifth Amendment analysis of personal jurisdiction is almost identical to a Fourteenth Amendment inquiry. Both protect individual liberty against government overreaching. There is, however, one crucial difference. The Fourteenth Amendment analysis is designed to balance the interests of the states by ensuring that they "do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." Fourteenth Amendment inquiry therefore requires analysis of the "forum State's interest in adjudicating the dispute," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies [ ][,] and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92 (1980). The Fifth Amendment inquiry, by contrast, does not balance the states' interests because there are no comparable state interests implicated in federal-question cases in federal court. Analysis of the factors listed above is therefore inappropriate in a federal question cases heard in federal court.

Under the Fifth Amendment, jurisdiction is proper if it is reasonable and the defendant has sufficient contacts with the territory of the court. When the plaintiff's claim arose from the defendant's activities in or impacts upon the forum, the court must consider the connections between the defendant, the litigation and the forum. If the court finds that there are sufficient contacts and that assertion of jurisdiction is reasonable, then it has a type of personal jurisdiction called "specific jurisdiction."

But when the activities giving rise to the claim had no connection to the forum, the court must consider whether the defendant's contacts with the forum were pervasive enough, at the time the suit was commenced, for the court to have "general jurisdiction" over the defendant. *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 913 (9th Cir.1990) (only relevant contacts are those

before litigation started). General jurisdiction allows the court to assert jurisdiction over a defendant to adjudicate any and all claims against it-no matter where they arose. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-15 (1984). Because general jurisdiction is so broad, the defendant's contacts with the forum must be more extensive than would be required under a specific-jurisdiction test. The defendant must have "minimum contacts" with the geographical area over which the court has jurisdiction "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Milliken v. Meyer,* 311 U.S. 457, 463 (1940). The defendant's contacts with the area also must be "substantial, continuous, and systematic." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir.2002). In addition, defendant's contacts with the area cannot be based on the unilateral activity of another party or of a third person. *Helicopteros Nacionales,* 466 U.S. at 414-15. Random, fortuitous and attenuated contacts are not enough. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

**\*4** If the plaintiffs shows that there are sufficient minimum contacts, the defendant may nevertheless defeat the claim of personal jurisdiction by "presenting a compelling case that jurisdiction would be unreasonable." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir.1986).

For the instant motion, there is no need to inquire whether there is a rule or statute that potentially confers jurisdiction over defendant. Interocean did not claim in its motion that the court lacks a statutory basis for asserting jurisdiction. (Nor did it claim that service of process was deficient or improper.) It claimed only constitutional deficiencies. In its supplemental brief, however, it discusses statutory issues extensively. The brief arguably raises statutory objections to the assertion of jurisdiction over Interocean. Such objections may not be raised in supplemental briefing to which plaintiff has no opportunity to respond. The Court therefore treats all statutory arguments against the assertion of person jurisdiction as waived, at least for the purposes of this motion.[FN4]

> FN4. This waiver almost certainly does not affect the result. Service was affected pursuant to California Civil Procedure Code Section 410.10. That statute allows courts to exert power to the outer limits of that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

allowed by the federal and state constitutions. Interocean's extensive contacts with California, as discussed below in the main text, likely would make it subject to personal jurisdiction here under the state constitution. The federal constitutional limits incorporated within Section 410.10 are co-extensive with those imposed by the Constitution, which are discussed in the text below.

This order holds that the Fifth Amendment applies. Defendant removed the case based on both diversity of citizenship and federal-question subject-matter jurisdiction. Normally, when subject-matter jurisdiction is based on diversity of citizenship, the court can maintain personal jurisdiction over a defendant if it does not offend the Fourteenth Amendment Due Process Clause. *See, e.g., Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 440 (1952).* It is true that there is complete diversity in the instant case. That is irrelevant to this Court's subject-matter jurisdiction, however, because none of plaintiff's claims is founded on state law. They are all founded on federal statutes. State power therefore is not at issue and the Fifth, not the Fourteenth, Amendment controls. Defendant concedes in its supplemental brief that it was wrong to contend in its original motion and reply that the Fourteenth Amendment governed personal jurisdiction in this case. It agrees now that the Fifth Amendment governs.

Having determined that the Fifth Amendment applies, this order now considers the defendant's contacts with this area. Plaintiff concedes that her claims arose entirely outside of California and that therefore this Court has no specific jurisdiction over defendant in this action. She contends correctly, however, that defendant had contacts here of a degree and nature sufficient to give this Court general jurisdiction over Interocean.

The reasons are manifold. First, the contacts were substantial and continuous. For sixteen years immediately preceding this litigation, defendant was registered to conduct business in California and had an agent here for service of process. For five years immediately preceding this litigation, it operated two ships that-for all the evidence shows-never left San Francisco Bay. For three-and-a-half years immediately before the complaint was filed, defendant operated a third ship that was based in San Francisco and which left here for no more than about three-and-one-half months. These were major,

oceangoing vessels.

**\*5** In addition, defendant employed and paid the wages of the ships' approximately twenty-three crew members and the two to three engineers. It leased an office for engineers in Alameda. It made local payroll tax deductions for these three and carried workers compensation insurance for them. Defendant earned six percent of its 2004 revenue in California.[FN5] These contacts were part of a systematic effort of defendant to perform a revenue-generating contract at the heart of its core business of operating ships. None of these contacts was random, fortuitous or attenuated. They were certainly not "insubstantial and sporadic," as defendant claims (Br.9). After conducting such extensive business in the area, it is fair and just to hale defendant into court here.

> FN5. There is no evidence of any activity by defendant in California during 2004 outside of the San Francisco Bay area.

Defendant claims that it did not establish a regular place of business here. That is flatly contradicted by evidence that it kept three ships moored to the piers, without any evidence that the crews of two of them ever cast off during the five-year contract period. It is also torpedoed by the fact that the engineers maintained regular places of business on shore.

Defendant leans heavily on the argument that it did not establish sufficient contacts because it had no control over the location of the ships it operated (*see, e.g.,* Br. 10). The locations were decided by the Maritime Administration, which Interocean had a contractual obligation to obey. Defendant also claims that it was merely the agent of the Maritime Administration and, as such, did not purposefully direct its activities here. It argues that its presence here was the result of "unilateral activity" by the Maritime Administration. Defendant argues that, because it did not make local contact purposefully and because the contacts were due to the "unilateral" activity of the Maritime Administration, they were not jurisdictional contacts at all (Reply 4-5).

This is unconvincing. Defendant's long-term operation of its business here was not an accident. No one forced defendant to enter into a contract with the government. It did so voluntarily. It must be deemed to have yielded to any jurisdictions in which it has carried out those operations to any substantial degree. Moreover, the Court takes judicial notice of the facts that the ports of the San Francisco area collectively

Slip Copy                                                                                          Page 5
Slip Copy, 2006 WL 997248 (N.D.Cal.)
**(Cite as: Slip Copy)**

had the fifth-highest tonnage and number of vessel calls among U.S. ports in 2002. *See* Maritime Administration, *Vessel Calls at U.S. Ports 2003* (July 2004), *available at* http://www.marad.dot.gov/MARAD-statistics. It therefore was readily foreseeable at the time defendant executed its contract with the Maritime Administration that it might be required to operate ships here.

Defendant claims that this foreseeability was "insufficient under the Due Process Clause" to bring it under the Court's jurisdiction. It is true that "foreseeability *alone* has never been a sufficient benchmark for personal jurisdiction." *World-Wide Volkswagen,* 444 U.S. at 295 (emphasis added). This order does claim that the foreseeability that defendant would operate ships here is sufficient, by itself, to assert jurisdiction over defendant. But there was much more here. Defendant was registered to do business here, had two dozen employees here, maintained ships here, paid taxes here and leased real-estate here. That was a far cry from the situation held not to justify the exercise of personal jurisdiction in *World-Wide Volkswagen.* In that case, an Oklahoma state court claimed jurisdiction over a corporation merely because the company had sold cars with the foreseeable consequence that one of them would travel to Oklahoma. *Ibid.* As *World-Wide Volkswagen* itself noted, foreseeability, while not sufficient to create jurisdiction, *is relevant* to the inquiry: "This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297. In the instant case, defendant's conduct and connection with California were such that it can properly be held to account in this Court.

*6 Defendant claims that, even if its connections to this area count as jurisdictional contacts, they "were insubstantial given that it had no control" over where the vessels were stationed (Br.10). This argument proves too much. If true, it would mean that even a one-hundred-year presence of one-hundred ships in San Francisco would not make general jurisdiction here constitutionally permissible, so long as the vessels were here at the order of a contractual partner and not by sole decision of defendant. Such an outcome would be absurd and would allow a defendant like the one here to escape jurisdiction in every port regardless of voluminous business.

Furthermore, even if we decrease the significance of defendant's contacts with the Bay Area due to its contract with the Maritime Administration, they still are substantial enough to justify the exercise of personal jurisdiction over Interocean.

Defendant also argues that it is not amenable to suit here because it did not purposefully avail itself of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla,* 357 U .S. 235, 253 (1958).

It is questionable whether purposeful invocation of the "benefits and protections" of a state's laws is as significant in the context of a federal court's handling of federal claims as it was in *Hanson,* where a Florida state court was adjudicating state-law probate issues. *Id.* at 238. *Hanson* was thus adjudicated under the Fourteenth Amendment, whereas the instant case must be considered under the Fifth Amendment. In the Fourteenth Amendment context, the power of the state is at issue. *Hanson* therefore had to consider the demarcation between the jurisdictional spheres of sovereign states. It thus made sense to see jurisdiction as o ne half o f a q uid-pro-quo r elationship, whereby the a cceptance o f b enefits under t he l aws o f a st ate subjected a party to the power of that state's courts. In the Fifth Amendment context, interstate power is not at issue. It is nevertheless relevant to a Fifth Amendment analysis whether or not a defendant availed itself of the benefits of a state's laws. Such an invocation suggests other contacts between the defendant and the state. It ultimately m akes it m ore fair and just to hale the defendant into federal court here.

Even if we accord the purposeful-availment requirement the full weight it deserves in diversity and state-law cases, it would not defeat jurisdiction. In the instant case, defendant actively took advantage of the state's laws in several ways. It participated in its taxation system and its workers compensation system. It purposefully benefitted from the state's work to maintain n avigable harbors and the piers at the Port of San Francisco. It used state roads that undoubtedly were used by defendant's contractors and workers to reach the ships. Defendant could have chosen to breach its contract with the Maritime Administration and forego all these benefits of California's laws. It did not. That fact supports the exercise of personal jurisdiction.

*7 The purposeful-availment issue is a corollary of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 6
Slip Copy, 2006 WL 997248 (N.D.Cal.)
**(Cite as: Slip Copy)**

the requirement that the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the form State." *Hanson,* 257 U.S. at 253. Defendant argues that haling it before this Court is the equivalent of allowing unilateral activity of the Maritime Administration to subject it to suit here. Not true. The activity that sent Interocean here was not unilateral. Defendant and the Maritime Administration were parties to a *bilateral* contract, which eventually required defendant to do business here. Furthermore, although the orders may have originated with the Maritime Administration, they were implemented by defendant. Thus the activities were not unilateral but rather were joint actions of defendant and the Maritime Administration.

Defendant likens this case to *Helicopteros Nacionales.* In that decision, however, the unilateral activity that the Supreme Court said was not enough to support jurisdiction was the acceptance by Helicopteros Nacionales of checks issued by a co-defendant and drawn on a Texas bank. Because there was no indication that defendant played any role in deciding on which bank the check would be drawn, the court held that the choice was a unilateral decision of the co-defendant. It therefore was not a factor in favor of requiring Helicopteros Nacionales to defend a suit in Texas state court. 466 U.S. at 416-17.

The unilateral actions at issue in *Helicopteros Nacionales* were nothing like the actions Interocean took at the behest of the Maritime Administration. Defendant was more purposeful in its contacts than the mere depositing or cashing of checks drawn on a local bank. As stated, it maintained oceangoing ships, paid workers, registered to do business, filed state tax returns and leased office space here. *Helicopteros Nacionales* does not aid defendant.

Defendant attempts to support the arguments related to its lack of control by citing several decisions in which courts found that they lacked personal jurisdiction over defendants in shipping cases due, in part, to the defendants' lack of control over the ports at which the ships called. All of these decisions are from other circuits, so none are controlling. They are also factually distinguishable.

In several decisions, the defendants had much less substantial contact with the relevant state than did Interocean with California. Typically, they paid only occasional port calls to the state, as contrasted with the semi-permanent stationing in the instant case. The

decisions therefore typically found that the contacts were not systematic or continuous. *See Asarco, Inc. v. Glenara, Ltd.,* 912 F.2d 784, 787 (5th Cir.1990) (fewer than twenty port calls by ship while managed by defendant); *Conner v. Bouchard Transp. Co.,* No. CIV. A. 93-450, 1993 WL 388274 at *3 (E.D.Pa. Sept. 30, 1993) (100 port calls by thirty-six ships over five-year period); *Nicolaisen v. Toei Shipping Co.,* 722 F.Supp. 1162, 1165 (D.N.J.1989) (seventeen port calls over five years); *Farris v. United States,* 877 F.Supp. 1549, 1555 (M.D.Fla.1994) ("sporadic" use of Florida ports); *Ginsberg v. Livestock Express, Inc.,* Civ. A. No. 90-1411-N, 1990 WL 303044 at *5 (E.D.Va. Nov. 9, 1990) (three port calls); *Amer. Overseas Marine Corp. v. Patterson,* 632 So.2d 1124, 1130 (Fla.Dist.Ct.App.1994) ("sporadic" use of Florida ports).

*8 In other decisions, there was even less direct contact because the ship never arrived at its intended destination in the forum state. *See Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 626, 628 (11th Cir.1994) (ship sank before arriving in Georgia); *Uni-Petrol Gesellschaft Fur Mineraloel Produkte, M.B.H. v. M/T Lotus Maru,* 607 F.Supp. 108, 109 (S.D.N.Y.1985) (ship never delivered cargo to New York destination).

In two decisions, the claim of personal jurisdiction was based not on operations in a forum, as here, but on injection of a defective piece of equipment into a steam of commerce. The courts held that, on that theory alone, manufacturer could not be haled into court where the injury occurred. *Fed. Ins. Co. v. Lake Shore Inc.,* 886 F.2d 654, 658 (4th Cir.1989); *DeJames v. Magnificence Carriers. Inc.,* 491 F.Supp. 1276, 1280 (D.N.J.1980). The stream-of-commerce contacts in those decisions were much less extensive and purposeful than was defendant's conduct in the instant case.

Contrary to defendant, the final shipping decision cited by it did *not* hold that the court lacked personal jurisdiction, despite only occasional calls at American ports. *W. Africa Trading & Shipping Co. v. London Int'l Group,* 968 F.Supp. 996, 1101 (D.N.J.1997). The holding therefore does not support defendant's position.

Defendant also claims that its contacts were not "continuous and systematic" (Br.10), committing verbicide on the words "continuous" and "systematic." A five-year period of doing business is obviously continuous. So too is a sixteen-year period of registration to do business in California.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 7
Slip Copy, 2006 WL 997248 (N.D.Cal.)
**(Cite as: Slip Copy)**

Defendant's contacts were also systematic, in that employed systems to maintain the ships here, paid the crew here, lease office space here, pay taxes here and earn revenue here. These acts were not random or fortuitous.

Defendant makes several other unavailing arguments:
• It argues that it "never earned California revenues" (Br.10). But in 2004, it reported that it earned about six percent of its revenue in California (Rogers Decl. II ¶ 7). Defendant thus defeats its own argument.
• While it is true, as defendant asserts, that it did not advertise or solicit business in California, those facts do not eviscerate this Court's jurisdiction over defendant, given the otherwise substantial contacts between it and Northern California.
• Defendant asserts that it "is not an operation so enmeshed in California's business that its contacts here 'approximate physical presence,' " (Br.11), a requirement for assertion of personal jurisdiction. *See* Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir.2000). Indeed, its contacts did not *merely approximate* physical presence-Interocean *actually was* present in California.
• Defendant notes its current lack of contacts with California. This is irrelevant. The only contacts that matter are those existing at or before the beginning of the litigation. Farmers Ins. Exch., 907 F.2d at 913.
*9 • Defendant argues that its contacts are insufficient because it only maintained its registration as a foreign corporation because it was cheaper to do so than to terminate it when it left the state, then restart it when it returned. This argument implicitly concedes that defendant expected (and expects) to do business in California again. Furthermore, defendant offers no authority for the proposition that maintaining a registration to do business becomes jurisdictionally irrelevant when it is done to save money.


* * *

Given that plaintiff has created a presumption of reasonableness by carrying her burden, this order must evaluate whether defendant nevertheless has defeated the claim of personal jurisdiction by "presenting a compelling case that jurisdiction would be unreasonable." Haisten, 784 F.2d at 1397.

*First,* defendant asserts that jurisdiction is unreasonable because, even if its contacts were purposeful, the "degree of purposefulness ... is minuscule" (Reply 10). This argument is unpersuasive for the same reasons that these contacts cannot be disregarded in examining minimum

contacts. One of these reasons is that Interocean's obligation to obey the Maritime Administration was due only to its voluntary and purposeful execution of a bilateral contract with the government.

*Second,* defendant claims that jurisdiction would not be reasonable because the United States, not it, is the proper defendant in this action (Reply 11). Whatever the merits of this argument, it has nothing to do with this Court's general jurisdiction over defendant. General jurisdiction concerns a defendant's contacts with a forum generally, not his amenability to liability for a particular claim.

*Third,* defendant makes the puzzling claim that jurisdiction is unreasonable because "California should not have an interest in the outcome of this litigation" (Reply 11). A state, however, has an interest in adjudicating claims raised by its citizens. Defendant conceded that plaintiff "was and still is a citizen of the State of California, as she alleges in her Complaint" (Notice of Removal ¶ 5). Defendant thus defeated its own argument. In any case, whatever merit this argument would have under the Fourteenth Amendment, it has none under the Fifth Amendment jurisdictional analysis.[FN6]

> FN6. Plaintiff asserted in her complaint that she "was at all times mentioned herein a resident of the State of California (Compl.¶ 1). That contention was not controverted by defendant's submission of a declaration that the address plaintiff gave on her EEOC Charge of Discrimination and her declaration in support of the charge is actually the address of a United Parcel Service store (Tamulski Decl. ¶¶ 4-5). Her use of a post-office box does not suggest that she is not a citizen, resident or domiciliary of California. Many people use post-office boxes as their mailing addresses despite also having a residence in the same state. Furthermore, this UPS address was given by plaintiff *after* the claim arose. Her assertion in the complaint that she was a resident of California when the allegedly unlawful actions took place is not called into question by whatever address she claimed several months later.

### CONCLUSION

For the reasons stated above, defendant's motion to dismiss for lack of personal jurisdiction is **Denied.** A

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 8
Slip Copy, 2006 WL 997248 (N.D.Cal.)
**(Cite as: Slip Copy)**

prima facie showing of personal jurisdiction has been
made, subject to further proof on summary judgment
or trial. This decision moots defendant's request to
transfer for want of personal jurisdiction, plaintiff's
request for jurisdictional discovery and plaintiff's
objections to defendant's reply brief.

**IT IS SO ORDERED.**

N.D.Cal.,2006.
Mateer v. Interocean American Shipping Corp.
Slip Copy, 2006 WL 997248 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1417570 (Trial Pleading) Answer by
Interocean American Shipping Corporation (Apr. 27,
2006) Original Image of this Document (PDF)
• 3:06cv01642 (Docket) (Mar. 1, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 2001 WL 558050 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
School    Stuff,    Inc.    v.    School    Stuff,
Inc.N.D.Ill.,2001.Only the Westlaw citation is
currently available.
   United States District Court, N.D. Illinois, Eastern
                       Division.
   SCHOOL STUFF, INC., an Indiana corporation,
                      Plaintiff,
                         v.
   SCHOOL STUFF, INC., an Arizona corporation,
                      Defendant.
                  **No. 00 C 5593.**

                    May 21, 2001.

        *MEMORANDUM OPINION AND ORDER*
GUZMAN, J.
*1 School Stuff, Inc. ("plaintiff"), an Indiana
corporation, has filed a four-count complaint alleging
trademark infringement and dilution under the
Lanham Act, as well as violations of the Illinois
Consumer Fraud and Deceptive Business Practices
Act and the Illinois Uniform Deceptive Trade
Practices Act against defendant School Stuff Inc., an
Arizona corporation. Defendant has moved to dismiss
this action for lack of personal jurisdiction pursuant
to Federal Rule of Civil Procedure ("Rule") 12(b)(2).
Additionally, the defendant has moved to dismiss this
action for improper venue pursuant to Rule 12(b)(3)
or in the alternative to transfer venue from the
Northern District of Illinois to the District of Arizona
pursuant to 28 U.S.C. § 1404. For the reasons stated
below, defendant's motions are denied.

                       *FACTS*

Plaintiff provides mail order, retail store, and door-to-
door shopping services in the field of educational and
school supplies and maintains two retail stores in
Illinois, two in Indiana, and one in Minnesota.
(Compl.¶  6.) On November 21, 1995, the School
Stuff mark was registered upon the Principal Register
of the United States Patent and Trademark Office as
United States Registration No. 1,936,888. (*Id.* ¶  10;
*id.,* Ex. A.) On February 6, 1996, the School Stuff
mark and design was registered upon the Principal
Register of the United States Patent and Trademark
Office as United States Registration No. 1,954,489.

(*Id.* ¶  11; *id.,* Ex. B.) Plaintiff has continuously used
its School Stuff marks in connection with the sale of
educational and school supplies since 1979 and has
established good will and reputation through such
marks. (*Id.* ¶ ¶  7, 14.)

Defendant sells educational and school supplies via
mail order, retail stores, and an Internet website
under the name or mark "School Stuff." (*Id.* ¶ ¶  15-
16; *id.,* Ex. D.) Defendant began using the School
Stuff mark after plaintiff began using its School Stuff
mark. (*Id.* ¶  17.)

Defendant argues that it has never owned or rented
any property within the State of Illinois. Defendant
argues that it has never sent any salesmen into
Illinois, appeared at any trade show in Illinois, or
advertised in any publications or trade magazines that
are circulated into Illinois. Defendant operates out of
two Arizona retail locations and further maintains a
warehouse in Arizona.

The basis of personal jurisdiction alleged by plaintiff
is that defendant is doing business in Illinois via the
Internet. Defendant claims that it did not begin to sell
online until December of 1998. The total Internet
sales up to the time of this action were $8,748.61.
The defendant asserts that over the past two years
Internet sales into Illinois total $447.09. The
defendant claims that these isolated sales cannot
suggest a claim that defendant are subject to the
personal jurisdiction of this Court.

                     *DISCUSSION*

        I. MOTION TO DISMISS FOR LACK OF
     PERSONAL JURISDICTION AND IMPROPER
                        VENUE

*2 Defendant has moved to dismiss for lack of
personal jurisdiction and improper venue, and, in the
alternative has moved to transfer venue pursuant to
28 U.S.C. § 1404(a). We address each in turn.

Rule 12(b)(2) provides for dismissal of claims when
the district court lacks personal jurisdiction. Fed. R.
Civ. P. 12(b)(2). On a Rule 12(b)(2) motion to
dismiss, a plaintiff must provide sufficient evidence
to establish a *prima facie* case for personal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 558050 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

jurisdiction. *LFG, LLC v. Zapata Corp.,* 78 F.Supp.2d 731, 734 (N.D.Ill.1999). In a federal question case, this standard is met where the plaintiff demonstrates that a defendant is amenable to service of process and that bringing the defendant into court "comports with Fifth Amendment Due Process." *Id.* When reviewing a motion to dismiss, the court takes all jurisdictional allegations in the complaint as true unless controverted by the defendant's affidavits. *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir.1987). Any conflicts must be resolved in favor of the plaintiff. *Id.*

A court may assert either specific or general jurisdiction over a defendant. *Helicopteros Nacionales de Colombia, SA v. Hall,* 466 U.S 408, 414 (1984). A defendant domiciled in a forum state or who has conducted activity in such state that is "continuous and systematic" is subject to the general jurisdiction of that state. *Id.* In this case, the defendant is domiciled in Arizona and has conducted only a small portion of its overall business in Illinois. Therefore, general jurisdiction cannot be established over the defendant since defendant's activities in this forum are not continuous and systematic.

Specific jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant if the defendant has established minimum contacts with a forum under the principles of *International Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny. In federal cases, the plaintiff must satisfy two elements for specific jurisdiction: (1) the plaintiff must show that the defendant is amenable to service of process; (2) the plaintiff must establish that haling defendant into court is consistent with the Fifth Amendment's due process clause. *LFG,* 78 F.Supp.2d at 734 (citing *United States v. De Ortiz,* 910 F.2d 376, 381-82 (7th Cir.1990)).

First, amenability to service is governed by Illinois' long-arm statute. The statute permits Illinois courts to exercise personal jurisdiction to the fullest constitutional limit. Because of Illinois' broad long-arm statute, "the statutory analysis collapses into a due process inquiry, and we need not consider whether defendants engaged in any of the acts enumerated in the long-arm statute." *LFG,* 78 F.Supp.2d at 735.

Second, in determining whether personal jurisdiction is consistent with due process, the Court must address whether defendant purposefully established minimum contacts with the forum state. *CoolSavings.com, Inc. v. IQ.Commerce Corp.,* 53 F.Supp.2d 1000, 1002

(N.D.Ill.1999). The Supreme Court in *Burger King Corp. v. Rudzewicz* dispensed with the requirement of physical presence in order to establish minimum contacts by stating "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." 471 U.S. 462, 476 (1985). The pivotal and essential question in the due process analysis is whether a defendant "purposefully availed" himself of the privilege of acting in the forum state. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). The question is whether "the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.*

*3 In considering the issue of personal jurisdiction in the context of the Internet, courts have developed a sliding scale analysis to determine what level of Internet interaction subjects a defendant to personal jurisdiction. *Euromarket Designs, Inc. v. Crate & Barrel Ltd.,* 96 F.Supp.2d 824, 837 (N.D.Ill.2000); *LFG,* 78 F.Supp.2d at 736. This analysis consists of three levels: (1) where the defendant conducts business over the Internet through its active web site; (2) where the defendant maintains an interactive web site; and (3) where the defendant maintains a passive web site. *Id.*

The first level consists of situations where the defendant clearly does business over the Internet. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D. Pa 1997). "If the defendant enters into contracts with residents of a foreign jurisdiction ... over the Internet, personal jurisdiction is proper." *Id.* The second level "is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* The third level consists of a passive web site that is only informative in nature. *Id.*

The issue presented before us is not one that involves the second or third levels of interactive or passive web sites. Additionally, this Court declines to comment on the issue of whether the sole maintenance of an active web site, capable of conducting business in numerous jurisdictions, is sufficient for a defendant to have submitted to personal jurisdiction in such jurisdictions. This area of the law is in a state of development and broad

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2001 WL 558050 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

generalizations can lead to unfair results.

However, this Court holds that when business is clearly conducted over the Internet between a defendant and citizens of a foreign jurisdiction, the exercise of personal jurisdiction is appropriate. The defendant argues that "something else" besides Internet presence is required in order for a court to assert personal jurisdiction. The defendant goes to great lengths to minimize the sales it made to Illinois residents. The defendant began selling online in December of 1998 and since then has total Internet sales of $8,748.61. Of defendant's total sales, $447.09 have been to Illinois residents. Even if we were to agree with defendant's proposition that something else other than Internet presence is necessary, clearly the $447.09 of sales to Illinois residents goes beyond mere Internet presence s o that the Court m ay assert personal jurisdiction in this case. In sum, defendant's activities in actively selling school supplies to Illinois residents established the minimum contacts with Illinois to satisfy the due process inquiry. By choosing to do business in Illinois, the defendant purposefully availed itself of the privilege of conducting activities in Illinois and, therefore, should reasonably anticipate being haled into court in Illinois. *World-Wide Volkswagen Corp.,* 44 U.S. at 297; *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1263 (6th Cir.1996); *CoolSavings.com, Inc., 53 F.Supp.2d at 1002-03.*

*4 I f t he d efendant d id n ot want t o b e haled i nto a court in Illinois, it should have never conducted business with the residents of this state. By purposefully doing business with a particular state and thereby receiving the benefits, the defendant should reasonably have anticipated potentially being haled into court here. If the defendant did not want to do business with particular states it could have easily limited its offer on its Internet site to only those states with which it wanted to do business.

The second requirement for personal jurisdiction is that the claim arise out of or relate to the defendant's contacts with the forum. *Burger King Corp., 471 U.S. at 472.* In this case, plaintiff's claims arise from or relate to defendant's alleged infringement of plaintiffs nationally protected mark both in Illinois and throughout the country. Defendant's alleged use of these marks w ill have an impact and injure plaintiff in Illinois where defendant and plaintiff actively sell their products.

Next, the Court must turn to the reasonableness analysis and examine whether the exercise of

personal jurisdiction conforms to "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Under this analysis the defendant bears the significant burden of demonstrating "a compelling case that jurisdiction would be constitutionally unreasonable." *CoolSavings.com, Inc., 53 F.Supp.2d at 1005* (quoting *Akro Corp. v. Luker, 45 F.3d 1541, 1546 (Fed.Cir.1995)).*

The defendant does not meet this burden. Illinois has a strong interest in adjudicating injuries such as trademark infringement in relation to corporations that are located within its borders. Even though it may be a burden on defendants to defend a lawsuit in Illinois, the courts have been more and more willing to impose such a burden upon defendants due to advances in communication and transportation. "[P]rogress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome ." *World-Wide Volkswagen Corp., 444 U.S. at 294.* The defendant continues to argue that because it merely made isolated sales to Illinois and because it is an Arizona company, it is unreasonable for it to defend in Illinois. These arguments do not present a c ompelling c ase e stablishing t hat p ersonal jurisdiction over it would be unreasonable. For the reasons stated above, we hold that the Court may exercise personal jurisdiction over defendant, and the Court denies defendant's motion based on this ground.

Next, defendant has moved to dismiss based on improper venue. Pursuant to the federal venue statute, "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Defendant, for the reasons set forth above, is subject to personal jurisdiction in this forum and, therefore, the Northern District is the proper venue for this lawsuit. The Court thus dismisses defendant's motion to dismiss based on venue.

## II. MOTION TO TRANSFER

*5 Lastly, defendant, pursuant to 28 U.S.C. § 1404(a), seeks to transfer this case to the District of Arizona. According to section 1404(a), for the convenience of parties and witnesses and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. A section 1404(a) motion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 558050 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

to transfer venue is appropriate only if: (1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witness; and (3) transfer is in the interest of justice. _Vandeveld v. Christoph,_ 877 F.Supp. 1160, 1167 (N.D.Ill.1995).

The party seeking to transfer venue "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." _Coffey v. Van Dorn Iron Works,_ 796 F.2d 217, 219-20 (7th Cir.1986). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." _Id._ at 219. We have already determined that venue is proper in this district, and because defendant is an Arizona corporation, venue is also proper in the District of Arizona. Therefore, the only issues that remain to be decided pertain to the convenience of parties and witnesses and the interests of justice.

### A. CONVENIENCE OF PARTIES AND WITNESSES

When evaluating the convenience of the parties and witnesses, we consider: (1) the plaintiffs choice of forum; (2) the site of material events; (3) the availability of evidence in each forum; and (4) the convenience to the parties of litigating in the respective forums. _College Craft Cos., Ltd. v. Perry,_ 889 F.Supp. 1052, 1054 (N.D.Ill.1995).

#### 1. Plaintiff's Choice of Forum and Site of Material Events

Plaintiff chose the Northern District of Illinois to litigate this case. Generally, the plaintiffs choice of forum is given substantial weight. _Macedo v. Boeing Co.,_ 693 F.2d 683, 688 (7th Cir.1982). This factor clearly favors plaintiff. Plaintiff has had a significance presence in Illinois for over twenty years. Two of plaintiffs stores are located in Illinois and most of its employees and officers live in the Chicago area.

With respect to the site of material events, the defendant is located in Arizona. However, defendant allegedly infringed plaintiff's trademark through its Internet business. Thus, the site of material events in this case is potentially everywhere defendant's Web site is accessible. Therefore, this factor neither favors

nor disfavors the transfer of venue to Arizona.

#### 2. Availability of Evidence and Convenience of the Parties

Defendant asserts that access to the sources of proof is easier in Arizona and, thus, this factor should favor transfer. However, as other courts have pointed out, regardless of where the trial is held, all relevant documents will be collected, copied, inspected and sent to the offices of trial counsel in both Arizona and Chicago. _CoolSavings.com, Inc.,_ 53 F.Supp.2d at 1006. Again, this factor neither favors nor disfavors the transfer of venue to Arizona.

*6 As for the factor of convenience to the parties, this factor is not intended to shift the inconvenience from the defendant to the plaintiff. We will not transfer this case solely because it will be more convenient for the defendant to defend the lawsuit in Arizona for this will only shift the inconvenience to the plaintiff. _Id._

In sum, the Court gives plaintiff's original choice of forum considerable weight and no other consideration counterbalances that weight. Thus, the "convenience of parties and witnesses" factor weighs against transfer.

### B. INTERESTS OF JUSTICE

The interests of justice component includes such considerations as (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the desirability of resolving controversies to their locale; and (4) the relation of the community to the occurrence at issue." _Bryant v. ITT Corp.,_ 48 F.Supp.2d 829, 834 (N.D.Ill.1999).

In this case, the Court's familiarity with the applicable law and the desirability of resolving a case in a particular forum clearly favors the denial of transfer. In addition to the trademark infringement claims, there are two state law claims-one brought under the Illinois Consumer Frauds Act and another under the Illinois Uniform Deceptive Trade Practices Act. This Court would have more familiarity with the applicable state law claims than would the District of Arizona. Likewise, Illinois has a strong interest in adjudicating injuries to the intellectual property rights of businesses that operate in this state.

In sum, defendant has failed to meet its burden. For

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2001 WL 558050 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

the reasons stated, the Court finds that the factor of
convenience of the parties and witnesses weighs in
favor of proceeding with the litigation in this district.
Additionally, the "interests of justice" analysis also
favors proceeding in this district. Therefore,
defendant's motion to transfer the case pursuant to 28
U.S.C. § 1404 is denied.

*CONCLUSION*

For the foregoing reasons, the Court denies
defendant's motions to dismiss pursuant to Rule
12(b)(2) and 12(b)(3) and motion, in the alternative,
to transfer venue pursuant to 28 U.S.C. § 1404
[docket nos. 7-1, 7-2].

SO ORDERED.

N.D.Ill.,2001.
School Stuff, Inc. v. School Stuff, Inc.
Not Reported in F.Supp.2d, 2001 WL 558050
(N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2001 WL 34670927 (Trial Pleading) Answer to
Counterclaims of Defendant School Stuff, Inc. (Oct.
9, 2001) Original Image of this Document (PDF)
• 2001 WL 34670925 (Trial Pleading) Answer and
Affirmative Defenses to Complaint for Permanent
Injunction and Other Relief (Sep. 21, 2001) Original
Image of this Document (PDF)
• 2001 WL 34670926 (Trial Pleading) Counterclaims
of Defendant School Stuff, Inc. (Sep. 21, 2001)
Original Image of this Document with Appendix
(PDF)
• 2000 WL 34444168 (Trial Pleading) Complaint for
Permanent Injunction and Other Relief (Sep. 12,
2000) Original Image of this Document with
Appendix (PDF)
• 1:00CV05593 (Docket) (Sep. 12, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
<u>Briefs and Other Related Documents</u>
Telcordia    Technologies,    Inc.    v.    Alcatel
S.A.D.Del.,2005.Only the Westlaw citation is
currently available.
United States District Court,D. Delaware.
TELCORDIA TECHNOLOGIES, INC., Plaintiff,
v.
ALCATEL S.A. and Alcatel USA, Inc., Defendants.
**No. Civ.A. 04-874 GMS.**

May 27, 2005.

<u>Steven J. Balick</u>, <u>John G. Day</u>, Ashby & Geddes,
Wilmington, DE, for Plaintiff.
<u>Josy W. Ingersoll</u>, Young, Conaway, Stargatt &
Taylor, <u>Kevin M. Baird</u>, Connolly Bove Lodge &
Hutz, Wilmington, DE, for Defendants.

*MEMORANDUM*
SLEET, J.

## I. INTRODUCTION

*1 On July 16, 2004, the plaintiff, Telcordia
Technologies, Inc. ("Telcordia"), filed this patent
infringement action against Alcatel S.A. ("Alcatel
S.A.") and Alcatel USA, Inc. ("Alcatel USA").
Presently before the court is Alcatel S.A.'s motion to
dismiss for lack of personal jurisdiction. For the
following reasons, the court will grant the motion.

## II. BACKGROUND

Alcatel S.A. is a French corporation with its principal
place of business in Paris, France. Alcatel S.A. is the
parent company of Alcatel USA, a Delaware
corporation with its principal place of business in
Plano, Texas. (D.I. 18 Ex. 2 ¶ ¶ 2-3.) It is a holding
company that does not manufacture, sell, advertise,
offer to sell, trade or import any goods or services in
the United States or anywhere in the world. (*Id.* ¶ ¶
3-5.) It does not maintain any offices or other
facilities in Delaware, or the United States. (*Id.* ¶ 7.)
It neither owns nor leases any real property in
Delaware or the United States, but it does own
United States patents. (*Id.* ¶ 8.) Alcatel S.A. does not
maintain any bank accounts in Delaware and has
never contracted to supply services or things in

Delaware or the United States. (*Id.* ¶ ¶ 9-10.)

Telcordia, a Delaware Corporation with its principal
place of business in Piscataway, New Jersey, is the
assignee and owner of the patent-in-suit, <u>U.S. Patent
No. 4,893,306 (the " '306 patent")</u>.[FN1] The '306 patent
relates to a method and apparatus for multiplexing
circuit and packet traffic. The patent discloses a data
transmission technique, or Dynamic Time Division
Multiplexing ("DTDM"), that is compatible with the
digital circuit transmission format, as well as the
packet transmission format, thereby providing "a
flexible migration strategy between present circuit
networks and future broadband packet networks."
(<u>U.S. Patent No. 4,893,306</u> Abstract.) The complaint
alleges that Alcatel S.A. and Alcatel USA have
infringed, induced infringement of, and/or
contributorily infringed one or more claims of <u>the
'306 patent</u> by making, using, offering for sale,
selling and/or importing into the United States
communication network products embodying the
patented invention. (D.I. 1 ¶ ¶ 13-14.)

          FN1. <u>The '306 patent</u> was issued on January
          9, 1990 and assigned to Bell
          Communications Research, Inc.
          ("Bellcore"), which became Telcordia in
          1999.

## III. STANDARD OF REVIEW

Alcatel S.A. moves to dismiss the complaint for lack
of personal jurisdiction over the defendant. "<u>Rule
12(b)(2) of the Federal Rules of Civil Procedure</u>
requires a court to dismiss a case when the court
lacks personal jurisdiction over the defendant[ ]." <u>E.I.
DuPont de Nemours & Co. v. Rhodia Fiber & Resin
Intermediates, 197 F.R.D. 112, 119 (D.Del.2000)</u>. In
determining whether personal jurisdiction exists,
courts engage in a two step analysis. First, the court
must decide whether jurisdiction is authorized by the
long-arm statute of the state in which the court sits.
<u>Transportes Aeros de Angola v. Ronair, Inc.</u>, 544
F.Supp. 864-65 (D.Del.1982). If jurisdiction is proper
per the long-arm statute, the court must then
determine whether exercising jurisdiction comports
with the requirements of the Due Process Clause of
the Fourteenth Amendment. *Id.* (noting, however,
"intent of the legislature to exercise jurisdiction over
non-residents whenever feasible"); <u>*Compaq*</u>

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 2
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

_Computer Corp. v. Packard Bell Elec., Inc._, 948 F.Supp. 338, 342 (D.Del.1996) (citation omitted). To satisfy the second prong of this analysis, the court must find the existence of "minimum contacts" between the defendant and the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " _International Shoe Co. v. Washington_, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation omitted). Specifically, Telcordia must show that Alcatel S.A. "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." _Burger King Corp. v. Rudzewicz_, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting _Hanson v. Denckla_, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)); _see also Asahi Metal Indus. Co. v. Superior Court_, 480 U.S. 102, 108-09, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Unless the contacts are continuous and systematic, they must be related to the present cause of action. _Helicopteros Nacionales de Columbia, S.A. v. Hall_, 466 U.S. 408, 414-15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

**\*2** In determining the jurisdictional question, the court must accept as true the allegations in the complaint. _Altech Indus., Inc. v. Al Tech Specialty Steel Corp._, 542 F.Supp. 53, 55 (D.Del.1982). However, Telcordia, the plaintiff, bears the burden of alleging facts sufficient to make a _prima facie_ showing of personal jurisdiction over Alcatel S.A. _ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc._, 147 F.Supp.2d 268, 270-71 (D.Del.2001). To meet this burden, Telcordia must adduce facts which " 'establish with reasonable particularity' " that jurisdiction over Alcatel S.A. exists. _Id._ (quoting _Joint Stock Soc'y v. Heublein, Inc._, 936 F.Supp. 177, 193 (D.Del.1996)).

IV. DISCUSSION

A. Delaware's Long-Arm Statute

The first step in the court's analysis is to determine whether any of the provisions of Delaware's long-arm statute, Del.Code Ann. tit. 10 § 3104, warrant the exercise of jurisdiction over Alcatel S.A. Alcatel S.A. contends that the court has no basis to assert jurisdiction, while Telcordia maintains that the conduct of Alcatel S.A. satisfies the requirements of subsections (c)(1) and (c)(3) of the long-arm statute.

Under subsection (c)(1), the court may exercise

jurisdiction over a nonresident or agent of a nonresident who "transacts any business or performs any character of work or service in the State." Del.Code Ann. tit. 10 § 3104(c)(1). Subsection (c)(3) gives the court the authority to exercise jurisdiction over a nonresident or agent of a nonresident who "causes tortious injury in the State by an act or omission in this State." Del.Code Ann. tit. 10 § 3104(c)(3). Delaware courts construe the long-arm statute broadly so as to confer jurisdiction to the maximum extent possible so as to "provide residents a means of redress against those not subject to personal service within the state." _Boone v. Oy Partek Ab_, 724 A.2d 1150, 1156-57 (Del.Super.1997). The Delaware Supreme Court has interpreted subsections (c)(1) and (c)(3) as specific jurisdiction provisions that require a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. _See LaNuova D & B, S.p.A. v. Bowe Co._, 513 A.2d 764, 768 (Del.1986). In order to meet the requirements of subsections (c)(1) and (c)(3), Alcatel S.A.'s actions must be directed at residents of Delaware and the protection of Delaware laws. _Thorn EMI N. Am. Inc. v. Micron Tech., Inc._, 821 F.Supp. 272, 274 (D.Del.1993).

Telcordia asserts that the court should exercise jurisdiction under § 3104(c)(1) and/or (c)(3) because Alcatel S.A.'s contacts with Delaware are attributable to its subsidiary, Alcatel USA, under the principles of agency. [FN2] The principles of agency allow a court to establish jurisdiction over the parent based upon its jurisdiction over a subsidiary. Under the agency theory, "the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction." _C.R. Bard Inc. v. Guidant Corp._, 997 F.Supp. 556, 559 (D.Del.1998) (citing _Mobil Oil Corp. v. Linear Films, Inc._, 718 F.Supp. 260, 266 (D.Del.1989)). Thus, the agency theory "examines the degree of control which the parent exercises over the subsidiary." _Applied Biosystems, Inc. v. Cruachem, Ltd._, 772 F.Supp. 1458, 1463 (D.Del.1991). The factors relevant to the court's examination include: (1) "the extent of overlap of officers and directors"; (2) "methods of financing"; (3) "the division of responsibility for day-to-day management"; and (4) "the process by which each corporation obtains its business. No one factor is either necessary or determinative; rather it is the specific combination of elements which is significant." _Id._ If the court determines that an agency relationship exists, it may attribute certain actions of the subsidiary, Alcatel USA, to the parent corporation, Alcatel S.A., in assessing whether

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Telcordia has satisfied the requirements of the long-arm statute. *See id.* However, the mere existence of an agency relationship is not sufficient to confer jurisdiction. The court must still apply the Delaware long-arm statute. *See id.* at 1455 ("[A] finding of agency does not render the long-arm statute inapplicable, but simply implicates its 'or through an agent' provision.")

> FN2. Delaware law provides two theories that allow a court to exercise jurisdiction over a parent corporation based on its jurisdiction over a subsidiary: the alter ego theory and the agency theory. *Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1463 (D.Del.1991). Under the alter ego theory, the party showing jurisdiction must show fraud or inequity in the use of the corporate form for a court to "pierce the corporate veil," or attribute the actions of a subsidiary to the parent corporation. *Id.; see Mobile Oil Corp. v. Linear Films, Inc.,* 718 F.Supp. 260, 266 (D.Del.1989). Telcordia has neither asserted the existence of any fraud in the corporate structure of Alcatel S.A. and Alcatel USA nor introduced evidence that would support a finding of fraud. Accordingly, the court will not address this jurisdictional theory.

*\*3* Telcordia contends that Alcatel S.A. should be subject to jurisdiction under the agency theory because "Alcatel S.A. and Alcatel USA are closely knit together, effectively operating as one." (D.I. 20, at 10.) Telcordia alleges the following to support its contention of an agency theory of jurisdiction: (1) Alcatel S.A. makes it abundantly clear that the United States market is very important to it and raises funds in the United States; (2) it owns patents, *i.e.* property, in the United States; (3) it fails to distinguish among its multinational subsidiaries-that is, it consolidates descriptions of its activities with those of its subsidiaries; (4) it chose to incorporate Alcatel USA in Delaware; (5) its Senior Vice President, Mike Quigley ("Quigley") is the CEO of Alcatel USA; and (6) its website solicits requests for information concerning its products, including allegedly infringing products from Delaware residents. (*Id.* at 3-5, 10.) Telcordia further contends that, "at the very least," Alcatel USA has offered to sell in Delaware products accused of infringing the '306 patent and, therefore, transacts business in the state. In addition, because Alcatel USA committed these acts as Alcatel S.A.'s agent, they are attributable

to Alcatel S.A. (D.I. 20, at 10.)

Before the court can determine whether it should attribute Alcatel USA's alleged acts in Delaware to Alcatel S.A., it must determine whether an agency relationship exists between the two corporations. As previously stated, in order to make this determination, the court must consider the extent of overlap of officers and directors between Alcatel USA and Alcatel S.A., the methods of financing with respect to the two corporations, the division of responsibility for day-to-day management between the two, and the process by which each corporation obtains its business. After having considered these factors, the court concludes that Telcordia has not carried its burden. As to the first factor, Telcordia points to one overlap in officers between the two corporations: Quigley is Senior Executive Vice President of Alcatel S.A. and CEO of Alcatel USA. According to Alcatel S.A., there is a second overlap between the two corporations: its President and COO, Philippe Germond, is a member of the Board of Directors of Alcatel USA. (D.I. 23, at 3; D.I. 22 ¶ 6.) This minor overlap, however, is not dispositive, as "it is entirely appropriate for directors of a parent corporation to serve as directors of a subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *United States v. Bestfoods,* 524 U.S. 51, 69, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) (citations omitted) (noting that it is "well established principle ... that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership"). As such, this factor does not weigh in favor of a finding of agency.

*\*4* Likewise, the remaining factors do not weigh in favor of applying the agency theory in the present case. First, Alcatel S.A. is merely a holding company that does not manufacture, sell, or advertise in the United States, or anywhere in the world. (D.I. 18 ¶¶ 3-5.) Thus, this is not a case in which Alcatel S.A. manufactures a product and uses an independent distributor to sell its product. *Cf. C.R. Bard,* 997 F.Supp. at 561. In addition, Alcatel USA maintains its own executive team, which is responsible for the day-to-day management of Alcatel USA, and no employee of Alcatel S.A. is a member of the executive team of Alcatel USA. (D.I. 22 ¶ 5.) It also maintains its own financial statements, separate from those kept by Alcatel S.A. (D.I. 22 ¶ 10.) Alcatel USA files a consolidated United States federal income tax return that is separate from tax returns filed by Alcatel S.A. (*Id.* ¶ 12.) Alcatel USA

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 4
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

finances its day-to-day activities through funds generated from its business activities, including the manufacture, marketing and distribution of the accused infringing products. (*See id.* ¶ 13.) Accordingly, the court finds that while there is a minor overlap of officers and directors between the parent and subsidiary, Telcordia has not produced sufficient evidence for the court to conclude that the specific combination of agency factors militates in favor of a finding that Alcatel USA was acting as Alcatel S.A.'s agent. Thus, sections (c)(1) and (c)(3) do not warrant the exercise of jurisdiction over Alcatel S.A.[FN3]

> FN3. The court need not address whether jurisdiction in Delaware comports with the requirements of the Due Process Clause because it has no statutory authority under the Delaware long-arm statute to exercise jurisdiction over Alcatel S.A.

### B. Federal Rule of Civil Procedure 4(k)(2)

Telcordia next asserts that, even if the Delaware long-arm statute does not apply in the present case, the court should not grant Alcatel S.A.'s motion to dismiss because it has the authority to exercise personal jurisdiction over Alcatel S.A. pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure. Rule 4(k)(2) provides:
If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed. R. Civ. P. 4(k)(2). In order to establish jurisdiction pursuant to Rule 4(k)(2), (1) Telcordia's claim must arise under federal law; (2) Alcatel S.A. must lack sufficient contacts with any state to subject it to personal jurisdiction; and (3) Alcatel S.A. must have sufficient contacts with the United States as a whole to satisfy due process. *See BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 258-59 (3d Cir.2000). Telcordia contends that all three requirements of Rule 4(k)(2) are satisfied. The court disagrees.

First, the parties do not dispute, nor could they, that Telcordia's claims arise under federal law. The complaint alleges that Alcatel S.A. has infringed, induced infringement of, and/or contributorily

infringed the '306 patent. Patents and the protection of patent rights are the subject of Title 35 of the United States Code. 35 U.S.C. § 271 specifically provides the elements of patent infringement. Additionally, 28 U.S.C. § 1338 gives district courts original jurisdiction over patent actions. A patent infringement action, therefore, is one that arises under federal law. Telcordia has thus satisfied the first requirement of Rule 4(k)(2).

*\*5* Having found that the first requirement of Rule 4(k)(2) is satisfied, the court next must determine whether Alcatel S.A. is not subject to jurisdiction in any state. *See United States v. Offshore Marine Ltd.,* 179 F.R.D. 156, 160 (D.Vi.1998); *Revak v. Locatum A.B.,* No. Civ. A. 03-4822, 2005 WL 1017771, at *2 (E.D.Pa. Apr.28, 2005). As a preliminary matter, the court must determine whether Telcordia or Alcatel S.A. bears the burden of proving that Alcatel S.A. is not subject to the jurisdiction of any state. In *Offshore Marine Ltd.,* the United States District Court for the District of the Virgin Islands noted that "[t]he question [of] which party bears the burden of proving ... that the defendant is not subject to jurisdiction in any state appears to be an issue of first impression in this Court and in this Circuit, probably because it is generally the plaintiff's duty to allege and prove personal jurisdiction." *Offshore Marine Ltd.,* 179 F.R.D. at 160. Indeed, it appears that the Third Circuit has not yet addressed whether the plaintiff or defendant bears the burden of proving that the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, or what is known as the negation requirement. *See Base Metal Trading Ltd. v. OJSC "Novokuzetsky Aluminum Factory",* 47 Fed. Appx. 73, 75 (3d Cir.2002) (unpublished) (determining that negation issues need not be reached because the Due Process requirement of Rule 4(k)(2) was not satisfied). [FN4] Various district courts of the Third Circuit, however, have addressed the negation requirement and concluded that the plaintiff bears the burden of demonstrating that the defendant is not subject to jurisdiction in any state. *See Offshore Marine Ltd.,* 179 F.R.D. at 160 ("Accordingly to survive a motion to dismiss for want of personal jurisdiction, the plaintiff bears the burden to prove that [the defendant] is not otherwise subject to service of process in any state."); *see also Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.,* 293 F.Supp.2d 423, 430 (D.Del.2003), *vacated on other grounds by* 395 F.3d 1315 (Fed.Cir.2005) (issue abandoned on appeal) ("Plaintiffs must also demonstrate that defendant is 'not subject to the jurisdiction of *any* state' under Rule 4(k)(2). Therefore, Rule 4(k)(2) "provides 'a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

narrow exception which may subject an alien defendant to a federal court's jurisdiction." ') The court agrees with the Third Circuit district courts that have addressed the negation requirement and concludes that Telcordia bears the burden of demonstrating that Alcatel S.A. is not subject to jurisdiction in any state.

> FN4. Likewise, it appears that the Federal Circuit h as n ot had occasion t o address the negation issue.

Here, Telcordia addresses the negation requirement only by asserting that, based on the information provided by Alcatel S.A. in its opening brief and the publicly available information regarding Alcatel S.A., an analysis of whether any other state has personal jurisdiction over Alcatel S.A. would not be "significantly different" from the analysis regarding Alcatel S.A.'s personal jurisdiction under the Delaware long-arm statute. (D.I. 20, at 13.) According to Telcordia, if the court cannot exercise jurisdiction over Alcatel S.A. pursuant to the Delaware long-arm statute then Rule 4(k)(2) applies. (*Id.*) The court is not persuaded by this argument, however, and concludes that Telcordia's conclusory statement does not support a finding that Alcatel S.A. lacks sufficient contacts with any state to subject it to personal jurisdiction. Thus, Telcordia has not satisfied the second requirement of Rule 4(k)(2).

*6 Even assuming Telcordia was able to show that Alcatel S.A. was not subject to jurisdiction in any other state, it cannot satisfy the third requirement of Rule 4(k)(2) because the record evidence demonstrates that Alcatel S.A. lacks sufficient contacts with the United States as a whole to satisfy due process. The Due Process Clause requires that, in order to subject a defendant who is "not present within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "ha[s] certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of justice and fair play.' ' *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted). In order for the court to find that Alcatel S.A. has "minimum contacts" with the United States, Telcordia must demonstrate either specific or general personal jurisdiction. *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The court can assert specific jurisdiction over a nonresident defendant that has "purposefully directed his activities at residents of the

forum and the litigation results from alleged injuries that 'arise out of or related to' those activities." *Burger King,* 471 U.S. at 472 (citations omitted). The court can assert general jurisdiction over a defendant when its contacts with the forum, regardless of their relation to the litigation, are "continuous and systematic." *Helicopteros Nacionales,* 466 U.S. at 416. The court will address the reasons it cannot exercise specific or general jurisdiction over Alcatel S.A. in turn.

When determining whether a defendant's contacts give r ise t o specific j urisdiction, " [i]t is e ssential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum ... thus invoking the benefits and protections of its laws." *BP Chems.,* 229 F.3d at 259 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 475, 100 S.Ct. 559, 62 L.Ed.2d 490). In other words, the defendant's contact must be of the nature that would cause it to reasonably foresee that it might be "haled before a court" in the forum as a result of its conduct. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980). Thus, a court usually must determine the character of the defendant's activity in the forum, and whether the plaintiff's claim arises out of or has a substantial connection with t hat a ctivity. S ee *Burger King,* 471 U.S. at 475-76. In the present case, however, the court need not make this determination because Telcordia bases its argument on the specific jurisdiction subsections of the Delaware long-arm statute which, a s d iscussed i n S ection I V.A., *supra,* do not warrant the exercise of jurisdiction over Alcatel S.A. because Alcatel USA is not its United States agent.

The court also concludes that Alcatel S.A.'s contacts with the United States that are unrelated to the present litigation are not "continuous and systematic" so as to give rise to general jurisdiction. Telcordia contends that general jurisdiction exists because there is "ample evidence of Alcatel S.A.'s contacts with the United States." (D.I. 20, at 12.) According to Telcordia, this evidence includes the following: (1) Alcatel S.A. is listed on the New York Stock Exchange; (2) Alcatel S.A. owns property in the United States, specifically hundreds of patents; (3) Alcatel S .A.'s website fails t o d istinguish a mong i ts multinational subsidiaries and uses its name in the name of its subsidiaries; (4) Alcatel S.A.'s website describes its worldwide activities, including its activities in the United States, but never discloses that its United States activities are performed by one of its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 6
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

subsidiaries; and (5) Alcatel S.A. incorporated its subsidiary, Alcatel USA in Delaware. The court does not find the evidence sufficient to support Telcordia's assertion.

**\*7** First, as previously discussed, Alcatel S.A. is a French holding company that does not make, sell, export or import any products into the United States. Alcatel S.A. does not maintain any offices in the United States, or lease or own any real property in the United States. It does not maintain any bank accounts in Delaware and has never contracted to supply services or things in Delaware or the United States. Alcatel S.A.'s employees also all reside outside of the United States.

Moreover, while Alcatel S.A. is listed on the New York Stock Exchange as an American Depository Receipt ("ADR"), this factor alone does not justify the exercise of jurisdiction. See *Presbyterian Church of Sudan v. Talisman Energy, Inc.,* 244 F.Supp.2d 289, 330 (S.D.N.Y.2003); *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir.2001) ("[T]he Court is not persuaded that Congress intended for the courts to assert jurisdiction under Rule 4(k)(2) whenever a corporation lists its stock on a United States exchange."). Likewise, "[o]wnership of a United States patent, without more, cannot support the assertion of personal jurisdiction over a foreign patentee in any state besides the District of Columbia." *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,* No. C-95-3577 DLJ, 1996 WL 467293, at \*6 n. 5 (N.D.Cal. July 24, 1996) (citing 35 U.S.C. § 293). Furthermore, incorporating a subsidiary in the United States does not give rise to jurisdiction unless the litigation is related to the act of incorporation and, here, it is not related. See *Applied Biosystems,* 772 F.Supp. at 1468. Additionally, "the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conduct activity in the forum, knowingly interacting with residents of the forum state via its web site." *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 454 (3d Cir.2003). Here, Telcordia has not adduced evidence to support a finding that Alcatel S.A.'s web site was intended to reach customers in Delaware, or any other state in the United States.[FN5]

> FN5. Telcordia asserts that there can be "no question that Alcatel S.A.'s website solicits requests for information concerning its products (including allegedly infringing

products) from Delaware residents, pointing to a "website page concerning the possible purchase of Alcatel products" with Delaware chosen as the potential buyer's state. (D.I. 20, at 5; Ex. 11.) Telcordia misses the point, however, as the record does not support any documented sales to persons in Delaware (or any other state in the United States). Nor does it support any interaction between Alcatel S.A. and Delaware residents, as the web site page, in Telcordia's own words, demonstrates only the *possible* purchase of Alcatel products.

The court also disagrees with Telcordia's assertion that Alcatel's website "never discloses that its U.S. activities are performed by some entity (or entities) other than Alcatel S.A." (D.I. 20, at 4.) First, when one enters the Alcatel website and clicks on "United States" as its country/region the web address changes from "www.alcatel.com" to "www.usa.alcatel.com." Further, when one clicks on the "About Alcatel" dropdown menu and selects "Alcatel in the U.S.A.," he or she is provided with information regarding Alcatel USA, including its business locations. Moreover, the web page states "[i]t is the policy of *Alcatel USA* to satisfy the expectation of our customers."                    www.usa.alcatel .com/company/ausa_info.jhtml (last visited May 23, 2005) (emphasis added). Thus, the Alcatel web site does distinguish Alcatel S.A. from Alcatel USA. This fact does not support the exercise of jurisdiction over Alcatel S.A. Accordingly, Alcatel S.A.'s alleged contacts with the United States do not provide a basis for the court to conclude that it has a "continuous and systematic" presence in the United States.

**\*8** Nor does the combination of Alcatel S.A.'s alleged contacts with the United States provide the court with a sufficient basis to conclude that the requirements for general jurisdiction are met. *BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.,* 229 F.3d 254 (3d Cir.2000) is instructive on this point. In *BP Chemicals,* the Third Circuit found that a foreign defendant did not have sufficient contacts with the United States as a whole to justify the exercise of Rule 4(k)(2) jurisdiction, even though the defendant exported its products to the United States, held a small ownership interest in a Delaware corporation, and entered into contracts requiring its personnel to travel to the United States for training. *Id.* at 263. The Court of Appeals also found that the cumulative effect of the defendants contacts did not meet the requirements for general jurisdiction. In the present case, Alcatel S.A.'s alleged contacts fall short of

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

those alleged by the plaintiff in *BP Chemicals*. As such, the court finds that there is no basis for exercising Rule 4(k)(2) jurisdiction over Alcatel S.A.

### C. Jurisdictional Discovery

Lastly, Telcordia asserts that if the court does not conclude that Alcatel S.A. "is subject to personal jurisdiction under the *Delaware long-arm statute*," it should p ermit l imited j urisdictional d iscovery r ather than granting Alcatel S.A.'s motion to dismiss. (D.I. 20, at 11) (emphasis added). Telcordia asserts that its claims against Alcatel S.A. are not clearly frivolous, and that discovery is necessary due to the "limited publicly available information" that it has gathered without discovery. (D.I. 20, at 11.) Telcordia further asserts that the case will not be delayed as a result of any discovery on the personal jurisdiction issue.

Conversly, Alcatel S.A. contends that Telcordia's claims against it are clearly frivolous, because Telcordia has not carried its burden of making "a *prima facie* showing that Alcatel S.A. is subject to personal jurisdiction in Delaware." (D.I. 23, at 17.) In addition, Alcatel S.A. contends that it "strains belief that P laintiff ( 1) d id n ot k now e ntities i n the Alcatel Family to sue, and (2) that Alcatel S.A. was not one of them." (*Id.* at 17 .) According to Alcatel S.A., Telcordia has had prior business interactions with Alcatel entities regarding the patent-in-suit, as well as other communications technology. (*Id.* at 2.) Alcatel S.A. further contends that Telcordia is "arguably the most knowledgeable company in the telecommunications field with respect to what products are sold by the various players in the market." (*Id.* at 1.) Thus, it "is hard to believe that it [Telcordia] does not k now e xactly w ho the relevant players in the market are." (*Id.*) Lastly, Alcatel S.A. contends that Telcordia is engaging in a fishing expedition, noting that the United States Supreme Court has held that courts should "exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." (*Id* at 18-19 (citing *Societe Nationale Industrielle Aerospatiale v. United States District Court for Southern Dist. Iowa,* 482 U.S. 522, 546, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987)). The court is persuaded by Alcatel S.A.'s argument.

**\*9** "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is

'clearly frivolous.' " *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 456 (3d Cir.2003) (internal citations omitted). Thus, resolution of Telcordia's request "begins with the presumption in favor of allowing discovery to establish personal jurisdiction." *Hansen v. Neumueller GmbH,* 163 F.R.D. 471, 474 (D.Del. Oct.5, 1995). However, "[t]he court must be satisfied that there is some indication that this particular defendant is amenable to suit in this forum." *Id.* at 475. For example, "a plaintiff may not rely on the bare allegations in his complaint to warrant further discovery." *Id.* at 476. Likewise, "a mere unsupported allegation that [a] defendant 'transacts business' in an area is 'clearly frivolous.' " *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 107 F.3d 1026, 1042 (3d Cir.1997); *see B.L. Poe v. Babcock Int'l,* 662 F.Supp. 4, 7 (M.D.Pa. Mar.14, 1985) ("Since plaintiff h as m et defendants' affidavit evidence with mere speculation, plaintiff's request for an opportunity to conduct discovery on the matter must be denied. It would be inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction."). Rather, "there must be *some* competent evidence to demonstrate that personal jurisdiction over [a] defendant might exist before allowing discovery to proceed." *Hansen,* 163 F.R.D. at 475. Furthermore, "[w]hen the lack of personal jurisdiction is clear, ... further discovery serves no purpose and should be denied." *Hockerson-Halberstadt, Inc. v. Propet USA, Inc.,* 62 Fed. Appx. 322, 338 (Fed.Cir.2003) (unpublished).

Here, as previously discussed in Section IV.A., *supra,* the record evidence regarding Telcordia's agency theory of specific jurisdiction is insufficient to support the conclusion that Alcatel USA was acting as Alcatel S.A.'s agent. In addition, Telcordia did not assert that the court c ould exercise personal jurisdiction over Alcatel S.A. based on the general jurisdiction subsection of the Delaware long-arm statute. For these reasons, the court believes it is clear that it may not exercise personal jurisdiction over Alcatel S.A. pursuant to the Delaware long-arm statute. Thus, further discovery would not be worthwhile. In other words, granting Telcordia's request for jurisdictional discovery would amount to allowing it to conduct a fishing expedition in order to form a basis for jurisdiction. The court, therefore, will deny Telcordia's request for jurisdictional discovery.

*ORDER*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                  Page 8
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY ORDERED that:
1. Alcatel S.A.'s Motion to Dismiss for Lack of Personal Jurisdiction (D.I.17) is GRANTED.
2. Telcordia's request for jurisdictional discovery is DENIED.


D.Del.,2005.
Telcordia Technologies, Inc. v. Alcatel S.A.
Not Reported in F.Supp.2d, 2005 WL 1268061 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1182445 (Trial Motion, Memorandum and Affidavit) Plaintiff Telcordia Technologies, Inc.'s Objections to Defendant Alcatel USA, Inc.'s Second Notice of 30(b)(6) Deposition (Mar. 30, 2006) Original Image of this Document (PDF)
• 2006 WL 1182446 (Trial Motion, Memorandum and Affidavit) Plaintiff Telcordia Technologies, Inc.'s Objections to Defendant Alcatel USA, Inc.'s Third Notice of 30(b)(6) Deposition (Mar. 30, 2006) Original Image of this Document (PDF)
• 2006 WL 1182444 (Trial Pleading) Telcordia's Answering Claim Construction Brief Addressing Telcordia's '633 Patent and Alcatel's '052 Patent (Mar. 24, 2006) Original Image of this Document (PDF)
• 2006 WL 1204461 (Trial Pleading) Alcatel's Answering Claim Construction Brief for U.S. Patent No. 6,247,052 (Mar. 24, 2006) Original Image of this Document (PDF)
• 2006 WL 1182443 (Trial Motion, Memorandum and Affidavit) Plaintiff Telcordia Technologies, Inc.'s Objections to Defendant Alcatel USA, Inc.'s First Notice of 30(b)(6) Deposition (Mar. 10, 2006) Original Image of this Document (PDF)
• 2006 WL 1182441 (Trial Pleading) Alcatel's Opening Claim Construction Brief for U.S. Patent Nos. 6,247,052 and Re. 36.633 (Mar. 3, 2006) Original Image of this Document (PDF)
• 2006 WL 1182442 (Trial Pleading) Telcordia's Opening Claim Construction Brief (Mar. 3, 2006) Original Image of this Document (PDF)
• 2005 WL 3666806 (Trial Motion, Memorandum and Affidavit) Telcordia's Reply Brief in Support of its Motion to Dismiss Or, in the Alternative, to Sever and Stay Alcatel Usa, Inc.'s Patent Infringement Counterclaim (Nov. 1, 2005) Original Image of this Document (PDF)
• 2005 WL 2867944 (Trial Pleading) Telcordia's Reply to Alcatel USA, Inc.'s Amended Counterclaims and Demand for Jury Trial (Sep. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 2867947 (Trial Motion, Memorandum and Affidavit) Telcordia's Motion to Dismiss, or in the Alternative, to Sever and Stay Alcatel USA, Inc.'s Patent Infringement Counterclaim (Sep. 29, 2005) Original Image of this Document (PDF)
• 2005 WL 2385505 (Trial Pleading) Alcatel Usa's Answer and Counterclaims to Plaintiff's First Amended Complaint and Demand for Jury Trial (Aug. 10, 2005) Original Image of this Document (PDF)
• 1:04cv00874 (Docket) (Jul. 16, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Patrick A. Costello, hereby certify that on November 20, 2006, copies of the foregoing Compendium of Unreported Decisions Cited in the Supplemental Brief of Plaintiff Aladdin Knowledge Systems, Ltd. in Opposition to the Motion of Defendant Feitian Technologies Co., Ltd. to Dismiss for Lack of Personal Jurisdiction were served upon counsel listed below in the manner indicated:

**Via E-File and Hand Delivery**

Rodger D. Smith, Esq.
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19899

Patrick A. Costello (Bar No. 4535)