# EXHIBIT 2

DEL1 62473-1

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1

Not Reported in F.Supp.2d, 1999 WL 259848 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

C
Briefs and Other Related Documents
Novacare, Inc. v. Strategic Theracare AllianceE.D.Pa.,1999.Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
NOVACARE, INC. Plaintiff,
v.
STRATEGIC THERACARE ALLIANCE, et al., Defendants.
No. CIV. A. 98-6205.

April 30, 1999.

### MEMORANDUM

KELLY.

*1 In its Forty-one-count Amended Complaint, Plaintiff NovaCare, Inc. ("NovaCare") alleges combined damages against eleven defendants [FN1] ( "Defendants") totaling $2,069,646.43. Defendants move to dismiss the Amended Complaint for lack of personal jurisdiction and/or improper venue; or in the alternative, to transfer for improper venue pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). NovaCare denies that this Court lacks personal jurisdiction but concedes that in the event this Court concludes it lacks personal jurisdiction over Defendants, or that venue is improper in Pennsylvania, this action should be transferred to the United States District Court for the Central District of California.

   FN1. The Defendants consist of nine separate entities which are nursing homes, one entity which is a therapy service company itself (Strategic Theracare Alliance ("Theracare")) and one individual defendant (Frank Johnson ("Mr.Johnson") ). Each entity, Theracare, and Mr. Johnson are domiciled/reside in California.

I. Background [FN2]

   FN2. For the purposes of this Motion to Dismiss, any conflict of facts between the plaintiff and defendant are to be resolved in favor of the plaintiff. *TJS Brokerage & Co., Inc. v. Mahoney,* 940 F.Supp. 784, 787 (E.D.Pa.1996); *Di .Mark Mktg., Inc. v. Louisiana Health Serv. & Indemnity Co.,* 913 F.Supp. 402, 405 (E.D.Pa.1996.) Therefore, the facts and procedural history are construed in favor of the plaintiff, so as to remain consistent with the Complaint filed in this case.

On January 1, 1997, NovaCare entered into an amended written agreement, (the "Theracare I Agreement") with Theracare, pursuant to which NovaCare was to provide Therapy Services to patients of the nursing care facilities known as Phoenix Living Center and Shea Convalescent Hospital (collectively, the "Phoenix and Shea Facilities").[FN3]

   FN3. Niether the Phoenix, nor the Shea Facilities are parties to this litigation. For this reason, this Court has no concern as to the location or domicile of either Facility.

From January 1997 through December 1998, NovaCare rendered Therapy Services pursuant to the Theracare I Agreement. When Theracare failed to make payment due to NovaCare under the Theracare I Agreement, Theracare terminated the Theracare I Agreement, effective March 31, 1998 as to Phoenix Facility and effective December 31, 1998 as to Shea Facility.

On December 1, 1997, NovaCare entered into another written agreement with Theracare (the " Theracare II Agreement") pursuant to which NovaCare was to provide Therapy Services to patients of the nursing care facilities known as Anaheim Terrace Care Center, Bay Crest Care Center, Care House Convalescent Center,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 2

Not Reported in F.Supp.2d, 1999 WL 259848 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Devonshire Convalescent Center, Earlwood Care Center, Fountain Care Center, Pam Grove Care Center, Sharon Care Center, Valley Convalescent Center, Villa Maria Care Center, Willowcreek Care Center, Woodland Care Center and Valencia Palms (collectively, the "Theracare II Facilities"). (Pl.'s Br. in Response to Defs.' Mot. to Dismiss the Compl. at 7.)

Under the terms of the Theracare II Agreement, payment for Therapy Services rendered by NovaCare at the Theracare II Facilities was due in accordance with the terms and conditions of a lock box escrow agreement to be entered into by NovaCare and Theracare, but in no event was payment to be made more than one hundred and fifty (150) days from the date of the invoice from NovaCare to Theracare for such services. (Pl.'s Br. in Response to Defs.' Mot. to Dismiss the Compl. at 8.)

From December 1997 through December 1998, NovaCare rendered Therapy Services to patients at the Theracare II Facilities. When Theracare failed to make payment due to NovaCare under the Theracare II Agreement, Theracare terminated the Theracare II Agreement, effective March 31, 1998. FN4

> FN4. The Theracare II agreement was terminated as to Anaheim Terrace Care Center, Bay Crest Care Center, Care House Convalescent Center, Devonshire Convalescent Center, Earlwood Care Center, Fountain Care Center, Palm Grove Care Center, Sharon Care Center, Valley Convalescent Center, Villa Maria Care Center, Willowcreek Care Center and Woodland Care Center, and effective December 31, 1998 as to Valencia Palms. (Pl.'s Br. in Response to Defs.' Mot. to Dismiss the Compl. at 8.)

On March 1, 1997, NovaCare entered into an amended agreement with Anaheim Health Care Center FN5 (the "1997 Anaheim Agreement") pursuant to which NovaCare was to continue to provide Therapy Services to patients of the nursing care facility known as Anaheim Health Care Center.

> FN5. I am unsure as to what the 1997 Anaheim Agreement is amending. This is the first time that NovaCare mentions the Anaheim Health Care Center, one that is different in name and location to the previously mentioned Anaheim Terrace Care Center.

*2 On April 10, 1998, NovaCare and Anaheim executed an Addendum to the 1997 Anaheim Agreement, which Addendum indicated the parties' assent to NovaCare's provision of Therapy Services from that date forward under the terms and conditions of the Theracare I Agreement dated January 1, 1997. (Id.) When Anaheim failed to make payment when due to NovaCare under the Addmendum to the 1997 Anaheim Agreement, NovaCare terminated the 1997 Anaheim Agreement on July 20, 1998. (Id.)

Six more agreements were entered into between NovaCare and certain of the named Defendants in this case.FN6 These agreements, respectively named the "1994 Laurel Agreement," the "1994 Paramount Agreement," the "1994 Sun Mar Agreement," the "1997 Citrus Agreement," the "1997 Courtyard Agreement," and the "1997 Villa Rancho Agreement," each contained provisions, the terms of which are very similar to those of the previously mentioned Agreements. (Pl.'s Br. in Response to Defs.' Mot. to Dismiss the Compl. at 10-15.)

> FN6. These Agreements were entered into between NovaCare and six of the named defendants, respectfully, Laurel Convalescent, Paramount Convalescent Hospital, Sun Mar Nursing Center, Citrus Nursing Home, Courtyard Health Care Center, and Villa Rancho Bernardo.

On January 1, 1998, NovaCare entered into amended agreements with Citrus Nursing Home, Courtyard Health Care Center, Extended Care Hospital, Garden Park Care Center, Laurel

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                        Page 3

Not Reported in F.Supp.2d, 1999 WL 259848 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Convalescent, Paramount Convalescent, Sun Mar Nursing Center and Villa Rancho Bernardo (the "Amended Agreements"). The Amended Agreements with Garden Park Care Center and Citrus Nursing Home were amended again on April 10, 1998. The addendum indicated the parties' assent to NovaCare's provision of Therapy Services from that date forward under the terms and conditions of the Theracare I Agreement dated January 1, 1997. (Pl.'s Br. in Response to Defs.' Mot. to Dismiss the Compl. at 15, 16.)

The Amended Agreements replaced the parties' previous agreements executed in 1994 and 1997, pursuant to which NovaCare had been rendering Therapy Services at the respective facilities prior to January of 1998. (Pl.'s Br. in Response to Defs.' Mot. to Dismiss the Compl. at 16.)

Pursuant to the 1994 Laurel Agreement, the 1994 Paramount Agreement, the 1994 Sun Mar Agreement, the 1997 Citrus Agreement, the 1997 Courtyard Agreement, the 1997 Villa Rancho Agreement, and the Amended Agreements executed in 1998, NovaCare rendered certain Therapy Services at each respective sight. NovaCare alleges that each entity has failed to make payment to NovaCare when due under the aforementioned agreements for such Therapy Services rendered from January of 1997 through December of 1998. (Pl.'s Br. in Response to Defs.' Mot. to Dismiss the Compl. at 16, 17.) As a result, NovaCare terminated these agreements with the respective facilities.

The Theracare I Agreement, the Theracare II Agreement, the 1997 Anaheim Agreement, the 1997 Villa Rancho Agreement, the 1997 Citrus Agreement, the 1997 Courtyard Agreement and all of the Amended Agreements provide for all notices, requests, demands and other communications regarding the Therapy Services being rendered by NovaCare to be sent to NovaCare's corporate headquarters in King of Prussia, Pennsylvania. (Pl.'s Br. in Response to Defs.' Mot. to Dismiss the Compl. at 18.)

*3 With regard to the Therapy Services rendered by NovaCare, Defendants sent significant amounts of correspondence to NovaCare in Pennsylvania. On several occasions, Defendants spoke by telephone with representatives of NovaCare in Pennsylvania and mailed numerous checks to NovaCare in Pennsylvania for significant amounts due and owing for the Therapy Services. (Id.)

In 1997, to secure payment for the Therapy Services rendered by NovaCare at Anaheim Health Care Center, Citrus Nursing Home, Courtyard Health Care Center, Extended Care Hospital, Garden Park Care Center, Laurel Convalescent, Paramount Convalescent, Sun Mar Nursing Center and Villa Rancho Bernardo, (collectively, the "Guaranteed Facilities"), defendant Mr. Johnson executed and delivered to NovaCare a Guaranty ("the Guaranty"). (Id.)

By virtue of the Guaranty, Mr. Johnson guaranteed to NovaCare the payment of all financial obligations of the Guaranteed Facilities for Therapy Services rendered by NovaCare at such facilities. In accordance with paragraph 14(f) of the Agreements executed by NovaCare and the Guaranteed Facilities in 1998, the Guaranty applies to:(1) all payments due for Therapy Services rendered up to and including December 31, 1997; and (2) all payments due for Therapy Services rendered from January 1, 1998 to the present to the extent such payments were more than 120 days past due. NovaCare alleges that upon the Guaranteed Facilities' failure to pay NovaCare for the sums due and owing for Therapy Services rendered at these facilities, defendant Mr. Johnson became obligated to pay to NovaCare the principal sum of $2,141,153.13, together with attorneys' fees, interest and costs. (Pl.'s Br. in Response to Defs.' Mot. to Dismiss the Compl. at 20.)

II. *Discussion*

A. *Defendants' Motion to Dismiss for Lack of Personal Jurisdiction*

Defendants have moved pursuant to Federal Rule of Civil Procedure 12(b)(2) for dismissal of this action, arguing that this Court lacks personal jurisdiction over them because all defendants "are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 4
Not Reported in F.Supp.2d, 1999 WL 259848 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

residents of California, and have no meaningful connection (or any connection-other than this lawsuit for that matter) with Pennsylvania." Fed.R.Civ.Pro. 12(b)(2); (Defs.' Mem. in Supp. of the Mot. to Dismiss at 5.) Defendants contend that they have not had "continuous or systematic" contacts with this forum; and have not " purposefully availed" themselves of the privilege of conducting activity within this forum.

In its Memorandum of Law in Opposition to Defendants' Motion to Dismiss, NovaCare contends that the allegations set forth in the Amended Complaint are sufficient to establish personal jurisdiction over Defendants. NovaCare's contentions are twofold: (1) that this Court has personal jurisdiction over Defendants in light of their contacts with this forum; and (2) that this Court has personal jurisdiction over Defendants by virtue of the forum selection clause contained in the Guaranty. (Pl.'s Br. in Response to Defs.' Mot. to Dismiss the Compl. at 25, 32.)

*4 "Under Rule 4(e) of the Federal Rules of Civil Procedure, the service of process rules of the state where the court sits govern personal jurisdiction issues." *AMP Inc. v. Methode Elecs., Inc.,* 823 F.Supp. 259, 262 (M.D.Pa.1993). With respect to non-resident defendants, the Pennsylvania long-arm statute, 42 Pa.C.S.A. § 5322(b), permits Pennsylvania courts to exercise personal jurisdiction "to the constitutional limits of the Due Process Clause of the Fourteenth Amendment." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217 (3d Cir.1992). Therefore, this Court must assess whether application of the Pennsylvania long-arm statute to the facts presented violates the Due Process Clause.

"Personal jurisdiction is a fact-specific inquiry. The focus is on the relationship among the defendant, the forum state and the litigation." *AMP, Inc.,* 823 F.Supp. at 262. Once a defendant has properly raised a jurisdictional defense, the plaintiff bears the burden of proving, either by affidavits or other competent evidence, sufficient contact with the forum state to establish personal jurisdiction. *North Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 689 (3d Cir.1989), *cert. denied,* 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990); *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984). "To meet this burden, the plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state (' specific jurisdiction') or that the defendant has ' continuous and systematic' contacts with the forum state ('general jurisdiction')." *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987) (citations omitted).[FN7]

> FN7. "[C]ourts must consider whether the claim or cause of action arises from the defendant's forum-related activities or from non-forum related activities." *Banyan Healthcare Services, Inc. v. Laing,* No.CIV.A. 98-2004, 1998 WL 633991, at *1 (E.D.Pa. Aug.20, 1998); *Reliance Steel Prod. Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588 (3d Cir.1982). If the claim arises from forum-related activities, "specific jurisdiction" is invoked; and if the claim arises from non-forum-related activities, "general jurisdiction" is invoked.

i. Specific Jurisdiction-Defendants' "Minimum Contacts"

Specific jurisdiction is evoked when the cause of action arises directly from forum activities constituting "minimum contacts." *Surgical Laser Tech. v. C.R. Bard, Inc.,* 921 F.Supp. 281, 283 (E.D.Pa.1996).

NovaCare contends that the facts of this case show that Defendants have the requisite "minimum contacts" with Pennsylvania arising out of their obligations to NovaCare under the parties' numerous Agreements. NovaCare has conveniently pin-pointed each of these alleged contacts as follows:
a) [e]ach of the Agreements at issue in this case provides for automatic and perpetual renewal terms unless a party gave written notice of termination;
b) Ms. Hernandez, Defendants' representative, traveled to NovaCare's offices in Pennsylvania in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 5
Not Reported in F.Supp.2d, 1999 WL 259848 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

January of 1998 to meet with NovaCare's representatives regarding the Agreements that were executed in 1998, whereupon such Agreements were executed on behalf of Defendants;
*5 c) [w]ith two exceptions, all of the Agreements contain a choice of law provision stating that the Agreement was subject to the laws of the State of Pennsylvania;
d) [w]ith only three exceptions, the Agreements provided for all notices, requests, demands, and other communications regarding the Therapy Services to be sent to NovaCare's corporate headquarters in King of Prussia, PA;
e) [d]uring the course of the parties' business relationship, Mr. Johnson traveled to NovaCare's offices in Pennsylvania to meet with NovaCare's representatives to discuss, *inter alia,* the outstanding amounts due and owing from defendants for the Therapy Services rendered by NovaCare;
f) [i]n or about 1997, to secure payment for the Therapy Services rendered by NovaCare, Mr. Johnson executed and delivered to NovaCare at least four Guaranties of payment, at least three of which contain a forum selection clause pursuant to which all disputes b/w the parties were to be resolved by the federal and/or state courts of PA;
g) [t]he vast majority of records regarding the Therapy Services rendered by NovaCare at Defendants' nursing care facilities were and are contained at NovaCare's principal place of business in PA;
h) [k]ey witnesses regarding the business negotiations b/w the parties, defendants' default on their obligations and the amounts presently due and owing to NovaCare are located in PA;
i) [t]he invoices sent to defendants by NovaCare indicated that NovaCare was located in Pennsylvania;
j) Defendants were at all times well aware that they were entering into a contractual relationship with a Pennsylvania corporation located in Pennsylvania that operates at a national level, providing Therapy Services to nursing care facilities in many states;
k) [b]ased on the course of conduct between the parties, defendants were also aware that should they default under the Agreements, they would be held accountable to NovaCare at its corporate headquarters in Pennsylvania;
l) Defendants spoke by telephone on several occasions with representatives of NovaCare in Pennsylvania in connection with the outstanding amounts due and owing to NovaCare for Therapy Services rendered at the Facilities;
m) Defendants mailed numerous payments to NovaCare in Pennsylvania for significant amounts due and owing for these Therapy Services; and
n) [a] substantial amount of correspondence was exchanged between defendants and NovaCare's representatives in Pennsylvania relating to the Therapy Services being rendered by NovaCare.

(Pl.'s Br. in Response to Defs.' Mot. to Dismiss the Compl. at 36-39.)

NovaCare has failed to recognize that very few of these "contacts" are relevant to a finding of " specific jurisdiction" for not all of them are contacts within the forum state. I will consider only the contacts of Ms. Hernandez and Mr. Johnson; and telephone calls, mailings sent to this forum, and all other correspondence between Defendants and NovaCare's representatives within this forum. All other contacts are irrelevant to this specific jurisdiction analysis.

*6 NovaCare contends that Defendants' contacts are "strikingly similar" to the contacts upon which the United States Supreme Court based jurisdiction in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In doing so, NovaCare argues that, although Defendants assert a lack of personal jurisdiction based upon their lack of any offices, facilities, property or other business transactions in Pennsylvania and their initial dealings with NovaCare's agents in California, this Court does have personal jurisdiction over Defendants. (Pl.'s Br. in Response to Defs.' Mot. to Dismiss the Compl. at 36, 40.)

NovaCare contends that the exercise of jurisdiction must be fair and just under the circumstances, and Pennsylvania has the same "legitimate interest" in holding Defendants accountable for their debts to NovaCare as the State of Florida had in *Burger King,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 . While this Court agrees that the exercise of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                  Page 6
Not Reported in F.Supp.2d, 1999 WL 259848 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

jurisdiction be fair and just under the circumstances, this Court disagrees that Pennsylvania has the same interests as the State of Florida.

In *Burger King*, the issue was whether or not Florida's "exercise of long-arm jurisdiction offended 'traditional conception[s] of fair play and substantial justice' embodied in the Due Process Clause of the Fourteenth Amendment." *Burger King*, 105 S.Ct. at 2177 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95.

This issue arose as a result of the Florida District Court's exercise of jurisdiction based on the State of Florida's long-arm statute which extends jurisdiction to "[a]ny person, whether or not a citizen or resident of this state," who *inter alia*, " [b]reach[es] a contract in this state by failing to perform acts required by the contract to be performed in this state," so long as the cause of action arises from the alleged contractual breach. *Id.* (citing Fla.Stat. § 48.193(1)(g) (Supp.1984)) It was this provision that the United States District Court for the Southern District of Florida relied on in exercising jurisdiction over a Michigan resident. *Id.*

Considering NovaCare's argument that Pennsylvania has the same "legitimate interest" in holding Defendants accountable for their debts to NovaCare as the State of Florida had in *Burger King*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528, this Court must focus on the wording of 42 Pa.C.S.A. § 5322(b) (Pennsylvania's long-arm statute) in comparison to that of Fla.Stat. § 48.193(1)(g) (Florida's long-arm statute, as stated *supra*).

Section 5322(b) allows a Pennsylvania court to extend jurisdiction "to all persons ... to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b). Subsection (a) of the Statute permits this Court to exercise jurisdiction under several circumstances, however, none come close to paralleling the language of the Florida long-arm statute, as cited in *Burger King*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528.

*7 The Florida statute explicitly extends jurisdiction to a non-resident who breaches a contract in Florida by failing to follow through with contractual obligations so long as the cause of action arises from the alleged failure to perform. Clearly, if the Pennsylvania counterpart to the Florida's long-arm statute contained the same strict wording regarding contractual relations within this state, this Court would be more inclined to assume jurisdiction over Defendants. However, nowhere within the whole of section 5322 does Pennsylvania extend jurisdiction to a person or corporation pursuant to its breach of contract. This alone, is an extremely important distinction between *Burger King* and the instant case. *Burger King*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528.

However, "[n]otwithstanding these considerations, the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King*, 105 S.Ct. at 2182 (citing *Int'l Shoe*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95.) Concerning contracts, the Supreme Court has made it clear that parties who " 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanction in the other State for the consequences of their activities." *Banyan Healthcare Servs, Inc. v. Laing*, No.CIV.A. 98-2004, 1998 WL 633991, at *2 (E.D. Pa. Aug 20, 1998). However, the mere existence of a contract is not sufficient to establish minimum contacts. *Id.* This Court must consider contractual negotiations and contemplated consequences, as well as the terms of the contracts. *Id.* (citing *Burger King*, 105 S.Ct. at 479.) Under the facts of this case, several Agreements, the terms of which are important, led to the initiation of this litigation. NovaCare has included each of the relevant Agreements in its Memoranda and after reviewing these particular documents, it is apparent to this Court that Defendants have not had reason to contemplate any consequences within the Commonwealth of Pennsylvania.[FN8] In addition, although Ms. Hernandez did come to NovaCare's offices in King of Prussia, PA, this is the only evidence of any negotiations and/or executions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                            Page 7
Not Reported in F.Supp.2d, 1999 WL 259848 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

within this forum and that particular appearance only dealt with the 1998 Agreements. A finding of personal jurisdiction as a result of Defendants' mere entrance into a contract, the wording of which simply fails to mention anything more than NovaCare's Pennsylvania address, would result in an overhaul of litigation within this jurisdiction. To allow NovaCare to rely on the fact that Defendants entered into a contract with it as a basis for jurisdiction is just not justified in this case.[FN9]

> FN8. In fact, the 1994 Agreements request that "all notices, requests, demands and other communications required or permitted under this Agreement" be sent to NovaCare in Sacramento, California. ((Pl.'s Br. in Response to Defs.' Mot. to Dismiss the Compl. Ex. H. at 8; Ex. I at 8; Ex. J at 8.)
>
> FN9. Again, it is important to note that the *Burger King* decision was made pursuant to Florida's long-arm statute, which is very distinct from that of Pennsylvania's. *Burger King,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528.

*8 "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activity within the forum State, thus invoking the benefits and protections of its laws" *Id.* at 2183 (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283.)

This "purposeful availment" requirement ensures that a non-resident defendant will not be subject to jurisdiction of this Commonwealth, and thus "haled into" this District Court solely as a result of " random," "fortuitous," or "attenuated" contacts, *Id.* (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S., at 774; *World-Wide Volkswagon Corp. v. Woodson,* 444 U.S., at 299). However, jurisdiction is proper when the contacts proximately result from actions by the defendant alone, that create a "substantial connection" with the forum state. *Id.* at 2184 (citing *McGee v. International Life Insurance Co.,* 355 U.S. at 223. This Court is unable to find that any of the Defendants' contacts have risen to the level of creating a "substantial connection" with the forum state. Ms. Hernandez allegedly entered this forum for the purposes of negotiating and executing the 1998 Agreements only. The relationship between these parties has been elaborate and Ms. Hernandez's presence within this forum does not amount to a "substantial connection" to Pennsylvania.

NovaCare also contends that Mr. Johnson's presence in this forum contributes to Defendants' minimum contacts to this Commonwealth. Mr. Johnson travelled to NovaCare's offices in King of Prussia, Pennsylvania to meet with NovaCare's representatives to execute at least four Guarantees to secure payment for the Therapy Services rendered by NovaCare. Pursuant to these Guarantees, Mr. Johnson agreed to be personally obligated to pay the Guaranteed Facilities' debts to NovaCare. This "contact" may be sufficient to establish jurisdiction over Mr. Johnson individually, however, when considering the amount of negotiating and drafting that went into the agreements relevant to this litigation, it seems unfitting for this Court to maintain jurisdiction over all Defendants pursuant to Mr. Johnson's Guarantees. For this reason, the Court is not persuaded that his contacts are sufficient, under the notions of fair play and substantial justice, to establish personal jurisdiction over *all* Defendants.

Phone calls and letters can be counted toward the minimum contacts necessary for jurisdiction, *Banyan,* 1998 WL 633991, at *3; *Grand Ent. Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 482 (3d Cir.1993), but they are insufficient when taken alone. *Id.; Lynch v. N.J. Auto. Full Ins. Underwriting Ass'n,* 762 F.Supp. 101, 104 (E.D.Pa.1991). Since the only contacts that Defendants had with Pennsylvania were mailings, phone calls, and other forms of correspondence, when considering such with the brief appearance of Ms. Hernandez, such contacts do not rise to the level of establishing a "substantial connection" with Pennsylvania for the purposes of the issue confronting us. *But see Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 700 (3d Cir.1990).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 8
Not Reported in F.Supp.2d, 1999 WL 259848 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

*9 In *Consolidated Rail Corp. v. New England Central Railroad, Inc.*, 23 F.Supp.2d 549 (E.D.Pa.1998), the Court found that specific jurisdiction existed over the defendant as a result of a substantial "long-term" relationship between the defendant and a Pennsylvania corporation, in which contacts were "regularly made" within the Commonwealth. *Id.* at 551. The Court went further to state that it did not offend the notions of fair play and substantial justice to require the defendant to defend its actions under a "long-term" contract in Pennsylvania. *Id.; See also North Penn Gas v. Corning Natural Gas*, 897 F.2d 687, 690 (3d Cir.1990)(holding sufficient minimum contacts existed when a New York corporation signed an agreement with a Pennsylvania corporation that contemplated a thirty year relationship). Both *Consolidated Rail Corp* and *North Penn Gas* are cases decided within this Circuit and inherent in both rulings is the notion that the length of the contractual relations between parties residing in different states is a major consideration in deciding personal jurisdiction matters. In the case at bar, NovaCare fails to provide any proof that, had the alleged breach not occurred, the Agreements at issue would have provided Defendants with NovaCare's services for more than three years, and the pleadings suggest that any services rendered to date were minimal in time.[FN10]

> FN10. NovaCare does submit, as one of its "contacts" that each of the Agreements at issue provides for automatic and perpetual renewal terms unless a party gave written notice of termination. However, this is not sufficient to render these agreements to be long-term, and this Court is in no position to speculate how long each Agreement would have been in effect.

ii. General Jurisdiction

General jurisdiction is evoked when the cause of action is unrelated to forum activities but the defendant's contacts are "continuous and systematic." *Surgical Laser*, 921 F.Supp. at 283.
The general jurisdiction threshold, however, is much higher than that for specific jurisdiction, as the facts required to assert general jurisdiction must be "extensive and pervasive." The court should look to the nature and quality of business contacts the defendant has initiated with the forum: direct sales in the forum, maintenance of a sales force in the state, advertising targeted at the residents of the forum state, and the derivation of a significant slice of revenue from activity within the state.

*Allied Leather Corp. v. Altama Delta Corp.*, 785 F.Supp. 494, 498 (M.D.Pa.1992) (citations omitted). Thus, "the plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction. The nonresident's contacts to the forum must be continuous and substantial." *Provident Nat'l Bank*, 819 F.2d at 437 (citations omitted).

Of the remaining "contacts" that NovaCare has presented to this Court, none successfully evidence continuous and substantial activities that could serve to be either "extensive" *or* "pervasive." NovaCare has presented no evidence that would have led this court to believe that Defendants initiated business contacts with NovaCare, that Defendants maintain a sales force within this forum, that Defendants advertisements-if any existed-were targeted at Pennsylvania residents, nor that the Defendants have derived a significant slice of revenue from activity within this forum. Therefore, this Court is unable to conclude that it would be proper to invoke general personal jurisdiction over Defendants.[FN11]

> FN11. Again, this is not to say that this Court could not find general jurisdiction over Mr. Johnson in an individual capacity. However, jurisdiction over Mr. Johnson is not enough to establish jurisdiction over the remaining party Defendants.

*10 Finally, the "[e]xercise of jurisdiction over the non-resident defendant must also be consistent with 'traditional notions of fair play and substantial justice' whether specific or general jurisdiction is invoked." *AMP Inc.*, 823 F.Supp. at 262 (citing *Int'l Shoe*, 326 U.S. at 316. Because this Court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 9
Not Reported in F.Supp.2d, 1999 WL 259848 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

concludes that it does not exercise jurisdiction over Defendants, it is not necessary to address this step.

### B. Forum Selection Clause

NovaCare contends that this Court has personal jurisdiction over Defendants by virtue of the forum selection clause contained in the Guaranty. Defendants counter by asserting that the enforceability of this forum selection clause in Mr. Johnson's Guarantees, notwithstanding its validity, is deficient as applied to the remaining ten Defendants in this case. Defendants state, "[e]ven if the guarantees provided a basis for venue and jurisdiction over Mr. Johnson individually, the litigation commenced in Pennsylvania is prejudicial and unfair to all of the remaining Defendants." (Defs.' Mem. in Supp. of the Mot. to Dismiss for Lack of Personal Jurisdiction at 8.)

NovaCare cites *Bremen v. Zapata Off-Shore Co.* in arguing that forum selection clauses provide a valid basis for personal jurisdiction by consent. 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513, 92 S.Ct. (1907) *Bremen* held that the forum selection clauses are " prima facie valid and should be enforced unless enforcement is shown by the resisting party to be ' unreasonable' under the circumstances." *Id.* at 10. The forum selection clause was included in, at most, three of the Guarantees. There are eleven Defendants in this case, all residents of California, and to assume jurisdiction over each one by virtue of two or three forum selection clauses would be undoubtedly unreasonable. For this reason, this Court sides with Defendants contention that a finding of personal jurisdiction by virtue of the forum selection clauses included in some of the Guarantees would be "unreasonable."

### B. *Defendants' Motion to Transfer Venue*

Defendants contend that, notwithstanding the Motion to Dismiss for Lack of **Personal Jurisdiction**, this District Court should transfer this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). Section 1404(a) allows a district court to transfer an action "to any other district court where it might have been brought" if the court finds that such a transfer is in the interest of justice. Additionally, although not noted by either party, 28 U.S.C. S **1631** provides:

Whenever a civil action is filed in a court as defined in section 610 of this title ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ..., and the action ... shall proceed as if it had been filed in ... the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred.

*11 Section **1631** emphasis added).

Thus, the Court clearly has the power under both statutes to transfer the action to the Central District of California, if the action could originally have been brought there and if it finds such a transfer to be in the interest of justice. Not only is there "want of **jurisdiction**" in this District under section **1631**, but an action may also be transferred under section 1404(a) to cure a defect in **personal jurisdiction**.

Further, NovaCare has explicitly consented to a transfer of venue to the Central District of California. NovaCare admits that a transfer would cure a finding of lack of personal jurisdiction, in the interests of justice, by transferring a case to a court in which the action could have been brought. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss at 50.) Thus, upon request by both parties, this action will be transferred to the United States District Court for the Central District of California.

### III. *Conclusion*

Based upon the facts presented to the Court, Defendants are not subject to either specific or general jurisdiction in the Eastern District of Pennsylvania in this matter.[FN12] However, pursuant to 28 U.S.C. §§ 1404(a) and 1631, and NovaCare's consent to do so, this Court will not dismiss the Amended Complaint, but rather transfer this case to the United States District Court for the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 10
Not Reported in F.Supp.2d, 1999 WL 259848 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.2d)

Central District of California, a forum wherein jurisdiction is convenient and proper.

> FN12. The Court stresses that this conclusion applies to the Defendants as a whole. There has not been a ruling on the issue of whether this Court has personal jurisdiction over Mr. Johnson individually. Although it is not necessary to address this issue any further, it is apparent that a finding of jurisdiction would be fruitless, for the matter would not be appropriate in this District, as this forum is not convenient to the parties.

*ORDER*

AND NOW, this day of April, 1999, upon consideration of the Defendants Strategic Theracare Alliance, et al.'s Motion to Dismiss for Lack of Jurisdiction and/or Improper Venue; or In the Alternative, to Transfer for Improper Venue pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), and the response of Plaintiff NovaCare, Inc. thereto, this Court finds that it lacks personal jurisdiction over Defendants, and the case will be transferred to the United States District Court for the Central District of California. This transfer serves the convenience of the parties and the interests of justice; and in consideration of Plaintiff NovaCare's concession that venue is appropriate in the Central District of California, it is hereby ORDERED that this Motion to Transfer Venue is GRANTED.

IT IS FURTHER ORDERED that the Clerk of this Court shall TRANSFER the file for this case to the United States District Court for the Central District of California and is directed to mark this case as closed

E.D.Pa.,1999.
Novacare, Inc. v. Strategic Theracare Alliance
Not Reported in F.Supp.2d, 1999 WL 259848 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:98cv06205 (Docket) (Nov. 25, 1998)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.